UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

IVY WILLIAMS,

                Plaintiff,

        -against-

NYCHA and HUD,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**No. 07 Civ. 7587 (RJS)**

**DECLARATION OF SAMUEL
VEYTSMAN IN SUPPORT OF
DEFENDANT NEW YORK CITY
HOUSING AUTHORITY'S
MOTION TO DISMISS THE
AMENDED COMPLAINT**

Samuel Veytsman declares, pursuant to 28 U.S.C. § 1746, as follows:

1.     I am an attorney with the Law Department of Defendant New York City Housing Authority ("NYCHA"). I am of counsel to Ricardo Elias Morales, General Counsel of NYCHA. In that capacity, I represent Defendant NYCHA in the above-captioned matter and, as such, am fully familiar with the proceedings in this case. I submit this declaration in support of NYCHA's motion to dismiss the amended complaint pursuant to Rules 8 and 12(b) of the Federal Rules of Civil Procedure.

2.     NYCHA provides reasonable accommodations to meet the needs of public housing residents with disabilities. NYCHA's provision of reasonable accommodations to residents is reflected in part in General Memorandum ("GM") 3584, which references NYCHA's Voluntary Compliance Agreement ("VCA") with HUD and the procedure for processing requests for reasonable accommodations. A true and correct copy of GM-3584, without attachments, is attached as Exhibit A hereto. Pursuant to the VCA, NYCHA has made 9,100 apartments accessible to mobility-impaired individuals and those with other disabilities.

3.    On or about January 12, 2007, NYCHA preferred charges against Plaintiff for failing to provide information necessary to accurately determine her household income. In the summer of 2007, Douglass Houses management learned that Plaintiff had failed to report receipt of $1,100 a month in court-ordered support payments since 2004. Consequently, this amount was not factored into Plaintiff's rent calculation, resulting in Plaintiff being charged less rent then she should have been. Charges pending against Plaintiff were subsequently amended to reflect Plaintiff's failure to report this income. A true and correct copy of the amended charges against Plaintiff is annexed as Exhibit B hereto.

5.    A termination of tenancy hearing was held on these charges was held, following several adjournments, on November 30, 2007. However, that hearing did not proceed because Plaintiff seemed unable to focus on the proceedings or the questions being posed to her. Accordingly, on December 17, 2007, NYCHA's Law Department requested an assessment of Plaintiff's mental competence pursuant to NYCHA's procedures, as reflected in GM-3742, "Mental Competence Assessment and Guardians Ad Litem." A true and correct copy of GM-3742 is annexed as Exhibit C hereto.

6.    Following an assessment by NYCHA's Social Services Department, a Guardian Ad Litem ("GAL") was appointed to represent Plaintiff in her administrative hearing. That hearing has been repeatedly adjourned at the request of Plaintiff's GAL.


Executed on August 12, 2008.


Samuel Veytsman

# EXHIBIT A

# NEW YORK CITY HOUSING AUTHORITY

July 31, 1997

GM-3584

7'0:  **Distribution C**
*FROM:*  **Nicholas Calace, Assistant Deputy General Manager for Operations**
SUBJECT:  **DISABLED RESIDENTS: PROCESSING REQUESTS FOR ACCOMMODATIONS AND MODIFICATIONS UNDER THE VOLUNTARY COMPLIANCE AGREEMENT**

The Voluntary Compliance Agreement (VCA) between the New York City Housing Authority (NYCHA) and the United States Department Of Housing And Urban Development (HUD) governs NYCHA's compliance with Section 504 of the 1973 Rehabilitation Act and related federal law. NYCHA agrees to operate its programs and facilities so that, when viewed as a whole, they are accessible to persons with physical disabilities.

Pursuant to the VCA, NYCHA will make five percent (5%) of its units, a total of 9,100, accessible to mobility impaired individuals and those with other disabilities by the end of the program. Of this total, NYCHA has agreed to make 4,944 apartments fully accessible as soon as possible. Additionally, the VCA and Federal regulations require NYCHA to reasonably accommodate individuals with physical disabilities. Reasonable accommodation involves a change in NYCHA's policy, procedure, practice or facilities intended to provide persons with physical disabilities the same opportunity as non-disabled individuals to participate in and benefit from NYCHA's housing programs.

Under federal law, NYCHA must make accommodations that overcome barriers to equal access or facilitate the use of the housing program unless they would cause undue administrative or financial burdens or a fundamental alteration of the housing program. Physically disabled persons may request accommodations that they believe would be effective. NYCHA will determine, based on consideration of administrative or financial burdens, whether the request is reasonable. NYCHA may also suggest alternatives that are less burdensome to provide. Effective two-way communication will ensure the identification and implementation of the most appropriate accommodation.

Under the VCA, NYCHA will give every public housing resident the opportunity to request a reasonable accommodation as part of the Annual Review process. Residents may also request a reasonable accommodation at any time by contacting the Management Office.

