UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IVY WILLIAMS,

                  Plaintiff,

       - against -

NYCHA and HUD,

                 Defendants.

No. 07 Civ. 7587 (RJS)

---

## DECLARATION OF MICHAEL WYANDS IN SUPPORT OF DEFENDANT NYCHA'S MOTION TO DISMISS THE AMENDED COMPLAINT AND EXHIBITS A THROUGH C

---

RICARDO ELIAS MORALES
General Counsel
New York City Housing Authority
Attorney for Defendants
250 Broadway, 9th Floor
New York, New York 10007
(212) 776-5033

Donna M. Murphy,
Samuel Veytsman,
Of Counsel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
IVY WILLIAMS,

                    Plaintiff,

          -against-

NYCHA and HUD,

                 Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

No. 07 Civ. 7587 (RJS)

**DECLARATION OF MICHAEL WYANDS IN SUPPORT OF DEFENDANT NYCHA'S MOTION TO DISMISS THE AMENDED COMPLAINT**

MICHAEL WYANDS, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct:

1.     I am employed by defendant New York City Housing Authority ("NYCHA") and I hold the position of Assistant Manager at NYCHA's Frederick Douglass Houses public housing development ("Douglass Houses"). I make this affidavit in support of NYCHA's Motion to Dismiss the Amended Complaint based upon personal knowledge of the matters stated herein or based upon an examination of NYCHA records kept in the normal course of business.

**Douglass Houses**

2.     Frederick Douglass Houses is a housing development operated by NYCHA on the Upper West Side of Manhattan. Douglass Houses includes 2,054 apartments housing approximately 4,588 residents. Plaintiff resides on the fourteenth floor of a seventeen-story apartment building which contains 136 apartments.

**Retrofitted Apartments and Reasonable Accommodations at NYCHA**

3.     NYCHA maintains a number of apartments retrofitted to accommodate residents with disabilities. Among other accommodations, retrofitted apartments are accessible to residents with limited mobility, including residents requiring canes and wheelchairs. There are no restrictions for

the location of handicapped-accessible apartments in buildings with elevators and such apartments may be on any floor in an elevator building.

4.    All NYCHA public housing tenants must annually submit an "Occupant's Affidavit of Income," which requires tenants to state whether any one in their household has a disability and, if so, whether they would like to request an accommodation for that disability.  The Occupant's Affidavit of Income also requires tenants to provide comprehensive and accurate information regarding their household's income.  Accurate and timely reporting of a tenant's household income is required in part because a public housing tenant's rent is calculated based upon their income.  A true and correct copy of Plaintiff's 2002 Occupant's Affidavit of Income, dated October 16, 2002, is annexed as Exhibit A hereto.

**Plaintiff's Tenancy**

5.    A true and correct copy of Plaintiff's original Resident Lease Agreement with NYCHA, dated June 26, 1995, for Apt. 5I at 875 Columbus Avenue, New York, New York 10025, is annexed as Exhibit B hereto.

6.    On her 2002 Occupant's Affidavit of Income, Plaintiff stated that someone in her household has a disability and she requested an accommodation from NYCHA.  Specifically, Plaintiff stated that her mobility is impaired, requiring her to walk with a cane.

7.    On or about April 25, 2003, Plaintiff was selected for an apartment, located at 140 West 104th Street, Apt. 14A, New York, New York 10025, at Douglass Houses, which is retrofitted pursuant to section 504 of the Rehabilitation Act to accommodate residents with disabilities, including residents with mobility impairments. On April 29, 2003, Plaintiff viewed and accepted her current apartment, which is on the fourteenth floor of an elevator building.  A true and correct copy of excerpts from Plaintiff's Interview Record is annexed as Exhibit C hereto.  Included in Exhibit C

are entries memorializing Plaintiff's selection for, and acceptance of, the above-referenced retrofitted apartment.

8.    A true and correct copy of Plaintiff's Resident Lease Agreement with NYCHA, dated May 1, 2003, for Apt. 14A at 140 West 104th Street, New York, New York 10025, is annexed as Exhibit D hereto.  That Resident Lease Agreement provides that Plaintiff's rent is due and payable on the first day of each month and that Plaintiff must report any changes in her household's income to the management office within 30 days of such changes.

**Termination of Tenancy Administrative Proceedings Against Plaintiff**

9.    On September 26, 2006, Douglass Houses management submitted a "Transmittal to Terminations Unit - Termination of Tenancy Case," stating that Plaintiff failed to submit annual income review papers for 2005, despite multiple written notices of her delinquency.  A true and correct copy of this Transmittal to Terminations Unit - Termination of Tenancy Case, is annexed as Exhibit E hereto.  On January 12, 2007, NYCHA preferred charges against Plaintiff based on this failure to furnish information, and a termination of tenancy hearing on these charges was scheduled. A true and accurate copy of said charges, and notice to Plaintiff thereof, is annexed as Exhibit F hereto.

10.    Through a report from NYCHA's Office of the Inspector General, Douglass Houses management learned that Plaintiff did not report receipt of $1,100 a month in court-ordered support payments.  Consequently, this amount was not factored into Plaintiff's rent calculation, resulting in Plaintiff being charged less rent then she should have been.

11.    Plaintiff underpaid her rent by more than $12,000 over the course of these four years, not including interest.  A true and correct copy of a calculation of Plaintiff's underpayment of rent

prepared by Housing Assistant Glenn Richter on March 30, 2008, and a NYCHA Interview Record entry reflecting this calculation, is annexed as Exhibit G hereto.

12.     Plaintiff met with Douglass Houses management on August 17, 2007 to discuss her failure to report this income, at which time she became angry and combative and stated that she would never pay her rent again.  A true and correct copy of Plaintiff's Interview Record entry reflecting this meeting is included in Exhibit C hereto.

13.     Following the August 17, 2008 meeting with Plaintiff, Douglass Houses management submitted a "Transmittal to Terminations Unit - Termination of Tenancy Case," stating that Plaintiff failed to accurately report her income for four years and recommending termination of Plaintiff's tenancy.  A true and correct copy of this Transmittal to Terminations Unit - Termination of Tenancy Case, dated August 17, 2008, is annexed as Exhibit H hereto.

**Involvement with the Douglass Houses Resident Association**

14.     In or around February 2007, Plaintiff sought to run for office in the Douglass Houses Resident Association.  Tenants who are noncompliant with their lease are ineligible to run for resident association office.  Because Plaintiff had failed to provide NYCHA with information regarding her household income, Plaintiff was noncompliant with her lease and, therefore, was ineligible to run for Douglass Houses Resident Association office.

**Plaintiff's Chronic Rent Delinquency and Housing Court Proceedings**

15.     Plaintiff has not paid her rent since May 7, 2007.   A true and correct copy of a computer printout of Plaintiff's rent status as of July 1, 2008 is annexed as Exhibit I hereto.  This document indicates that, as of the date of the printout, Plaintiff owed NYCHA $2,744.90 in rent, not including interest and not including any underpayment of rent due to her failure to report the court-

4

ordered support payments as income.