Depending on the circumstances, NYCHA may transfer a resident to another apartment that is accessible or provide non-structural modifications to the resident's current apartment to effect a reasonable accommodation.    A reasonable accommodation may also involve changes to NYCHA procedures, non-dwelling facilities or programs.    For example, if a resident were unable to come to the Management Office because of a physical disability, NYCHA may send staff to the resident's apartment or conduct interviews by telephone; if a community center were not accessible and a resident were unable to participate in a program offered, NYCHA

staff may assist in arranging for transportation to an accessible facility offering the program.

I.    DEFINITIONS

    A.    Reasonable Accommodation · a change in NYCHA's policy, procedure, practice or facilities (dwelling and non-dwelling) that provides a person with a disability the opportunity to participate in, or benefit from, a housing program without causing undue administrative or financial burden, or a fundamental alteration of the housing program. There are two types of accommodations:

        1.    Non-Structural Physical Changes · physical modifications needed to provide access within an apartment, on the route to the apartment and to non-dwelling facilities which do not require structural changes.   Examples of non-structural modification include widening interior doors, or installing accessible kitchen cabinets, grab bars, lever-type door handles, etc.

        2.    Program Accessibility Changes · a programmatic change or an accommodation provided to a resident that allows him/her to benefit fully from an amenity or a program otherwise available to residents of a development. Such amenities or programs include the following:

            a.    Laundry (if development has an operating laundry room) - if the resident is unable to gain access to the laundry room and use it, ascertain in consultation with the Operations Services Department's Section 504 Coordinator whether the laundry room can be made accessible, such as by widening of the doorway or by installation of front loading machines. If the laundry cannot be made accessible, or while waiting for the work to be done, NYCHA can make it program accessible by working with the resident to arrange for laundry pick-up and delivery by any local laundry service.   In such an accommodation, NYCHA must reimburse the resident for any increased expense that (s)he would incur as a result.

            b.    Trash and bulk debris removal · if the resident is unable to gain access to and use the compactor hopper, ascertain in consultation with the Operations Services Department's Section 504 Coordinator whether the compactor hopper can be made accessible, such as by installing a lever handle or removing the hopper room door.   If the compactor cannot be made accessible, or while waiting for the work

to be done, NYCHA can make it program accessible by assigning staff to remove the resident's trash as needed.

c.   Mail delivery · if the resident is unable to gain access to and use the mailbox, ascertain in consultation with the Operations Services Department's Section 504 Coordinator whether the mailbox can be made accessible, such as by lowering it. If the mailbox cannot be made accessible, or while waiting for the work to be done, NYCHA can make it program accessible by assigning staff to check the mailbox and deliver its contents to the resident daily. The resident must complete and have notarized NYCHA 040.428, Retrieval of U.S. Mail for Disabled Resident. Development staff shall obtain this form as needed from the Section 504 Coordinator.

d.   Community Center/Community Facilities · if the resident is unable to gain access to and use a community facility for a program in   which (s)he is interested and otherwise eligible, ascertain in consultation with the Operations Services Department's Section 504 Coordinator whether the facility can be made accessible. If the facility cannot be made accessible, or while waiting for the work to be done, NYCHA can make a program accessibility change by providing transportation or assisting the resident in arranging transportation to an accessible facility that has the program.

e.   Management Office · if a resident is unable to gain access to the Management Office, ascertain in consultation with the Operations Services Department's Section 504 Coordinator whether the office can be made accessible, such as by reconstructing the entrance vestibule. If the office cannot be made accessible, or while waiting for the work to be done, NYCHA can make it program accessible by conducting telephone interviews or arranging for staff to visit the apartment to conduct NYCHA business.

Managers must act upon all requests  for reasonable accommodations relating to program accessibility regardless of the source, e.g., the resident, Community Center staff, Resident Leaders, Tenant Patrol, elected officials, clergy. If anyone makes a request on behalf of a specific resident, staff must verify the request with that resident.

GM-3584:   PROCESSING ACCOMODATIONS/MODIFICATIONS   ·  VOLUNTARY COMPLIANCE AGREEMENT

0.    Unreasonable Accommodation · a modification that fundamentally alters the housing program or creates an undue administrative or financial burden upon the Authority. Any requested physical accommodation that is structurally impracticable is not reasonable.

   1.    Structural Changes - physical modifications needed to provide access within an apartment, on the route to the apartment, and to non-dwelling facilities which require the demolition and reconstruction of building components. Examples of structural changes include widening entrance or lobby doorways, removing or rebuilding interior walls or installing larger elevator cars.

   2.    Structural Impracticability - changes having little likelihood of being accomplished without removing or altering a load-bearing structural member and/or incurring an increased cost of 50 percent or more of the value of the element of the building or facility involved.

   3.    Other - any accommodation that is not reasonably related to the resident's disability or that is not the most efficient way to meet the resident's needs.

   4.    Program Ineligibility - any accommodation for a program for which the resident is not otherwise eligible.

The following procedure details the steps that staff must take to process requests for reasonable accommodation. Staff will implement these procedures beginning with all Annual Reviews that became due in January 1997.

II.    RESIDENTS IN OCCUPANCY

   A.    Send the form, NYCHA 040.22, Disability Status and Notice of Reasonable Accommodation form (Attachment 1) with the Annual Review package. Prepare a control for each stairhall using the form, NYCHA 040.423, VCA Modification/Accommodation Control · Current Residents *(Attachment 2)*

   Staff shall:

   1.    Record the date the resident returned the form in the PIMS Tenant Data System using option 20, Record Receipt of AR papers (see computer instructions attached).