16.    On February 21, 2008, a NYCHA Housing Assistant served Plaintiff with a Rent Demand for unpaid rent from June 2007 through February 2008.  Plaintiff refused to discuss the matter with the Housing Assistant.  Shortly after refusing to speak with the Housing Assistant, Plaintiff called the Douglass Houses management office stating she would sue NYCHA and its employees and would send the police after Douglass Houses management employees.  Entries in Plaintiff's Interview Record reflecting these events are included in Exhibit C hereto.

17.    On March 24, 2008, NYCHA issued Plaintiff a second Rent Demand, stating that Plaintiff must either pay NYCHA the sum of $1,870.90, representing Plaintiff's unpaid rent for June 2007 though March 2008, or vacate the apartment within three days.  A true and correct copy of that Rent Demand is annexed as Exhibit J hereto.  The rent demand advised Plaintiff that if she did not make the requisite payment or vacate the apartment within the three-day period, summary proceedings would be instituted against her to recover possession of the apartment.

18.    Plaintiff has neither paid her outstanding rent nor vacated her apartment and, consequently, NYCHA initiated summary proceedings eviction proceedings against her in housing court in May 2008.

**External Trash Containers and Elevators at Douglass Houses**

19.    Douglass Houses maintains three exterior trash containers for storing waste and debris until it is picked up by the New York City Department of Sanitation.  The New York City Department of Sanitation removes all trash and debris from external trash containers every Tuesday and Friday.  If a trash container becomes full between those days, NYCHA contacts the Department of Sanitation so that the garbage may be removed as quickly as possible.

20.    A playground and a parking lot separate Plaintiff's apartment building from the nearest external trash container. Although that trash container is multiple building lengths away from Plaintiff's building, it is visible from Plaintiff's fourteenth floor window. That trash contaner had been moved from its prior location next to a Douglass Houses apartment building so that residents adjacent to that container would not be affected in the event of a fire in the container. That trash container's current location was selected in consultation with the New York City Department of Sanitation and the Douglass Houses Resident Association, with direct input from residents.

21.    Each external trash container at Douglass Houses is surrounded by a steel bar fence, the gate to which is locked every evening. If this gate is damaged by vandalism or accident, NCYHA repairs it as quickly as possible.

22.    All Douglass Houses trash containers are cleaned and deodorized daily, and more often if needed. Douglass Houses staff conduct daily inspections of trash container areas to insure that garbage and bulk debris remains within fenced areas.

23.    The areas around trash containers are treated by an exterminator on a monthly basis. Additionally, any rat holes discovered on Douglass Houses grounds are covered immediately.

24.    To the best of my knowledge, Plaintiff is the only resident at Douglass Houses to complain of the external trash containers' placement or maintenance.

25.    All Douglass Houses elevators are inspected daily. In the event an elevator requires repair, such repairs are performed immediately, on an emergency basis, and are generally completed within the same day.

**Plumbing Work on Plaintiff's Apartment**

26.    NYCHA records indicate that repairs were made to the toilet in Plaintiff's apartment

on June 30, 2004. On that date, Plaintiff came into the Douglass Houses management office at approximately 10:00 a.m., demanding that she be provided with a new bathroom for her exclusive private use because plumbers were working on her toilet. Douglass Houses management determined that work on Plaintiff's bathroom would be completed by 2:00 p.m. Plaintiff was informed that there were no spare bathrooms for her exclusive use, but that she was welcome to use the bathroom in the management office. In response, Plaintiff screamed threats and obscenities at management personnel. A true and correct copy of Plaintiff's Interview Record entry summarizing this incident is included in Exhibit C hereto.

Dated: New York, New York
     August 12, 2008

_____
Michael Wyands

# EXHIBIT A

NYCHA 040.297 (Rev. 4/02)

**NEW YORK CITY HOUSING AUTHORITY**

| |
|---|
| *J MUST RETURN THIS FORM TO THE MANAGEMENT OFFICE BY THE DUE DATE SPECIFIED ON THE ADDRESS LABEL* |

# OCCUPANT'S AFFIDAVIT OF INCOME

Period from 10-01-01 to 9-30-02
Due Date 10-16-02, HA Rev.YR.2002
IVY WILLIAMS
875 COLUMBUS AVE   APT.# 05I
NEW YORK, NY  10025

(     ) _____
**HOME TELEPHONE NO.**

(     ) _____
**WORK TELEPHONE NO.**

FOR THE 12 MONTH PERIOD SPECIFIED ABOVE ON ADDRESS LABEL

## *DO NOT DETACH THIS FORM - KEEP ALL PAGES STAPLED*
### READ ENCLOSED INSTRUCTION LETTER - COMPLETE ALL SECTIONS OF THIS DOCUMENT (8 PAGES)

| MAILING ADDRESS (if different from above) | P.O. Box or Street Address SAME | City & State SAME | Zipcode + 4 |
|---|---|---|---|

*NOTICE:* List all occupants living in your apartment. Failure to do so may deprive them of all rights of occupancy. No person is allowed to reside in your apartment except authorized members of your family (which is based on authorized original family members who remain in continuous residence and births), unless written permission is REQUESTED by you and GRANTED by Management.

**A**

### FAMILY COMPOSITION
Information about race and ethnicity is required for statistical purposes to ensure non-discrimination in public housing programs. For **each** family member, place the correct code in both the Ethnicity and Race boxes.
* Ethnicity Codes:  NH = Non-Hispanic   PR = Puerto Rican   OH = Other Hispanic
** Race Codes: W = White   B = Black   AI/NA = American Indian/Native Alaskan   A= Asian   PI = Pacific Islander

| Persons Living in Apartment | Relation-ship | Social Security Number | Date of Birth | School Name (Submit proof if full-time student and over 18) | Ethnicity * | Race ** |
|---|---|---|---|---|---|---|
| Ivy Williams | Lessee | 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 | 9/21/59 | N/A | HUMAN | BEING |
| Jason Williams | Son | 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 | 8/4/85 | West Side HS | " | " |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### TENANTS' CERTIFICATION - *SIGN ONLY AFTER COMPLETING ALL PAGES OF THIS FORM*

| NOTICE: | The New York City Housing Authority may ask for proof of all statements made by you and an authorization signed by all adult members of your household for the release of information . Failure to return this Affidavit or supply any additional information required by the date requested, or willful submission of incorrect information, may result in a backcharge for rent, termination of your lease and civil or criminal prosecution. |
|---|---|

**TO BE SIGNED BY PERSON(S) WHO SIGNED LEASE:** I/We certify that the information listed on all pages of this form is accurate and complete to the best of my/our knowledge and belief. I/We authorize the New York City Housing Authority to independently verify the accuracy of all information submitted. I/We understand that providing false statements or information is punishable under Federal and local laws. I/We also understand that providing false statements or information is grounds for termination of tenancy. Further, I/We have read or have had read to me/us the above statement.

| Signature of Lessee | Date | Signature of Co-Lessee | Date |
|---|---|---|---|
| *Ivy Williams* | 10/16/02 | | |

*(Vea la última página para la traducción en español)*

| B | FEDERAL PRIVACY ACT STATEMENT |
|---|---|

The U.S. Department of Housing and Urban Development (HUD) collects information on tenants in HUD-assisted rental housing. The U.S. Privacy Act of 1974 established requirements governing HUD's use and disclosure of the information it collects on individuals and families.