   2.    After recording residents' responses, staff shall file the Disability Status and Notice of Reasonable Accommodation form in each Resident's Folder with the Annual Income Review.

GM-3584: PROCESSING ACCOMODATIONS/MODIFICATIONS    - VOLUNTARY COMPLIANCE AGREEMENT

3. Mail the letter, NYCHA 040.424, Reasonable Accommodation Interview *(Attachment 3)*, to each resident who requested reasonable accommodation, inviting the resident to meet with a staff member to discuss suitable accommodations.

   a. Staff shall record the date sent and the scheduled interview date in the columns headed, 1" SENT/INTWV.1 SCHED.

   b. If a resident requests an alternate interview date, staff shall change the date in the column headed, INTVW.I SCHED.

   c. *Staff shall conduct an interview in the apartment of any resident who states that (s)he cannot attend an interview at the Management Office because of physical disability.*

4. Mail the letter, NYCHA 040.429, Missed Interview *(attachment 4)*, to each resident who does not appear for a scheduled interview.

   a. Staff shall record the date sent in the columns headed, 2nd SENT.

   b. If a resident calls to schedule an interview after receiving the Missed Interview letter, staff shall record the date in the column headed, INTVW.2 SCHED.

   c. If a resident does not respond to the interview letters, or does not appear for the second interview date, mark DNA on the Control - Current Residents in the column headed, OTHER/REMARKS.

B. Reasonable Accommodation Interview

Staff shall conduct an interview with each resident who requests an accommodation on the Disability Status and Notice of Reasonable Accommodation form. During the interview, staff shall:

1. Assist the resident IN the completion of the form, NYCHA 040.425. Reasonable Accommodation Request *(Attachment 51*

2. If the resident indicates at the bottom of the Reasonable Accommodation Request form that (s)hewould like a transfer to an accessible apartment, *do not process any physical modifications.* Instead, proceed to Section II. C., below and indicate on the Control - Current Residents in the

OTHER/REMARKS column that the resident prefers a transfer and the interview date.

3. If the resident indicates on the Reasonable Accommodation Request form that ((s)he would like modifications to the current apartment or a non-dwelling accommodation, using the guide, Examples of Reasonable Accommodations *(Attachment 6I,* determine the type(s) of reasonable accommodation consistent with the resident's request. During the interview, give each resident only the appropriate section of *Artachmenf 6* (not the entire list) that corresponds to his/her specific modification(s) or accommodation(s) request.

    a. Record requests by preparing a work ticket in the Work Ticket System (WTS) (see Section *IV).*

    b. NYCHA may require residents who request a reasonable accommodation to submit verification of their disability. If the tenant file does not contain a record of any member of the household with a disability, (e.g., SSI or other disability related source of income), or if the disability is not apparent, require the resident to submit a completed form, NYCHA 040.426, Disability Verification Letter, *(Attachment 7)* before proceeding.

    c. The reasonable accommodation may require NYCHA to make physical changes within the unit, on the route to the unit, to non-dwelling facilities and other NYCHA properties, or to provide program accessibility changes.

    d. Staff may not offer accommodations or modifications that are inconsistent with the resident's disability.

C. Reasonable Accommodation Transfers

1. Offer the option of an intra-project transfer to a suitable (accessible) apartment if the requested accommodation requires structural changes, requires extensive non-structural work that the resident declines because it would cause him/her extreme hardship or is not feasible in the current apartment.

    a. Before you may offer the resident a transfer to an available apartment, you must verify that there are no applicants or transferees for the specified apartment.

        i. Get the Next Referral *(TSAP SYSTEM).*

GM-3584: PROCESSING ACCOMMODATIONS/MODIFICATIONS VOLUNTARY COMPLIANCE AGREEMENT

       ii.    If no referral, have the resident complete the Tenant Request for Transfer, NYCHA 040.050, and offer the apartment. If the resident accepts the offer, enter the resident into TSAP as an intra-project transfer using Insert an Entry (TSAP SYSTEM).

       III.    Get the Next Referral (TSAP SYSTEM); the resident's name will appear for selection to the specified apartment.

   b.    If a suitable apartment is not currently available, the resident may elect to be placed on the development's waiting list for a future vacancy.

2.    If suitable apartments or suitable non-dwelling facilities do not exist at the current development, or if providing program accessibility would create a hardship that is unacceptable to the resident or is otherwise not feasible, staff shall offer the option of an inter-project transfer using the INTERVIEWER'S GUIDE TO VACANCIES - ACCESSIBLE APARTMENTS. The Manager must verify that the selected development has accessibility features that will meet the needs identified in the Reasonable Accommodation Request form and at the interview. Staff shall prepare and process NYCHA 040.050, Tenant Request for Transfer, and NYCHA 040.05OC. Tenant Transfer Record Card.

3.    If the resident is interested in either an intra-project or inter-project transfer, the resident may receive a reasonable moving allowance. When processing moving expenses, contact the Section 504 Unit, 212 306-3845, for guidance.