Public housing agencies (PHAs) operating such housing send HUD information on their tenants' income, family composition, rent, etc. This information was already given by the tenants to the PHAs when applying or being reexamined. It is transferred to HUD forms for data collection. The forms may be sent to a contractor who keypunches the information in preparation for processing by HUD computers.

**USE:** HUD uses the information for budget development, program evaluation and planning, and reports to the President and Congress. HUD also uses the information to monitor compliance with Federal requirements on eligibility and rent and to verify the accuracy and completeness of the income information.

**PUBLIC ACCESS:** Summaries of tenant data are available to the public. Disclosure of information about individuals and families is restricted by the Privacy Act of 1974. Such information is released to appropriate Federal, State or local agencies to verify information relevant to eligibility and rent determinations and when applicable to other civil, criminal or regulatory matters.

The Privacy Act restricts HUD's disclosure of information on individuals and families but does not restrict the PHA from releasing such information. There are New York State and local laws or regulations that govern disclosure by the New York City Housing Authority.

**INFORMATION REQUIREMENTS:** Federal law requires you to report your Social Security number to HUD or the PHA. Your failure to report your Social Security number constitutes grounds for denial of eligibility or termination of assistance under the program. HUD uses the Social Security number as an identifier in computer-matching to check the eligibility and rent determinations made by the PHA.

All information must be provided to HUD so that it can carry out its monitoring and data collection responsibilities. Failure to do so may result in eviction or the withdrawal of housing assistance (depending on the housing program).

**AUTHORITY:** HUD is permitted to ask for the information by the U.S. Housing Act of 1937 as amended, 42 U.S.C., 1437 et. seq., the Housing and Community Development Act of 1981, Public Law 97-35, 85 Stat., 348, 408.

SIGNATURE: I/we have read this Federal Privacy Act Statement on _____10/16/02_____
                                                                                                                          Date

_____                           _____
                    Lessee                                                                           Co-Lessee

**If you believe you have been discriminated against, you may call
the Fair Housing and Equal Opportunity National Toll-free Hot Line at 1-800 424-8590.**

| C | DO YOU HAVE A DOG OR CAT IN YOUR APARTMENT?    ☐ No    ☐ Yes. |
|---|---|

If you answered YES to this question, you must complete and submit the form,
*Dog and Cat Registration* (a copy is included); it is also available at the Management Office.

RECEIVED
OCT 1 6 2002
FREDERICK DOUGLASS HOUSE

PRINT FULL NAME: _Ivy W. Iams_    CCOUNT #: _082-009-051_

| D | Disability Status and Notice of Reasonable Accommodation |
|---|---|
| | *Check and sign ONE box below.  Complete Section 3 if a person with a disability lives in the apartment.* |

The New York City Housing Authority will provide reasonable accommodation to meet the needs of persons with disabilities. A reasonable accommodation may include a modification to your apartment, common areas in and around your apartment building, development grounds, certain NYCHA programs and facilities, or transfer to another unit.  The Housing Authority may require you to provide documentation to support your claim for a reasonable accommodation.  If conditions change after you submit this form, you may fill out and submit a new form.  If you need an explanation of disabilities or reasonable accommodations, information regarding the rights of persons with disabilities, or help in completing this form, you may contact your development's management office or the NYCHA Department of Equal Opportunity, Services for the Disabled at **(212) 306-4652 or TDD (212) 306-4445**.

| SECTION 1 | ☑ | **There is no one in my household with a disability.** | | |
|---|---|---|---|---|
| Lessee(s) | | _Ivy Williams_ | Date | _10/16/02_ |

| SECTION 2 | ☐ | There is someone in my household with a disability, but I am **not** requesting the Housing Authority to provide any accommodation at this time. |
|---|---|---|
| _Within complex_ | ☑ | There is someone in my household with a disability, **and** I am requesting that NYCHA provide an accommodation. I understand that someone will contact me so that I may specify any disability related problems I have with my apartment, building, development grounds or NYCHA programs.  Based upon my response, I understand that NYCHA will offer me a reasonable accommodation, which may include a modification to my present apartment, building, development grounds or NYCHA programs, or offer to transfer me and my household members to a modified apartment. |
| Lessee(s) | | Date |

List all persons in your household with a disability.  Write **"YES"** in those columns that describe the disability.  Although disclosure of this information is not compulsory under Federal Law, NYCHA strongly encourages you to accurately and completely fill in the information, which will be used to determine your eligibility for an income deduction based on disabled status and allow NYCHA to provide additional service, if needed, in case of emergencies. The information supplied will be kept confidential in accordance with Law.

| SECTION 3 | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Disabled Person's Name** | Uses Wheel chair | Uses walker, crutches, cane, leg braces; is an amputee or has difficulty walking or climbing stairs | Blind or Vision Impaired | Deaf or hard of hearing | Mental or psychological disability | Other physical disability (please list) | Depends on Life-Sustaining Equipment (describe) |
| _Ivy Williams_ | | CANE ✓ | | ✓ | ✓ | _Skull/spine_ | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| E | Please list the nearest relatives or friends in the New York City Area who can be contacted in an emergency. |
|---|---|

| Name | Address | Telephone No. | Relationship |
|---|---|---|---|
| JANE WISDOM | 868 Amsterdam Ave | (212) 864-7550 ( ) - | Sister |

**F**   PRESENT EMPLOYMENT: Does anyone in apartment work? ☑ No ☐ Yes. If Yes, complete this section.

| Full Name of Each Employed Person | Total Earned in Past 12 Months (Gross) | Present Rate of Pay (Gross) | Name and Address of Present Employer (List last year's employers in Section H if different) |
|---|---|---|---|
| N/A | $ | $   per | Name _____ Address _____ |
| | $ | $   per | Name _____ Address _____ |
| | $ | $   per | Name _____ Address _____ |

Did any of the above employed persons receive TIPS, a BONUS, COMMISSIONS or any other forms of compensation given IN ADDITION TO WAGES, during the past year? ☐ No ☐ Yes. If yes, list:

Name _____ N/A _____ Type _____ Amount $ _____

**G**   DEDUCTIONS CLAIMED FOR PAST 12 MONTHS BY EACH WAGE EARNER. Indicate amount and nature of each claimed deduction and the name of the person claiming the deduction. *(See enclosed letter for instructions)*

| Name | Amount | Explanation | Name | Amount | Explanation |
|---|---|---|---|---|---|
| | | | | | |

**H**   PRIOR EMPLOYMENT: List the names and addresses of each employer in past year *other than the present employer.*

| Name of Person Employed | Dates Employed From | To | Weekly Hours of Work | Rate of Pay (Gross) | Names & Addresses of Employers (List each employer separately) | Total Gross Amount Earned Past 12 Months Including Overtime |
|---|---|---|---|---|---|---|
| N/A | | | | $   per   From   To | Name _____ Address _____ | $ |
| | | | | $   per   From   To | Name _____ Address _____ | $ |

**I**   Did anyone in apartment receive UNEMPLOYMENT INSURANCE within the past year? ☐ No ☐ Yes - If Yes, complete this section.