4.    Provide all reasonable accommodations and/or modifications requested by the resident that do not involve structural changes in lieu of transfer if:

   a.    The estimated waiting time for a suitable apartment (intra or inter-project transfer) is unacceptable to the resident, or

   b.    The resident does not wish to transfer despite the possibility of hardship caused by providing program accessibility changes or the nature and extent of work needed to modify the apartment.

In each case where reasonable accommodation is provided by physical or program modification rather than by transfer,

discontinue processing any pending transfer requests for that resident.

5.    if the resident insists upon an accommodation that will involve a structural change and will not accept a transfer to a suitable apartment, offer the resident the option of filing a grievance that will be processed through the **Department of Equal Opportunity.**

III.    **RENTAL INTERVIEW: APPLICANTS/TRANSFEREES** *(both inter-project and intra-project)*

A.    As part of the **Rental Interview,** staff shall assist applicants/transferees in the completion of the form, Disability Status **and Notice of Reasonable Accommodation *(Attachment 1).***

*B.*    Use the form, NYCHA 040.427, VCA Modification/Accommodation **Control · Applicants/Transferees */Attachment 8)*** to record applicant/transferee responses.

1.    Record the date interviewed in the column headed, INTERVIEW **DATE.**

2.    Record each resident's response in the appropriate box. If the applicant/transferee checked:

   a.    **SECTION** A, no one in household with a disability, check the box in the column, headed NO DISAB.

   b.    **SECTION** B, household member with a disability but NOT requesting an accommodation at this time, check the **NO** box in the column headed, HOUSEHOLD MEMBER WITH **DISABILITY REQUESTS ACCOMMODATION.**

   c.    **SECTION B,** household member with a disability and **requesting accommodation** at this time, check the **YES** box in the column headed, HOUSEHOLD MEMBER WITH DISABILITY REQUESTS ACCOMMODATION.

3.    Assist applicants/transferees who request an accommodation on the form, **Disability Status and Notice of Reasonable Accommodation,** to complete the form, **Reasonable Accommodation Request.**

4.    If the applicant/transferee indicates at the bottom of the **Reasonable Accommodation Request** form that (s)he would like a transfer to an accessible apartment, ***do not process any physical***

modifications. Instead, proceed to Section III. C. 2 & 3 below and indicate on the Control - Applicants/Transferees in the REMARKS/OTHER column that the resident prefers a transfer.

5.    If the applicant/transferee indicates on the **Reasonable** Accommodation Request form that (s)he would like modifications to the assigned apartment or a non-dwelling accommodation, using the guide, Examples of Reasonable Accommodations (Attachment 6), determine the type(s) of **reasonable accommodation** consistent with the applicant's/transferee's request. Give each applicant/transferee only the appropriate section of Attachment 6 (not the entire list) that corresponds to the specific modification or accommodation request.

a.    Record requests by preparing a MANAGER'S REQUEST WORK **TICKET** in WTS.

b.    NYCHA may require applicants/transferees who request a reasonable accommodation to submit verification of their disability. If the record does not contain any indication of any member of the household with a disability, (e.g., SSI or other disability related source of income), or if the disability is not apparent, require the applicant/transferee to submit a completed form, Disability Verification **Letter, (Attachment 7)**.

c.    The reasonable accommodation may require NYCHA to make physical changes within the unit, on the route to the unit, to non-dwelling facilities and other NYCHA properties, or to provide **program accessibility.**

d.    Staff may not offer accommodations or modifications. that are **inconsistent** with the applicants'/transferee's disability.

C.    If accommodation in the assigned apartment is not feasible because it would involve structural changes **(see STRUCTURAL CHANGES),** the Manager shall:

1.    If the applicant/transferee wishes to forego structural changes, provide those non-structural changes requested by the applicant that are deemed reasonable.

2.    If the applicant/transferee needs structural changes in the assigned apartment but would accept another apartment, place the applicant on the mobility-impaired list and change the

apartment selection to an accessible apartment if one is vacant at 'the development and not selected by a referral.

3. If there is no suitable vacant apartment at the development or, if non-dwelling facilities required by the applicant/transferee cannot be made accessible, **provide the applicant/transferee the INTERVIEWER'S GUIDE TO VACANCIES · ACCESSIBLE APARTMENTS.** After the applicant/transferee has selected an available development from the guide, return the documentation to the Department of Housing Applications, Field Liaison Division (FLD), for recertification to a development with vacant accessible apartments.

## IV. PROVIDING MODIFICATIONS/ACCOMMODATIONS FOR RESIDENTS IN OCCUPANCY AND APPLICANTS/TRANSFEREES

All requested physical modifications and accommodations begin with the preparation of a work ticket in the Work Ticket System (WTS). After determining that the resident or applicant does not wish to transfer to an accessible apartment, under the direction of the Manager/Superintendent, staff shall:

A. Prepare a separate work ticket in the WTS for each accommodation or physical modification that involves non-structural modification(s) to the current apartment or non-dwelling space. Give a copy of these work tickets to the resident/applicant/transferee.