| Name of Person(s) Receiving Unemployment Insurance | Dates | Amount (attach latest statement or copy of current check) |
|---|---|---|
| N/A | From   to | $   Per |
| | From   to | $   Per |

**J**   Does anyone in apartment receive public assistance *(welfare)*? ☐ No ☐ Yes - If yes, complete this section, and attach a copy of the Department of Social Services *(welfare)* BUDGET.

| Name | N/A | Amount of Check $ |
|---|---|---|
| Case # | | Center # |
| Name | | Amount of Check $ |
| Case # | | Center # |

FREDERICK DOUGLASS HOUSE
RECEIVED OCT 16 2002

NYCHA 040.297 (Rev. 4/02)

PRINT FULL NAME: _Ivy Williams_    ACCOUNT #: _082-009-051_

| K | OWN BUSINESS - Is any person in apartment in his/her own business? ☑ No ☐ Yes |
|---|---|

If you answered YES to this question, you must file the form, *Certificate of Net Worth and Income Received from Operation of Business*, NYCHA 040.044, which is available at the Management Office

| L | Does anyone in apartment receive Social Security? ☐ No ☑ Yes - If yes, complete this section. | | |
|---|---|---|---|
| Name of Person(s) Receiving Social Security | | Dates | Amount *(attach latest statement or copy of current check)* |
| _Ivy Williams_ | | From _11/98_ to _PRESENT_ | $ _568_ Per _MONTHLY_ |
| | | From to | $ Per |

| M | Does anyone in apartment receive SUPPLEMENTAL SECURITY INCOME (SSI)? ☐ No ☐ Yes - If yes, complete this section. | | |
|---|---|---|---|
| Name of Person(s) Receiving Supplemental Security Income (SSI) | | Dates | Amount *(attach latest statement or copy of current check)* |
| | | From to | $ Per |
| | | From to | $ Per |

| N | Does anyone in apartment receive a PENSION? ☐ No ☐ Yes - If yes, complete this section. | | |
|---|---|---|---|
| Name of Person(s) Receiving Pension | Source of Pension | Dates | Amount *(attach latest statement or copy of current check)* |
| _N/A_ | | From to | $ Per |
| | | From to | $ Per |

| O | Does anyone in apartment receive a MILITARY ALLOTMENT? ☐ No ☐ Yes - If yes, complete this section. | | |
|---|---|---|---|
| Name of Person(s) Receiving Military Allotment & Branch of Service | | Dates | Amount *(attach latest statement or copy of current check)* |
| _N/A_ | | From to | $ Per |
| | | From to | $ Per |

| P | MILITARY SERVICE: Are you or any authorized occupant of the apartment in the military service or dependent upon someone in the military service? ☐ No ☐ Yes  If yes, list name(s) below (REPORT CHANGES IN STATUS IMMEDIATELY): | | |
|---|---|---|
| Name of Person in Military Service | Location *(Name of Fort, Base, Ship)* | Name of Person who is Dependent on Someone in Military Service |
| _N/A_ | | |

| Q | Does anyone in apartment receive WORKER'S COMPENSATION? ☐ No ☐ Yes - If yes, complete this section. | | |
|---|---|---|---|
| Name of Person(s) Receiving Worker's Compensation and Employer Name | | Dates | Amount *(attach latest statement or copy of current check)* |
| _N/A_ | | From to | $ Per |
| | | From to | $ Per |

**R** Does anyone in apartment receive ALIMONY or CHILD SUPPORT? ☐ No ☐ Yes - If yes, complete this section.

| Name of Person(s) Receiving Alimony or Child Support | Type (e.g., Alimony/Child Support/Court Ordered/Voluntary) | Total Amount Past 12 Months (attach copies of legal documents, voluntary statement or a copy of the current check) |
|---|---|---|
| N/A | | $ |
| | | $ |

**S** Does anyone in apartment receive MONEY CONTRIBUTIONS from family, friends or other sources? ☐ No ☐ Yes - If yes, complete this section. (Use forms that are available at the Management Office)

| Name of Person(s) Receiving Contributions | Source (e.g., Family/Friends, Churches) | Total Amount Past 12 Months |
|---|---|---|
| N/A | | $ |
| | | $ |

**T** Does anyone in apartment have a BANK ACCOUNT? ☐ No ☐ Yes - If yes, complete this section.

| Name of Person(s) with Bank Account and Bank Name | Current Balance | Interest Received in Past 12 Months |
|---|---|---|
| CHASE / IVY WILLIAMS 5113-8300.4628-3601 ACT# | $ 10 | $ |
| | $ | $ |

**U** Do you or anyone in apartment own an interest in any real estate, e.g., house, apartment, store, warehouse, vacant land? ☑ No ☐ Yes.

**If YES, you must submit a signed statement for each property that indicates the following: type of property; address of property; percent of ownership; date of purchase; original purchase price; amount of existing loans that includes name of the lender; current value; and income, if any, for the past year.**

**V** Does anyone in apartment have any ASSETS other than those listed in Sections T and U, e.g., stocks, bonds, money market account? ☑ No ☐ Yes - If Yes, complete this section.

| Name of Person(s) Owning Asset | Type of Asset | Current Book Value (attach copy of appraisal or broker's statement) | Income from Asset Past 12 Months |
|---|---|---|---|
| N/A | | $ | $ |
| | | $ | $ |

**W** Do you pay for child care to enable you to work or seek employment? ☑ No ☐ Yes - If yes, complete this section.

| Name(s) of Child Care Provider(s) | Names of Children in Care | Amount Paid (attach statement signed by care provider) |
|---|---|---|
| N/A | | $          per |
| | | $          per |

**X** Do you pay for care of a Senior Citizen or Disabled person to enable you to work or seek employment? ☑ No ☐ Yes - If yes, complete this section.

FREDERICK DOUGLASS HOUSE
OCT 1 6 2002
RECEIVED

| Name(s) of Care Provider(s) | Name of Senior Citizen/Disabled Person | Amount Paid (attach statement signed by care provider) |
|---|---|---|
| N/A | | $          per |
| | | $          per |

PRINT FULL NAME: Ivy W. Iiams                    ACCOUNT #: 002-009-051

| Y | **AFFIDAVITS OF NON-EMPLOYMENT.** Each person in apartment 18 years old and older not working and not full-time student must answer all questions in this section, sign and have notarized at left. *(ADDITIONAL FORMS AVAILABLE AT MANAGEMENT OFFICE)* |

---

**Person 1 - Name:**

I certify that the statements in the right column are true.

_____
Signature

Sworn to before me this day of _____ ,

Notary or Comm. of Deeds

Are you currently employed? ☑ No ☐ Yes.

Have you ever been employed? ☐ No ☑ Yes. If Yes, when did you stop working? (last job)_____. Where did you work?_____

Do you receive Unemployment Insurance? ☑ No ☐ Yes.

Do you receive Worker's Compensation? ☐ No ☑ Yes.

Do you receive Social Security or SSI? ☐ No ☑ Yes.

Do you receive Disability Insurance Payments? ☑ No ☐ Yes.

Do you receive public assistance (Welfare)? ☑ No ☐ Yes.