　　1. WTS will generate a special work ticket with a large **M** in the upper right corner for work in apartments, public space, grounds and non-dwelling facilities (see *Attachments 9a, 9b & 9c*).

　　　　a. If the requested accommodation is actually a maintenance complaint, (e.g., the *elevator is frequently out of order, mold, mildew, leaking plumbing),* or is clearly unrelated to the resident's disability, **DO NOT INCLUDE AS AN ACCOMMODATION or MODIFICATION. IF IT IS A MAINTENANCE RELATED REQUEST, SUCH AS** ELEVATORS, MOLD, MILDEW, LEAKING PLUMBING, ETC., **prepare a routine work ticket for Maintenance and put a copy in the resident's folder.**

B. Assign work tickets to project staff for all items within the Maintenance Workers' scope of work function, such as:

　　a. Installing higher or lower water closet.

GM-3584:  PROCESSING  ACCOMMODAIIONS/MODIFKATIONS      -  VOLUNTARY  COMPLIANCE  AGREEMENT

     b.     Installing  hand-held  shower.

     c.     Installing  bathtub  seat.

     d.     installing  lever-type  handles  on  doors  and/or  faucets.

     e.     Lowering  door  interviewer.

     f.     Lowering  shelves  and/or  clothing  poles  in  closets.

     g.     Lowering  medicine  cabinets.

     h.     All  other  work  that  is  usually  done  by  maintenance  workers,  or can  be  deemed  to  be  within  the  scope  of  jobs  performed  by maintenance  workers.

**C.**    Accommodations  that  will  be  provided  through  Program  Accessibility changes  will  be  entered  into WTS  and  resolved  by  either  the  Manager, Superintendent,  Assistant  Manager  or  Assistant  Superintendent.  For example,  if  the  resident  needs  mail  service,  Management  staff  will prepare  a  work  ticket,  and  the  appropriate  supervisor  will  make  the arrangements.  Once  the  arrangements  have  been  made,  the  supervisor will  disposition  the  work  ticket.

**D.**    Refer  all  other  items  to  Borough  for  assignment.

    Local  conditions  will  determine  whether  skilled  trades  assigned  to  the Borough  or  a  contractor  will  perform  the  modification.  The  Borough Skilled  Trades  Supervisor  will  act  as  liaison  with  the  Operations  Services Department's  Section  504  Coordinator  and  the  Contract  Administration Department's  Section  504  Unit  in  the  assignment  of  work.

Staff  shall  refer  to  all  appropriate  computer  manuals  for  instructions  that  involve computer  use.

Refer  all  questions  regarding  this  procedure  to  the  Operations  Services  Section  504 Compliance  Unit  at  212  306-3777.

Nicholas  Calace

GM-3584: PROCESSING ACCOMODATIONS/MODIFICATIONS    · VOLUNTARY COMPLIANCE AGREEMENT

## LIST OF ATTACHMENTS

1.  NOTICE OF DISABILITY STATUS AND REASONABLE ACCOMMODATIONS-ENGLISH/SPANISH, NYCHA 040.422[1]

2.  VCA MODIFICATION/ACCOMMODATION CONTROL · CURRENT RESIDENTS, NYCHA 040.423 [2]

3.  REASONABLE ACCOMMODATION INTERVIEW LETTER, NYCHA 040.424 [3]

4.  MISSED INTERVIEW, NYCHA 040.429 [3]

5.  REASONABLE ACCOMMODATION REQUEST-ENGLISH/SPANISH, NYCHA 040.425 [4]

6.  EXAMPLES OF REASONABLE ACCOMMODATION METHODS [5]

7.  DISABILITY VERIFICATION LETTER, NYCHA 040.426 [2]

8.  VCA MODIFICATION/ACCOMMODATION CONTROL · APPLICANTS/TRANSFEREES, NYCHA 040.427 [2]

---

[1]  A stock form; order from Forms Unit until they are sent directly **with your Annual** Review Distribution.

[2]  A NON-STOCK form. Photocopy a sufficient supply for your use.

[3]  A NON-STOCK form. Photocopy ONE original on your development's letterhead as a two-sided, English/Spanish form, and use for all other copies.

[4]  A NON-STOCK form. Photocopy as a two-sided, English/Spanish, legal size form.

[5]  Photocopy **only** the pages needed for any individual interview.

# EXHIBIT B

LID #448955

IVY WILLIAMS
DOUGLASS HOUSES                          ELIOT WIDGEN - GAL
140 WEST 104TH STREET, APT. #14A         81 SEAMAN AVENUE, #2E
NEW YORK, NY  10025                      NEW YORK, NEW YORK 10034

## AMENDED SPECIFICATION OF CHARGES

### NON-DESIRABILITY IN THAT:

1.  You, IVY WILLIAMS, tenant of record, did file false instruments
since in or about 2003, 2006 and 2007 , with the New York City
Housing Authority ("Authority"), to wit: during said time period, you
filed annual affidavits of income with the Authority which did not
include child support or alimony/maintenance income that you
received.

2.  You, IVY WILLIAMS, tenant of record, defrauded the Authority, to
wit: you failed to report child support or alimony/maintenance income
that you received since 2003.