Do you receive income from any other source? ☑ No ☐ Yes. If Yes, specify:

Do you have any assets (property)? ☑ No ☐ Yes. If Yes, specify:

---

**Person 2 - Name:**

I certify that the statements in the right column are true.

_____
Signature

Sworn to before me this day of _____ ,

Notary or Comm. of Deeds

Are you currently employed? ☐ No ☐ Yes.

Have you ever been employed? ☐ No ☐ Yes. If Yes, when did you stop working? (last job)_____. Where did you work?_____

Do you receive Unemployment Insurance? ☐ No ☐ Yes.

Do you receive Worker's Compensation? ☐ No ☐ Yes.

Do you receive Social Security or SSI? ☐ No ☐ Yes.

Do you receive Disability Insurance Payments? ☐ No ☐ Yes.

Do you receive public assistance (Welfare)? ☐ No ☐ Yes.

Do you receive income from any other source? ☐ No ☐ Yes. If Yes, specify:

Do you have any assets (property)? ☐ No ☐ Yes. If Yes, specify:

---

**Person 3 - Name:**

I certify that the statements in the right column are true.

_____
Signature

Sworn to before me this day of _____ ,

Notary or Comm. of Deeds

Are you currently employed? ☐ No ☐ Yes.

Have you ever been employed? ☐ No ☐ Yes. If Yes, when did you stop working? (last job)_____. Where did you work?_____

Do you receive Unemployment Insurance? ☐ No ☐ Yes.

Do you receive Worker's Compensation? ☐ No ☐ Yes.

Do you receive Social Security or SSI? ☐ No ☐ Yes.

Do you receive Disability Insurance Payments? ☐ No ☐ Yes.

Do you receive public assistance (Welfare)? ☐ No ☐ Yes.

Do you receive income from any other source? ☐ No ☐ Yes. If Yes, specify:

Do you have any assets (property)? ☐ No ☐ Yes. If Yes, specify:

---

NYCHA 040.297 (Rev. 12/00)

| z | ANNUAL WINDOW GUARD SURVEY – REQUIRED BY LAW |
|---|---|

The New York City Health Code requires the installation of WINDOW GUARDS in your apartment if you have children 10 years of age or younger, or if children 10 years of age or younger visit your apartment.   The New York City Housing Authority will install window guards *FREE OF CHARGE.*  You must complete the questionnaire in this section.

### FAILURE TO COMPLETE THIS QUESTIONNAIRE IS A VIOLATION OF LAW

CHECK ALL BOXES THAT APPLY TO YOU

❑  I NEED WINDOW GUARDS.

❑  CHILDREN 10 YEARS OF AGE OR YOUNGER LIVE IN MY APARTMENT.

❑  CHILDREN 10 YEARS OF AGE OR YOUNGER VISIT MY APARTMENT.

❑  I WANT WINDOW GUARDS EVEN THOUGH I HAVE NO CHILDREN 10 YEARS OF AGE OR YOUNGER.

❑  NO CHILDREN 10 YEARS OF AGE OR YOUNGER LIVE IN OR VISIT MY APARTMENT.

❑  I DO NOT NEED WINDOW GUARDS.

☑  WINDOW GUARDS ARE ALREADY INSTALLED IN ALL WINDOWS IN MY APARTMENT.

❑  WINDOW GUARDS ARE NOT ALREADY INSTALLED IN ALL WINDOWS IN MY APARTMENT.

❑  WINDOW GUARDS INSTALLED IN MY APARTMENT NEED MAINTENANCE OR REPAIR.

❑  WINDOW GUARDS INSTALLED IN MY APARTMENT DO NOT NEED MAINTENANCE OR REPAIR.

LESSEE'S NAME (Print):  Ivy Williams

LESSEE'S SIGNATURE:  *Ivy Williams*

DATE  10/16/02

### IMPORTANT NOTICE!!!

**IT IS A VIOLATION OF LAW TO INTERFERE WITH OR TO REFUSE THE INSTALLATION OF WINDOW GUARDS IF THERE ARE CHILDREN 10 YEARS OF AGE OR YOUNGER LIVING IN OR VISITING THE APARTMENT, OR TO REMOVE ANY WINDOW GUARDS ALREADY INSTALLED.   THE NEW YORK CITY HOUSING AUTHORITY WILL REPORT ALL VIOLATIONS TO THE NEW YORK CITY DEPARTMENT OF HEALTH FOR PROSECUTION.**

FREDERICK DOUGLASS HOUSE

OCT 1 6 2002

RECEIVED

# EXHIBIT B

| NYCHA 040.001F (Rev. 7/92) | NEW YORK CITY HOUSING AUTHORITY |
| RESIDENT MONTHLY LEASE AGREEMENT | FREDERICK DOUGLASS |
| *FEDERAL* | HOUSES |

1.    New York City Housing Authority (hereinafter called "the Landlord") in consideration of the rental herein paid and the representations made by _____ IVY WILLIAMS _____ (hereinafter called "the Tenant") as set forth in his signed application, and his undertaking to comply with the Tenant Rules and Regulations, receipt of which is hereby acknowledged by the Tenant, and with all of the regulations of the Landlord, hereby leases to the Tenant and the Tenant hereby hires from the Landlord Apartment ___51___ in premises ___875 COLUMBUS AVENUE_____ in the Borough of ___MANHATTAN___, City and State of New York, for the term of one (1) month, beginning the first day of ___JULY___, 19 95, and terminating midnight on the last day of ___JULY___, 19 95, at a rental of ___NINETYNINE___ Dollars ($ 99 00) per month, due the first day of ___JULY___, 19 95, and payable at such day each month as the Landlord may decide. The above rental includes gas and electricity (except as indicated in paragraph 6 hereof) not in excess of a quantity which the Landlord in its discretion will fix, and may from time to time change. This lease, unless terminated as hereinafter provided, shall automatically be renewed for successive terms of one (1) month each. Subject to the provisions herein the Landlord or the Tenant may each terminate this lease and tenancy at the end of any monthly term by giving to the other one calendar month's prior notice in writing.

2. **OCCUPANCY**

   The premises shall be used by the Tenant solely as a residence for himself and the members of his household named in the Tenant's signed application. The Tenant shall have the right to exclusive use and occupancy of the leased premises which shall include reasonable accommodation of the Tenant's guests or visitors for a temporary period. The Tenant agrees to abide by such necessary and reasonable regulations pertaining to occupancy as may be promulgated by Management for the benefit and well being of the housing project and its tenants.

3. **REDETERMINATION OF RENT**

   The rent shall be redetermined by the Landlord on a date to be fixed by the Landlord and annually thereafter or within such other period as may be hereinafter fixed by the Landlord. In addition to the annual redetermination, interim redetermination of rent shall be made in accordance with the regulations of the Landlord which regulations set forth the basis of such interim redeterminations, and are posted in the manner set forth in paragraph 18 hereof. All redetermination of rent shall be in accordance with the rent schedules as posted and with the Regulations of the Landlord. Such interim change provisions, rent schedules, or other Landlord regulations pertaining to interim changes and any modification thereof shall be effected by posting in the manner set forth in paragraph 18 hereof.