### MISREPRESENTATION IN THAT:

3.  You, IVY WILLIAMS, tenant of record, willfully misstated to or
concealed from the Authority a material fact bearing upon or related
to any determinant of your eligibility for admission to the
Authority, continued occupancy or bearing upon the rent to be paid by
you, to wit: your receipt of child support or alimony/maintenance
income since 2003

### NON-VERIFIABLE INCOME IN THAT:

4.  Since 2003, you, IVY WILLIAMS, tenant of record, failed,
neglected, or refused to furnish complete income verification
information satisfactory to the Authority.  The Authority has
required that you provide the Authority with information regarding
your income, the income of other members of your family, or the
identity and number or composition of the persons in your household
necessary to determine the rent, eligibility and the appropriateness
of the size of your apartment.

### BREACH OF RULES AND REGULATIONS IN THAT:

5.  Since 2003, in violation of Paragraph 7(a) and 7(b) of your
Authority Resident Lease Agreement you, IVY WILLIAMS, tenant of
record, failed, neglected, or refused to submit to the Authority, as
specified above, statements setting forth requisite facts as to your
income, the income of other members of your family, the identity and
number or composition of the persons in your household necessary to
determine the rent, eligibility and the appropriateness of the size
of your apartment, or any other relevant information.

6.   Since 2003, in violation of Paragraph 6(b) and 6(c) of your Authority Resident Lease Agreement you, IVY WILLIAMS, tenant of record, failed to pay additional rent due to the Authority because you failed to report a change in income, or misrepresented or misstated the correct income.

THAT AT ALL TIMES SET FORTH IN THESE CHARGES, IVY WILLIAMS WAS A RESIDENT OF THE PREMISES WHICH IS THE SUBJECT OF THIS PROCEEDING.

BY VIRTUE OF THE ABOVE, YOUR CONTINUED OCCUPANCY CONSTITUTES:

A DANGER TO THE HEALTH AND SAFETY OF THE TENANT'S NEIGHBORS,

CONDUCT ON OR IN THE VICINITY OF THE AUTHORITY PREMISES WHICH IS IN THE NATURE OF A SEX OR MORALS OFFENSE,

A SOURCE OF DANGER OR A CAUSE OF DAMAGE TO THE EMPLOYEES, PREMISES, OR PROPERTY OF THE AUTHORITY,

A SOURCE OF DANGER TO THE PEACEFUL OCCUPATION OF OTHER TENANTS,

OR

A COMMON LAW NUISANCE.

# EXHIBIT C

# NEW YORK CITY HOUSING AUTHORITY

December 3, 2007

**GM-3742**
**(Obsoletes GM-3630)**

**TO:**   Distribution C
**FROM:**   Robert Podmore, Deputy General Manager for Operations
**SUBJECT:**   **MENTAL COMPETENCE ASSESSMENT AND GUARDIANS AD LITEM**

## I.   Purpose

This GM replaces GM-3630, *Termination of Tenancy: Mentally Incapacitated Tenant.*
GM-3627, R*eferrals for NYCHA Social Services,* remains unchanged.

This GM sets forth the procedures for:

- Assessing the mental competence of tenants who may be subject to tenancy termination proceedings, and remaining-family-member claimants who are entitled to administrative grievance hearings on their remaining-family-member claims

- Appointing Guardians Ad Litem (GALs) in connection with tenancy termination proceedings and remaining-family-member grievance hearings

- Informing the Housing Court that a tenant may not be mentally competent

## II.   Article 81 Guardians

These procedures do not apply to tenants for whom a guardian has been appointed under Article 81 of the New York Mental Hygiene Law (Article 81 guardian).  If a tenant has an Article 81 guardian, the Housing Authority should proceed as directed in the order of appointment, when it commences termination of tenancy or Housing Court proceedings. Usually, copies of all documents are served on the Article 81 guardian.

## III.   Tenancy Termination Proceedings

A. Housing Manager's Identification of Tenants Who May Require A Guardian Ad Litem (GAL)

When commencing a termination of tenancy proceeding, the Housing Manager or designee should refer the matter to the NYCHA Social Services Department (Social Services) for an evaluation of mental competence if (s)he knows, through personal knowledge, documents in the tenant file, or information conveyed to the Housing Manager or designee by others, that the tenant (signatory to the lease) meets any of the following criteria:

## GM-3742: MENTAL COMPETENCE ASSESSMENT AND GUARDIANS AD LITEM

1. Within the past year, the tenant has been hospitalized for a mental illness.

2. Within the past year, the tenant has been represented by a Guardian Ad Litem because of a mental condition.

3. Within the past year, a mental health professional has declared in writing that the tenant has a mental disease or defect that may render him or her incapable of participating in legal proceedings. If, in the past year, a mental health professional has declared in writing that the tenant has a mental disease or defect, but has not declared that the tenant is incapable of participating in legal proceedings, the Housing Manager or designee may consider whether this writing, along with any other information available to him/her, demonstrates seriously confused or disordered thinking within the meaning of Section III. A. 7., and, if so, the Housing Manager or designee should refer the matter to Social Services for an evaluation of mental competence.

4. Within the past year, the tenant has received services from Adult Protective Services (APS) because of a mental condition. If the tenant receives services from APS solely for a physical condition, the Housing Manager or designee shall not refer the tenant for a mental competence evaluation.