4. **INFORMATION TO BE FURNISHED BY THE TENANT**

   The Tenant agrees to furnish such information and certification regarding income and about the composition of his household necessary to determine the rent, eligibility and the appropriateness of the size of the dwelling unit.

5. **TRANSFER TO APPROPRIATE SIZE APARTMENT**

   The Tenant agrees to transfer to an appropriate size dwelling consistent with the Regulations of the Landlord based on the family composition upon appropriate notice that such unit is available.

6. **UTILITIES, SERVICES AND EQUIPMENT**

   The Landlord shall furnish without additional cost, heat and hot water in accordance with requirements of law and of applicable Rules and Regulations of Municipal and State agencies, gas and

- 1 -

electricity in normal quantities which may be fixed hereafter by the Landlord except that the Landlord shall not supply gas and electricity in those projects in which the Tenants are charged directly by the utility company, and use of a stove and refrigerator.

7. SECURITY DEPOSIT

The Tenant shall deposit with the Landlord as security deposit to be used on vacating the premises as reimbursement of the cost of repairs beyond normal wear and tear and for rent or other charges owed by the Tenant the amount set forth in the appropriate item below:

| | |
|---|---|
| Efficiency | $154.00 |
| 3½ Rooms | 174.00 |
| 4½ Rooms | 194.00 |
| 5½ Rooms | 212.00 |
| 6½ Rooms | 223.00 |
| 7½ Rooms | 230.00 |

Notwithstanding the foregoing rates the Tenants in possession on the 29th day of February, 1976, shall not be required to pay additional security for their present dwelling unit. The Tenant agrees to pay such additional security as may be required by reason of any modification of the foregoing schedule by the Landlord, provided such modification is lawfully adopted. Modification of the security deposit schedule shall be in accordance with the procedure for notice set forth in paragraph 18 hereof.

8. TENANT'S OBLIGATION

a. Not to assign the lease or to sublease the premises;

b. Not to provide accommodations for boarders or lodgers;

c. To use the premises solely as a private dwelling for the Tenant and the Tenant's household as identified in the Tenant's signed application and not to use or permit its use for any other purpose;

d. To abide by necessary and reasonable regulations promulgated by the Landlord for the benefit and well being of the housing project and the tenants which shall be posted in the project office and incorporated by reference in this lease;

e. To comply with all obligations imposed upon tenants by applicable provisions of building and housing codes materially affecting health and safety;

f. To keep the premises and such other areas as may be assigned to him for his exclusive use in a clean and safe condition;

g. To dispose of all garbage, rubbish, and other waste from the premises in a sanitary and safe manner;

h. To use only in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning (if provided by the Landlord) and other facilities and appurtenances including elevators;

i. Not to install in the premises, without the written consent of the Landlord, any freezer, air conditioning unit, washing machine, clothes drier, dishwasher, Tenant owned refrigerator, ham radio set, radio transmitter, or other electrical appliances or equipment hereafter prohibited by the Landlord, nor any television or other antenna on the window sill or at any other place outside of the premises of the Tenant or if such consent is given, not to install the same in any manner other than as prescribed by the Landlord; to remove any electrical or other appliances or equipment from the premises or other property of the Landlord whenever required by the Landlord;

j. To refrain from and to cause his household and guests to refrain from destroying, defacing, damaging, or removing any part of the premises or project;

k. To pay reasonable charges, other than for ordinary wear and tear, for the repair of damages to the premises, project buildings, facilities or common areas caused by the Tenant, his household or guests, and to maintain and keep in good repair all Tenant owned appliances.

l. To conduct himself, and cause other persons who are on the premises with his consent to conduct themselves, in a manner which will not disturb his neighbors' peaceful enjoyment of their accommodations and will be conducive to maintaining the project in a decent, safe and sanitary condition;

m. To refrain from illegal or other activity which impairs the physical or social environment of the project;

n. To pay all rent, charges and security deposits provided herein;

o. To comply with all of the provisions of this lease applicable to the Tenant;

p. To do everything necessary and proper to permit the Landlord to carry out its duties to all public housing tenants, and to the other tenants in the project and to do everything necessary and proper for the Landlord to comply with the Laws of the United States, the State of New York and the City of New York and with the Rules and Regulations of applicable Federal, State and Municipal Agencies;

## 9. THE LANDLORD'S OBLIGATIONS

Except with respect to any condition beyond the control of the landlord, it shall be the landlord's obligation:

a. To maintain the premises and the project in a decent, safe and sanitary condition;

b. To comply with requirements of applicable building codes, housing codes and regulations of the United States Department of Housing and Urban Development materially affecting health and safety;

c. To make necessary repairs to the premises, excluding all Tenant owned appliances;

d. To keep the project buildings, facilities and common areas, not otherwise assigned to the Tenant for maintenance and upkeep, in a clean and safe condition;

e. To maintain in good and safe working order and condition electrical, plumbing, sanitary, heating, ventilating, and other facilities and appliances, including elevators, supplied or required to be supplied by the Landlord, but excluding all appliances owned by the Tenant.

f. To provide and maintain appropriate receptacles and facilities (except containers for the exclusive use of an individual tenant family) for the deposit of garbage, rubbish and other waste removed from the premises by the Tenant in accordance with Paragraph 8(g) hereof;

g. To supply running water and reasonable amounts of hot water and reasonable amounts of heat at appropriate times of the year as hereinbefore provided except where the building that includes the dwelling unit is not required by law to be equipped for that purpose or where heat or hot water is generated by an installation within the exclusive control of the Tenant and supplied by a direct utility connection.

## 10. HAZARDS TO LIFE, HEALTH OR SAFETY

In the event that the demised premises are damaged to the extent that conditions are created which are hazardous to life, health, or safety of the occupants:

a. The Tenant shall immediately notify the project management of the damage or such person or office as may be designated by the Landlord for that purpose;

b. The Landlord shall repair the unit within a reasonable time, provided that if the damage was caused by the Tenant, the Tenant's household or guests, the reasonable cost of repairs shall be charged to the tenant;

c. The Landlord shall offer standard alternative accommodations, if available, in circumstances where necessary repairs cannot be made within a reasonable time. The terms of this lease shall be applicable to the alternative accommodation during the period of the Tenant's occupancy thereof and the Tenant agrees to pay rent therefor in accordance with the applicable rent schedule then in effect. The Tenant agrees to return to the former premises when repairs thereto are completed if requested to do so by the Landlord;

d. In the event repairs are not made in accordance with subparagraph (b) hereof or alternative accommodations provided in accordance with subparagraph (c) hereof, the rent shall abate during

the period exceeding a reasonable time for repairs in which such repairs were not made, in proportion to the seriousness of the damage and loss in value as a dwelling, except that no abatement of rent shall occur if the tenant rejects the alternative accommodation or if the damage was caused by the Tenant, Tenant's household or guest.

## 11. ADDITIONAL CHARGES

In the event of damage to the premises or to fixtures beyond normal wear and tear, or in the event misuse of equipment results in additional maintenance costs, the Tenant shall pay, the cost of labor and material for repair and for additional maintenance as set forth in a schedule to be posted by the Landlord pursuant to paragraph 18 of this lease. The Tenant shall also pay according to said schedule for damage to the common areaways committed by any member of the Tenant's household. In the event that the damage is incapable of appraisal in advance, the Tenant agrees to pay the cost of labor and material actually expended for such repair. The Tenant may also be charged for consumption of excess utilities.