5. The tenant currently receives SSI or Social Security for a mental disability.[1]

6. The tenant declared on his/her most recent NYCHA form 040.297, *Occupant's Affidavit of Income,* that (s)he has a mental disability, or

7. Within the past year, the tenant has exhibited seriously confused or disordered thinking.[2]

---

[1]If the Housing Manager or designee knows that the tenant receives SSI or Social Security because of a disability, but does not know the nature of the disability, (s)he shall attempt to determine whether the disability is of a physical or mental nature by reviewing the tenant file for a copy of an SSI or SSD award letter containing the reasons for the SSI or SSD award. If the tenant receives SSI or Social Security because of a mental disability, the Housing Manager or designee shall refer the tenant to the NYCHA Social Services Department for a mental competence evaluation, as described in Section III. C. If the tenant receives SSI or SSD for a physical disability, the Housing Manager or designee shall not refer the tenant for a mental competence evaluation, unless there is also evidence that the tenant suffers from a mental disability.

[2]If the tenant is subject to poor housekeeping charges because of hoarding, the Housing Manager or designee should consider whether this behavior, along with any other information available to him/her, evidences seriously confused or disordered thinking so as to warrant a mental competence evaluation, as described in Section III. C.

GM-3742: MENTAL COMPETENCE ASSESSMENT AND GUARDIANS AD LITEM

B. Housing Manager's Referral for GAL Social Services Evaluation

The Housing Manager or designee refers the tenant for a GAL Social Services evaluation (an evaluation for the possible appointment of a GAL, and not a general referral to the Social Services Department per GM-3627) by:

1. Completing the "Tenant - Resident Information" and "NYCHA Referral Source" portions of NYCHA form 040.687, *GAL: Mental Competence Evaluation Request,* and forwarding it to Social Services, along with any documentation relevant to the tenant's mental competence.

> **NOTE:    SUBMIT FORM BY COMPUTER:**
>
> In all Termination of Tenancy cases, staff completes the *GAL: Mental Competence Evaluation Request,* and submits it to the Social Services Department by computer. Refer to Appendix A for submission instructions.
>
> **SUBMIT FORM MANUALLY:**
>
> - If the computer system is <u>not</u> accessible, or
> - If the person being referred for evaluation is a Remaining Family Member claimant.
>
> Staff completes the *GAL: Mental Competence Evaluation Request* (available in the Forms and Reference library), and sends it to the applicable Borough Social Services Office.

2. Attaching a copy of the *GAL: Mental Competence Evaluation Request* to NYCHA form 040.276, *Transmittal to Terminations Unit – Termination of Tenancy Case.* Retain a copy in the development tenant's folder.

C. Social Services Evaluation of Mental Competence

1. Upon receipt of the *GAL: Mental Competence Evaluation Request,* Social Services shall, within 30 days, perform an evaluation of the tenant's mental competence, complete a report setting forth any relevant information, and recommend whether or not a Guardian Ad Litem (GAL) should be appointed for the tenant.

2. Social Services shall not recommend the appointment of a GAL if it determines that the tenant is mentally competent.

**DEFINITION OF MENTAL COMPETENCE:**  A tenant who is mentally competent is able to:

a.  Understand the nature of the proceedings

b.  Adequately protect and assert his/her rights and interests in the tenancy

3.  If Social Services cannot determine that a tenant is mentally competent, it shall recommend the appointment of a GAL.

4.  Social Services completes the "APS Referral Information" and "NYCHA Social Services Department: Competence Determination" portions of the *GAL: Mental Competence Evaluation Request,* and forwards it to the following:

- Law Department, along with any underlying Social Services reports
- Housing Manager or designee, without underlying Social Services reports. This is for filing in the Tenant Folder.

D.  Law Department

1.  If Social Services determines that the tenant is competent, the Law Department proceeds as usual.

2.  If Social Services determines that the tenant requires a GAL, the Law Department will complete NYCHA form 150.111, *GAL: Guardian Ad Litem Request*, and send it to the Office of Impartial Hearings or the Office of the Secretary, for the appointment of a GAL.  An administrative hearing shall not proceed before a GAL is appointed.

3.  The Law Department will serve charges and all notices on the following:

- Tenant
- Guardian Ad Litem (GAL)
- Tenant's legal representative, if any

4.  Before proceeding with a hearing or requesting a decision on default, the Law Department shall provide the hearing officer and the GAL with a copy of the completed *GAL: Mental Competence Evaluation Request,* and underlying Social Services reports, if any.

**GM-3742: MENTAL COMPETENCE ASSESSMENT AND GUARDIANS AD LITEM**

E.  Appointment of Guardian Ad Litem (GAL)

1.  The Office of Impartial Hearings or the Office of the Secretary sends the *GAL: Guardian Ad Litem Request* to the Civil Court and, after receiving the names of prospective GALs, appoints a GAL by written notice.

2.  Prior to a hearing, if it appears that a tenant may not be competent because of a mental disease or defect, the Law Department shall seek the appointment of a GAL, or shall refer the tenant for Social Services evaluation, without regard to any prior Social Services evaluation or competence determination.