In addition to the foregoing charges the Tenant shall pay 1) such charges as may be hereafter posted for additional services provided by the Landlord at the Tenant's request; 2) an installation and/or monthly service charge determined by the Landlord for granting permission to the Tenant to install or use appliances enumerated in paragraph 8(i) hereof, which charges may be by separate agreement between the Tenant and the Landlord; 3) for replacing equipment lost by the Tenant or damaged beyond ordinary wear and tear.

Except in the case of a written agreement between the Landlord and Tenant which may otherwise provide, charges assessed under the foregoing paragraphs shall become due and collectible on the first day of the second month following the month in which the charge is made. They shall be assessed and charged as additional rental any month thereafter and shall be deemed rent for the purpose of including the same in any Non-payment Summary Proceeding.

## 12. INSPECTION

The Landlord and the Tenant or his representative shall be obligated to inspect the premises prior to the commencement of occupancy by the Tenant. The Landlord will furnish the Tenant with a written statement of the condition of the premises, the dwelling unit, and the equipment provided with the unit. The statement shall be signed by the Landlord and the Tenant and a copy of the statement shall be retained by the Landlord in the Tenant folder. The Landlord shall be further obligated to inspect the unit at the time the Tenant vacates the unit and to furnish the Tenant with a statement of any charges to be made in accordance with this lease. The Tenant shall be invited to participate in the latter inspection during working hours of a regular business day unless the Tenant vacates without notice to the Landlord. In the event that the Tenant shall fail or refuse to sign any written statement provided for herein, the statement signed by the Landlord shall, nevertheless, be filed and shall be deemed accurate unless the Tenant files a grievance in accordance with the grievance procedure hereinafter set forth.

## 13. RIGHT OF ENTRY

a. The Landlord shall, upon reasonable advance notification to the Tenant, be permitted to enter the dwelling unit during reasonable hours for the purpose of performing routine inspection and maintenance, for making improvements or repairs, or to show the premises for re-leasing. A written statement specifying the purpose of the Landlord's entry delivered to the premises at least two days before such entry shall be considered reasonable advance notification;

b. The Landlord may enter the premises at any time without advance notification when there is a reasonable cause to believe that an emergency exists;

    c. In the event that the Tenant and all adult members of his household are absent from the premises at the time of entry, the Landlord shall leave on the premises a written statement specifying the date, time and purpose of entry prior to leaving the premises.

14. NOTICES

    a. Except as provided in paragraph 18 hereof or as may be otherwise provided by law or specified in this lease, notice to the Tenant shall be in writing and delivered to the Tenant or an adult member of the Tenant's household residing in the dwelling or sent by **prepaid or first** class mail properly addressed to the Tenant;

    b. Notice to the Landlord shall be in writing, delivered to the project office or sent by prepaid or first class mail properly addressed to the project office.

15. TERMINATION OF LEASE

    a. The Landlord shall not terminate or refuse to renew this lease other than for serious or repeated violation of material terms of the lease such as failure to make payments due under the lease or to fulfill any of the Tenant obligations set forth in paragraph 8 hereof or for other good cause:

    b. The Landlord, in all non-payment cases shall give notice in writing to the Tenant requiring, in the alternative, the payment of the rent, or the possession of the premises and advising the Tenant of his right to request a hearing upon his compliance with the conditions contained in the Grievance Procedures. Such written notice shall be given no less than 14 days prior to commencement of non-payment proceedings in the manner provided by par. 14 of this lease.

    c. (1) The Landlord shall give written notice of termination of the lease within a reasonable time commensurate with the exigencies of the situation in the case of creation or maintenance of a threat to the health or safety of other tenants or Landlord's employees or to the property;

       (2) In all other cases the Landlord shall give 30 days written notice of termination. The said notice of termination shall state the reason therefore.

16. GRIEVANCE PROCEDURES

    All grievances concerning the obligations of the Tenant or the Landlord shall be resolved in accordance with the grievance procedure which is in effect at the time such grievance arises which procedure is, or shall be, posted in the project office and is incorporated herein by reference in this lease.

17. MODIFICATION OF LEASE

    Except as otherwise provided herein this lease may be modified only by a written rider to the lease executed by both parties.

18. POSTING OF POLICIES, RULES AND REGULATIONS

    Schedules of special charges for services, repairs and utilities, rules and regulations and all items specifically herein required to be posted or which are required to be incorporated in this lease by reference except for Tenant's application for processing shall be publicly posted in a conspicuous manner in the project office and shall be furnished to applicants and tenants on request. Such schedules, rules and regulations, may be modified from time to time by the Landlord provided that the Landlord shall give at least thirty (30) days written notice to the affected Tenant setting forth the proposed modification, the reason therefore, and providing the tenant an opportunity to present written comments which shall be taken into consideration by the Landlord prior to the proposed modification becoming effective. A copy of such notice shall be

    a. delivered directly or mailed to the tenant; or

    b. posted at least in three (3) conspicuous places within each structure or building in which the affected dwelling units are located, as well as in a conspicuous place at the project office, or if none a similar central business location within the project.

19. AMENDMENTS TO RENT SCHEDULES

The Landlord may amend the rent schedules and the Tenant agrees to pay rent in accordance with such amendment provided that in effecting such amendment the Landlord complies with all requirements of law and provided notice is given to Tenants in the manner set forth in paragraph 18 hereof.

20. COMPLIANCE WITH LANDLORD'S RULES AND REGULATIONS

The Tenant agrees to comply with all lawful rules and regulations promulgated and to be promulgated by the Landlord provided notice thereof is given in accordance with the procedure for notice set forth in paragraph 18 hereof.

21. SEVERABILITY

In the event that any provision of this lease shall violate any requirement of law then such provision shall be deemed void, the applicable provision of law shall be deemed substituted, and all other provisions of this lease shall remain in full force and effect.

22. JOINT AND SEVERAL OBLIGATION

If more than one person joins in the execution of this agreement as Tenant, the covenants and agreements hereof shall be their joint and several obligations as though the relative words were written in the plural. The word "his" herein shall be read as "her" in a proper case.