3.  At a hearing, if it appears that a tenant may not be competent because of a mental disease or defect, the hearing officer shall seek the appointment of a GAL, or shall refer the tenant for Social Services evaluation, without regard to any prior Social Services evaluation or competence determination.

F.  Impartial Hearing Officer

1.  The hearing officer shall review the *GAL: Mental Competence Evaluation Request* and any underlying *Social Services reports* before proceeding with a hearing or issuing a decision on default.

2.  The hearing officer has jurisdiction to hear applications to set aside defaults, or stipulations of settlement, on grounds that the tenant was not competent at the time (s)he defaulted, or entered into a stipulation.  In making a determination, the hearing officer shall consider any evidence of mental impairment, and take due account of potential limitations arising from the impairment on the applicant's ability to articulate extensively the reasons for the default.

3.  When opposing applications to set aside defaults, or stipulations, on grounds that a tenant was not competent because of a mental disease or defect at the time of default or stipulation, the Law Department shall provide the hearing officer with any information in NYCHA's possession bearing on that issue.

G.  Payment of Guardian Ad Litem (GAL)

At the conclusion of a case, the GAL shall submit an invoice, NYCHA form 150.113, *GAL: Guardian Ad Litem - Invoice for Services Rendered*, to the Office of Impartial Hearings.

## IV.  Remaining-Family-Member Claimants

A.  Housing Manager's Referral for Evaluation

**GM-3742: MENTAL COMPETENCE ASSESSMENT AND GUARDIANS AD LITEM**

If a remaining-family-member claimant requests and is entitled to a grievance hearing before the Office of Impartial Hearings, and if the Housing Manager or designee knows, through personal knowledge, documents in the tenant file, or information conveyed to the Housing Manager or designee by others, that the claimant meets any of the criteria in Section III. A., the Housing Manager or designee shall refer the claimant for a GAL Social Services evaluation, as described in Section III. The grievance hearing shall not go forward until the evaluation process has been completed.

B. Social Services Evaluation

The evaluation by Social Services, appointment of a GAL, and processing of the remaining-family-member hearing, shall be governed by the procedures in Section III. of this GM.

## V.    Housing Court Proceedings

When applying for a default judgment, appearing for trial, or entering into stipulations of settlement, if the Housing Manager or designee has information relating to the tenant's mental competence, the Housing Manager or designee shall complete the applicable forms, as noted below, which shall be submitted to the Housing Court.

A. Nonpayment Defaults

When seeking a final judgment and warrant of eviction against a tenant who did not answer in a nonpayment proceeding, if the Housing Manager or designee has information relating to the tenant's mental competence, he/she shall complete NYCHA form 150.106A, *Request For Final Order and Issuance of Warrant (Special Court Notice)* which shall be submitted to the Housing Court.

If there are no mental competence issues, the Housing Manager or designee shall request a warrant, by using NYCHA form 150.106, *Request for Final Order and Issuance of Warrant.*

B. Nonpayments, Holdovers, and Bawdy House Proceedings

For court appearances, the Housing Manager or designee shall complete NYCHA form 150.112, *Special Court Notice*, for submission to the Housing Court, if the Housing Manager or designee has information relating to the tenant's mental competence.

In completing the *Request for Final Order and Issuance of Warrant (Special Court Notice)* or the *Special Court Notice*, the Housing Manager or designee shall include all information relating to mental competence, using the criteria listed in Section III. A., as a guide to completing these notices.

**GM-3742: MENTAL COMPETENCE ASSESSMENT AND GUARDIANS AD LITEM**

> **NOTE:**   Scan, attach to an e-mail and send to the *"Law Dept Guardians"* mailbox a copy of each completed notice as follows:
>
> - *Request for Final Order and Issuance of Warrant (Special Court Notice)*
>
> - *Special Court Notice*

## VI.   Related NYCHA Forms

The following NYCHA forms are referred to in this GM:

| | |
|---|---|
| 040.276 | *Transmittal to Terminations Unit – Termination of Tenancy Case* |
| 040.297 | *Occupant's Affidavit of Income* |
| 040.687 | *GAL: Mental Competence Evaluation Request* |
| 150.106 | *Request for Final Order and Issuance of Warrant* |
| 150.106A | *Request for Final Order and Issuance of Warrant (Special Court Notice)* |
| 150.111 | *GAL: Guardian Ad Litem Request* |
| 150.112 | *Special Court Notice* |
| 150.113 | *GAL: Guardian Ad Litem - Invoice for Services Rendered* |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IVY WILLIAMS,                                    No. 07 Civ. 7587 (RJS)

                     Plaintiff,

       - against -

NYCHA and HUD,

                 Defendants.

## DECLARATION OF SAMUEL VEYTSMAN IN SUPPORT OF DEFENDANT NEW YORK CITY HOUSING AUTHORITY'S MOTION TO DISMISS THE AMENDED COMPLAINT

RICARDO ELIAS MORALES
General Counsel
New York City Housing Authority
Attorney for Defendants
250 Broadway, 9th Floor
New York, New York 10007
(212) 776-5033

Donna M. Murphy,
Samuel Veytsman,
Of Counsel