IN WITNESS WHEREOF, the undersigned have executed this agreement on the ___26TH___ day of _____JUNE_____, 19 95.

x _____
Tenant

_____
Tenant

NEW YORK CITY HOUSING AUTHORITY

By _____
Manager

BARBARA ROSA, MANAGER

In the Presence of:

_____

NYCHA 040.001F (Rev. 7/92)                - 6 -

# EXHIBIT C

| NYCHA 040.006 (Rev. 10/98) INTERVIEW RECORD | NEW YORK CITY HOUSING AUTHORITY | |
|---|---|---|
| NAME Ivy Williams | DEVELOPMENT | ACCOUNT NO. 13-14A |

| DATE AND INTERVIEWER'S NAME | |
|---|---|
| 4/25/03 EA | Transfer applicant selected from TSAP for set apt. Call-in letter sent out. |
| 4/25/03 EA | Appt set up for 4/29/03 in the morning. |
| 4/29/03 | Ms. Williams seen the apt and accept letter was given to Ms. Williams in reference to charges due for the new apartment. |
| 5/1/03 EA | Ms. Williams came into the office to pay on outstanding charges on her new apartment. 2 apt. keys 2 mailbox keys X Ivy Williams 2 Lobby Door keys |
| 6/19/03 J. Manuel | mailed lease |

INCOME REVIEW COMPLETED
ON 10/9/03 BY UA
NEW RENT $ 748 EFFECTIVE 12/03    NO
R. TRO-ACTIVE
CHARGE-CREDIT FROM        TO        CHANGE
$        RCN # 182153902

Unable tenant moving from 9-SI to
13-14A and A/R was done
All previous A/R for project Income

NYCHA 040.006 (Rev 10:98)
INTERVIEW RECORD

NEW YORK CITY HOUSING AUTHORITY

| NAME | DEVELOPMENT | ACCOUNT NO. |
|---|---|---|
| Williams, Ivy | Douglass | 13-14A |

| DATE AND INTERVIEWER'S NAME | |
|---|---|
| 6/30/04 V·G | Ms Williams came to Management office, this morning around 10°°AM; EXTREMELY UPSET AND WITH AN ANGER IN THE TONE OF HER VOICE. |
| | HER CLAIM, THE PLUMBERS WERE IN HER APARTMENT FIXING SOMETHING IN HER TOILET. |
| | I SPOKED TO PAUL (Asst. Super) IN REGARD TO WHEN THE PLUMBERS WERE BE DONE. PAUL TOLD ME THAT THEY SHOULD BE DONE BY 2°°PM. |
| | I WENT BACK TO MY OFFICE AND EXPLAINED TO MS WILLIAMS, WHAT PAUL HAD SAID. |
| | SHE TURN VERY ANGRY START TO CURSE; USING MANY F WORDS. |
| | SHE WANTED MANAGEMENT TO PROVIDE ANOTHER BATHROOM FOR HER UNTIL 2°°PM. |
| | MANAGEMENT DOES NOT HAVE ANY EXTRA BATHROOMS, JUST THE ONE IN THE MANAGEMENT Off,CWHICH SHE WAS TOLD SHE COULD USE, IF SHE NEED TOO. |
| | After This, MS Williams MARCH INTO Ms Espinal: Asst Manager office and DEMAND, WITH CURSING WORDS THAT SHE PROVIDE HER WITH A BATHROOM, SHE ALSO THREATEN MS Espinal WITH A LAW |

SUIT! MS Williams USED VERY ABUSIVE LANGUAGE!

NYCHA 040.006 (Rev. 10/98)
**INTERVIEW RECORD**

NEW YORK CITY HOUSI    AUTHORITY

| NAME | DEVELOPMENT | ACCOUNT NO. |
|------|-------------|-------------|
| Williams Ivx | | 13-14A |

| DATE AND INTERVIEWER'S NAME | |
|---|---|
| 8/7/07 M. Cash | Ms. Williams to office for schedule appointment for misrepresentation. I took out a tape recorder to record meeting. I informed © that I don't give her permission to record I informed © that I received I.G. report that she received $1,100.00 misrepresentation. © raising her voice (yelling) state that she has received airway disease because of garbage, rats and that the NYCHA put her on the 14th floor without letting her know about the exterior compactor below. © state that since January 2007 she has been taken several medications for 7 hours each day. Ms. Williams had a camera & was showing pictures of rats, elevator A cab door being broken, exterior compactor © allege that the garbage is setting in the shed and is removed the next day. © allege that staff spray the exterior compactor & then come back & hose down the area. © allege that she walks through development to go to her doctor appointment. © states she taking pictures of grounds and staff that she has a civil right act suit |

NYCHA 040.006 (Rev. 10/98)

**INTERVIEW RECORD**

NEW YORK CITY HOUSING AUTHORITY

| NAME Williams, Ivy | DEVELOPMENT Douglass | ACCOUNT NO. 13-14A |
|---|---|---|

| DATE AND INTERVIEWER'S NAME | |
|---|---|
| 8/17/07 cont. M. Earle | because of her breathing problem. ① stated she going to get out of here. I informed that she can request to be transferred but she refused. ① states she going to sue the NYCHA and take every employee to court. ① states that she going to kick out our heads off. I informed ① that she threatening us. ① states that she means the administration. ① calmed down and said she was going to go to her doctor + not to put any notices on her door. ① states she go to make a copy of her grievance. I informed her that they folder will be send to ATAD for misplaced. She continued to talk about above and then thanked me & left. ① also requested copy of her records + rent payment since 1995. I informed her to call C.O. Gregory of information to request her file |

N Y C H A / B I M S
INTERVIEW RECORD

PROJ. NO: 582      TENANT NAME: WILLIAMS      ACCT. NO: 01314A
INTERVIEW DATE: 22108      PREPARED BY: G. RICHTER
APARTMENT INSPECTION COMPLETED:      ANNUAL REVIEW COMPLETED: 051807

AT 8:40 AM, HA PERSONALLY SERVED TENANT WITH A WRITTEN RENT
DEMAND. THE RENT DEMAND WAS FOR $1682.30, COVERING 6/07 THROUGH
2/08. TENANT WOULD NOT ALLOW A FULL CONVERSATION IN WHICH HA
COULD FULLY DISCUSS RENT OWED. SHE SAID SHE WAS COUNTERSUING
NYCHA. A SHORT TIME LATER, WHEN HA WAS BACK IN OFFICE, TENANT
CALLED. SHE SAID SHE WAS SUING EACH OF US IN MANAGEMENT, AND
WOULD BE SENDING THE POLICE AFTER US.
    LATER IN MORNING, HA WAS CALLED BY TENANT'S EX-HUSBAND JOHN
WILLIAMS, TEL (347) 228-1500. HE'D FAXED TO US YESTERDAY A
12/7/06 COURT ORDER RE SUPPORT FOR TENANT. IT UPDATES A
2002 ORDER FOR SUPPORT. THE 2006 DOCUMENT SPEAKS OF ARRERS IN
THE PAYMENTS OF $100/WEEK DUE TENANT. MR. WILLIAMS SAID THAT     +

PgUp/PgDn=More Interview Lines
F3 = Save      F4 = Save & Print      HELP = Fields Definition   .   F12 = Cancel

PS00250

INTERVIEW RECORD

PROJ. NO: 582          TENANT NAME: WILLIAMS                    ACCT. NO: 01314A
INTERVIEW DATE:  32608                    PREPARED BY: G. RICHTER
APARTMENT INSPECTION COMPLETED:           ANNUAL REVIEW COMPLETED: 051807

TENANT CALLED IN RESPONSE TO THE SERVICE OF A WRITTEN RENT
DEMAND.  SHE TALKED IN ANGRY TONES AT LENGTH HOW NYCHA WAS
"HARASSING" HER AND THAT SHE WAS SUING US IN FEDERAL COURT.

PgUp/PgDn=More Interview Lines

F3 = Save       F4 = Save & Print       HELP = Fields Definition       F12 = Cancel