UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————

IVY WILLIAMS,                                            No. 07 Civ. 7587 (RJS)

                        Plaintiff,

         - against -

NYCHA and HUD,

                     Defendants.

———————————————————

---

## DECLARATION OF MICHAEL WYANDS
## AND EXHIBITS D THROUGH J

---

RICARDO ELIAS MORALES
General Counsel
New York City Housing Authority
Attorney for Defendants
250 Broadway, 9th Floor
New York, New York 10007
(212) 776-5033

Donna M. Murphy,
Samuel Veytsman,
Of Counsel

# EXHIBIT D

| NYCHA Resident Lease Agreement | Page 1 |
| --- | --- |

| Development: FREDERICK DOUGLASS | Account # 082-013-14A | AIR Quarter: 1ST. |
| --- | --- | --- |

| NYCHA 040.507 (1/01)<br>RESIDENT LEASE AGREEMENT | NEW YORK CITY HOUSING AUTHORITY |
| --- | --- |

1.  New York City Housing Authority ("Landlord"), in consideration of the rental herein paid and the representations made by _____ IVY WILLIAMS _____ and _____("Tenant") as set forth in his/her/their signed application, and his/her/their undertaking to comply with the Tenant's obligations in this Lease and with all of the rules and regulations of the Landlord, hereby leases to the Tenant and the Tenant hereby rents from the Landlord Apartment number 14A__ in (address) 140 WEST 104TH STREET , NEW YORK, NY 10025 _____ in the Borough of MANHATTAN _____ , City and State of New York ("Leased Premises"), beginning the first day of MAY _____ , 2003 (insert the month that follows the month in which this Lease is signed by the Tenant) , and terminating midnight on the last day of the month of MAY _____, 2004 (insert the month before the Annual Income Review (AIR) effective date for the building in which the Leased Premises are located), and automatically renewable thereafter, unless otherwise terminated, for terms of 12 months, each 12-month term terminating at midnight on the last day of the 12th month, at a rental of $ 148.00 _____ per month, **due and payable the first day of each month or at such other day each month as the Landlord may decide. All money tendered pursuant to this Lease shall be by check or money order, or as otherwise accepted by the Landlord.**

    **Possession of the Leased Premises is hereby granted and the provisions of this Lease apply as of the date this Lease is signed by the Tenant.** The above rental includes the costs of the Tenant's consumption of gas and electricity (except as otherwise indicated in Paragraphs 10 and 15 hereof) not in excess of a quantity which the Landlord in its discretion will fix and may from time to time change. The above terms may be changed by the Landlord, in accordance with its rules and regulations, upon 30 days prior written notice to the Tenant. Subject to the provisions herein, the Landlord or the Tenant may each terminate this Lease and tenancy by giving to the other 30 days prior notice in writing. This Lease, unless terminated as herein provided, shall automatically be renewed except as otherwise provided in Paragraph 19 hereof.

2.  **PRO-RATA RENT**

    The Tenant agrees to pay additional rent in the sum of $_____, or at such sum to be determined at a later date, which represents monthly rent pro-rated from the date the keys to the Leased Premises are ready through and including the day before the first date specified above. This additional rent, deemed rent for all purposes under this Lease including collection by a non-payment summary proceeding, is due the first day of the first month after notification of this amount or otherwise as the Landlord may decide.

3.  **ADDITIONAL RENT FOR TRANSFERRING TENANT**

    In consideration for being permitted to transfer to the Leased Premises from another Housing Authority apartment without first paying all rents and charges due for that former apartment, the Tenant hereby consents to pay such sum as additional rent under this Lease. The additional rent, deemed rent for all purposes under this Lease including collection by a non-payment summary proceeding, is due the first day of the first month of this Lease or otherwise as the Landlord may decide.

**NYCHA Resident Lease Agreement**    NYCHA 040. 507 (1/01)    **Page 2**

4.    COMMUNITY SERVICE OR SELF-SUFFICIENCY PROGRAM REQUIREMENT

The Tenant shall comply, and shall cause the non-exempt members of the Tenant's household to comply, with the Landlord's policy for administration of the community service and economic self-sufficiency activities required of public housing residents ("Community Service Policy"). Community service is the performance of voluntary works or duties that are a public benefit, and that serve to improve the quality of life, enhance resident self-sufficiency, or increase resident self-responsibility in the community. Community service is not employment and may not include political activities. Each adult non-exempt member of Tenant's household must perform **eight** hours of community service per month or participate in an economic self-sufficiency program for **eight** hours per month, as specified in the Landlord's Community Service Policy. Violation of the requirements of the Community Service Policy is grounds for non renewal of this Lease pursuant to Paragraph 19, hereof. The Landlord will deliver to the Tenant a detailed written description of the service requirement, exemption and compliance provisions of the Community Service Policy.

5.    OCCUPANCY

a.    The Leased Premises shall be the Tenant's only residence and shall be used solely as a residence for the Tenant and the members of the Tenant's household (i.e., those named in the signed application, born or adopted into the household, or authorized by the Landlord) who remain in continuous occupancy since the inception of the tenancy, since birth, or since authorization of the Landlord. The Tenant and the members of the Tenant's household shall have the right to exclusive use and occupancy of the Leased Premises.

b.    The Tenant shall obtain the written consent of the Housing Manager of the development in which the Leased Premises is located ("Development"), or such Housing Manager's designee, before allowing any person to reside in the Leased premises other than a family member named in the Tenant's signed application or born or adopted into the household, or subsequently authorized by the Landlord, who remains in continuous occupancy since the inception of the tenancy, since birth or since subsequent authorization by the Landlord.

6.    REDETERMINATION OF RENT

a.    The rent shall be redetermined by the Landlord on a date to be fixed by the Landlord and annually thereafter or within such other period as may be hereafter fixed by the Landlord. In addition to the annual redetermination, interim redetermination of rent shall be made in accordance with the rules, regulations and rent schedules of the Landlord which are posted in the manner set forth in Paragraph 22 hereof.

b.    If the Tenant fails to accurately report a change in income within **30** days after the event as provided in Paragraph 7 (d), or otherwise as the Landlord may direct, or misrepresents or misstates the correct income of the Tenant or any member of the Tenant's household, then, in addition to any other remedy available to the Landlord, the Tenant shall pay to the Landlord additional rent in the amount of the difference between the rent which would have been charged by the Landlord to the Tenant had the correct income been reported to the Landlord at the time required and the rent actually paid by the Tenant during the period involved. Any retroactive charge shall be deemed rent for all purposes under this Lease including collection by a non-payment summary proceeding,

c.    If the Tenant fails to provide all reportable income for the Tenant and other members of the Tenant's household, or if the Landlord is unable to verify such information as the Tenant does

NYCHA Resident Lease Agreement   NYCHA 040. 507 (1/01)          **Page 3**

provide, then in addition to any other remedy available to the Landlord, the Tenant shall pay to the Landlord the applicable maximum rent for the Leased Premises as determined by the Landlord.

7. **INFORMATION TO BE FURNISHED BY THE TENANT**

   a.  The Tenant agrees to furnish such information, certification or signed statement, in the form fixed and at the times required by the Landlord, regarding the income, identity and composition of his/her/their household necessary to determine the rent, eligibility and the appropriateness of the size of the Leased Premises.

   b.  The Tenant agrees to furnish to the Landlord upon request: such birth certificate; death certificate; Social Security Number; proof of citizenship or eligible immigration status; signed consent forms authorizing the disclosure of salary and wage information, unemployment compensation claim information, or tax return information; and such other documents or information as the Landlord may require to make the determination described in the preceding sub-paragraph or to otherwise comply with the requirements of law. The accuracy of any information furnished or document submitted by the Tenant is subject to independent verification by the Landlord.

   c.  The Tenant shall notify the management office of the Development ("Management Office") of any birth or death or other changes in Tenant's household, within **30** days after the event.

   d.  The Tenant shall report to the Management Office, within **30** days after the event,

       (i)   the receipt of new public assistance by the Tenant or any member of the Tenant's household or the discontinuance of public assistance for any such person;

       (ii)  the permanent cessation of full-time employment of the Tenant or any member of the Tenant's household;

       (iii) the loss of full-time employment by the Tenant or a member of the Tenant's household which continues for a period of three months or the resumption by such person of full-time employment; or

       (iv)  the commencement of full-time employment by the Tenant or any member of the Tenant's household.

   e.  If the Tenant's income is derived in whole or in part from other than employment by a third party, the Tenant shall keep adequate and verifiable records, as required by the Landlord, of all cash transactions relating to investments, loans, funds received under trusts or grants, income and expense.  These records and their supporting evidence, including bills, receipts, bank pass books, statements, canceled checks, and copies of returns submitted to government agencies, shall be made available for examination by the Landlord.

8. **TRANSFER TO APPROPRIATE SIZE APARTMENT**

   The Tenant agrees to transfer, and to cause all members of the Tenant's household to transfer, to an appropriate size apartment in the Development or any other development, consistent with the regulations of the Landlord based on family composition, following notice that such transfer is required.

9. **TRANSFER TO ANOTHER APARTMENT**

The Tenant agrees to transfer, and to cause all members of the Tenant's household to transfer, to another apartment in the Development or any other development, if the Landlord requires vacant possession of the Leased Premises in order to repair or renovate the Leased Premises or the building in which they are located (which repairs and renovations Landlord in its sole discretion determines can not be accomplished while the Leased Premises is occupied), or if the Leased Premises is otherwise required by the Landlord for some other lawful purpose.

10. **UTILITIES, SERVICES AND EQUIPMENT**

The Landlord shall furnish without additional cost (except as otherwise provided in Paragraph 15(c)) heat and hot water in accordance with requirements of law and applicable rules and regulations of municipal and state agencies, gas and electricity in normal quantities which may be fixed hereafter by the Landlord (except that the Landlord shall not supply gas and electricity if the Development is one in which residents are charged directly by the provider utility company), and use of a stove and a refrigerator.

11. **SECURITY DEPOSIT**

    a.     Except as otherwise provided in subparagraph "b" or "c" below, the Tenant shall deposit with the Landlord a security deposit to be used following the Tenant's vacating the Leased Premises as reimbursement for the cost of repairs beyond normal wear and tear and for rent or other charges owed by the Tenant. The amount of such deposit shall be the greater of one month's rent, as set forth in Paragraph 1 above, or the amount set forth in the appropriate item below:

| | |
|---|---|
| Efficiency Apartment | $ 154.00 |
| 3-1/2 Rooms | $ 174.00 |
| 4-1/2 Rooms | $ 194.00 |
| 5-1/2 Rooms | $ 212.00 |
| 6-1/2 Rooms | $ 223.00 |
| 7-1/2 Rooms | $ 230.00 |

    b.     Notwithstanding the foregoing, if the Tenant is in possession of the Leased Premises on the 1st day of January, 2001, Tenant shall not be required to pay any additional security for the Leased Premises under this Lease except as provided in the following sentence. The Tenant agrees to pay such additional security as may be required by reason of any modification of the foregoing schedule by the Landlord, provided such modification is lawfully adopted. Modification of the security deposit schedule shall be in accordance with the procedure for notice set forth in Paragraph 22 hereof.

    c.     If the Tenant is subject to a Rent Security Agreement provided by the New York City Human Resources Administration instead of a cash security deposit, and if said Agreement ceases to be in effect, the Tenant shall, on the first day of the first month that said Agreement is no longer in effect or by such other date as the Landlord may direct, pay the Landlord a security deposit according to the terms of this Paragraph. If unpaid, such sum shall be assessed and charged as additional rent and shall be deemed rent for the purpose of a non-payment proceeding.

| NYCHA Resident Lease Agreement    NYCHA 040.507 (1/01) | Page 5 |
|---|---|

**12.    TENANT'S OBLIGATIONS**

It shall be the Tenant's obligations:

a.    Not to assign the Lease or to sublease the Leased Premises or to transfer possession of the Leased Premises;

b.    Not to provide accommodations for boarders or lodgers;

c.    To use the Leased Premises solely as a residential dwelling for the Tenant and the Tenant's household as identified in the Tenant's signed application, or subsequently authorized by the Landlord, and not to use the Leased Premises or permit its use for any other purpose;

d.    To abide by all necessary and reasonable regulations promulgated from time to time by the Landlord, which shall be posted in the Management Office and incorporated by reference in this Lease;

e.    To comply with all obligations imposed upon tenants in the City of New York by applicable laws, rules or regulations;

f.    To keep the Leased Premises and such other areas as may be assigned to the Tenant for the Tenant's exclusive use in a clean, sanitary and safe condition;

g.    To take every reasonable precaution to prevent fires;

h.    To dispose of all garbage, rubbish and other waste from the Leased Premises in a sanitary, safe and lawful manner;

i.    To maintain, care for, and at all times keep free from litter, any space on the grounds of the Development assigned to the Tenant for exclusive use;

j.    To refrain from littering the grounds of the Development and from shaking, cleaning or airing any bedclothes, rugs, mops, dust cloths, etc., at the windows, in the halls or on the roof of any building in the Development;

k.    To use only in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities and appurtenances including elevators;

l.    Not to alter the Leased Premises, or any fixtures or fittings in the Leased Premises, without the prior written consent of the Landlord, which may be granted or withheld in the Landlord's sole and absolute discretion;

m.    Not to install in the Leased Premises, without the prior written consent of the Landlord, any freezer, air conditioning unit, washing machine, clothes dryer, dishwasher, "ham" or other radio transmitter, or other electrical appliances hereafter restricted by the Landlord, or any television antenna or other antenna on the window sill or at any place outside of the Leased Premises, and, if such consent is given, not to install the same in any manner other than as prescribed by the Landlord;

**NYCHA Resident Lease Agreement**    NYCHA 040.507 (1/01)    **Page 6**

n.    To remove any prohibited electrical or other appliances or equipment from the Leased Premises whenever required by the Landlord;

o.    To refrain from and to cause the Tenant's household and guests to refrain from destroying, defacing, damaging or removing any part of the Leased Premises or the Development;

p.    To pay reasonable charges for the repair of damages to Landlord owned appliances or the Leased Premises, other than for ordinary wear and tear, or to the Development, including damages to Development buildings, facilities or common areas, caused by the Tenant or the Tenant's household or guests;

q.    To act, and cause other persons who are in the Leased Premises with the consent of the Tenant to act, in a manner that will not disturb other residents' peaceful enjoyment of their accommodations and will be conducive to maintaining the Development in a decent, safe and sanitary condition;

r.    To assure that the Tenant, any member of the household, a guest, or another person under the Tenant's control, shall not engage in:

    (i)    Any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the Development by other residents or by the Landlord's employees, or

    (ii)    Any violent or drug-related criminal activity on or off the Leased Premises or the Development, or

    (iii)    Any activity, on or off the Leased Premises or the Development, that results in a felony conviction;

s.    To pay all rent, additional rent, charges and security deposits provided herein on the first day of the month such sum becomes due, or otherwise as directed by or consented to by the Landlord;

t.    To comply with all of the provisions of this Lease applicable to the Tenant;

u.    To do everything necessary and proper to permit the Landlord to carry out its duties to all residents of the Development, and to do everything necessary and proper to permit the Landlord to comply with applicable laws, rules and regulations of federal, state and municipal agencies;

v.    Not to keep any animals in the Leased Premises or on Development grounds, except for one domesticated dog or cat responsibly maintained as a household pet, or except as otherwise provided by statute or regulation or the Landlord's Pet Policy, and subject to the provisions of such policy including the following:

    (i)    Permission to keep such pet must be obtained from the Landlord in compliance with the Landlord's Pet Policy;

    (ii)    Any pet fee and/or pet deposit required by the Landlord's Pet Policy shall be paid as required thereunder and, if unpaid, shall be deemed and collectible as additional rent; and

    (iii)    In addition to any other remedy available to the Landlord, violation of the Landlord's Pet Policy may be grounds for removal of any pet or termination of the tenancy, or both.

w.    To comply with the directions given by the Landlord concerning moving date and time;

**NYCHA Resident Lease Agreement**     NYCHA 040. 507 (1/01)     **Page 7**

x.   To abide by all regulations pertaining to the moving in of furniture in order to provide for proper vermin control, and to pay the cost of fumigation or extermination reasonably required in the Leased Premises following move-in;

y.   To clean windows in the Leased Premises from the inside and NOT from the outside;

z.   Not to display any sign or notice of any kind in the Leased Premises or have any exhibited from the windows of the Leased Premises;

aa.   Not to paint the Leased Premises without the prior written consent of the Landlord;

bb.   To comply with and obey all rules and regulations prescribed from time to time by the Landlord concerning the use and care of the Leased Premises or any common or community spaces or other places in the Development, including but not limited to stairs, halls, laundries, community rooms, storage rooms, walks, drives, playgrounds and parking areas; and

cc.   To comply with and to do everything necessary and proper to permit the Landlord to comply with applicable laws, rules and regulations concerning the installation and maintenance of smoke detectors, window guards and fire safety notices.

## 13.   THE LANDLORD'S OBLIGATION

Except with respect to any condition beyond the control of the Landlord, it shall be the Landlord's obligation:

a.   To maintain the common areas of the Development in a decent, safe and sanitary condition;

b.   To comply with applicable laws, rules and regulations of federal, state and municipal agencies;

c.   To make necessary repairs to the Leased Premises, excluding all Tenant owned appliances;

d.   To keep the Development buildings, facilities and common areas, not otherwise assigned to the Tenant for maintenance and upkeep, in a clean and safe condition;

e.   To maintain in good and safe working order and condition electrical, plumbing, sanitary, heating, ventilating, and other facilities and appliances, including elevators, supplied by the Landlord;

f.   To provide and maintain appropriate receptacles and facilities (except containers for the exclusive use of an individual tenant family) for the deposit of garbage, rubbish and other waste removed from the premises by the Tenant in accordance with Paragraph 12(h) hereof; and

g.   To supply running water and reasonable amounts of hot water and reasonable amounts of heat at appropriate times of the year as hereinbefore provided except where heat or hot water is generated by an installation within the exclusive control of the Tenant and supplied by a direct utility connection.

**NYCHA Resident Lease Agreement    NYCHA 040. 507 (1/01)    Page 8**

14.    **HAZARDS TO LIFE, HEALTH OR SAFETY**

In the event that the Leased Premises is damaged to the extent that conditions are created which are hazardous to life, health, or safety of the occupants:

a.    The Tenant shall immediately notify the Management Office of such damage or notify such other person or office as may be designated by the Landlord for that purpose;

b.    In the Landlord's sole discretion the Landlord shall repair the Leased Premises within a reasonable time, provided that, if the damage was caused by the Tenant or the Tenant's household or guests, the reasonable cost of repairs shall be charged to the Tenant;

c.    The Landlord shall offer standard alternative accommodations, if available, in circumstances where necessary repairs cannot be made within a reasonable time. Occupancy of such alternative accommodations shall be deemed to be pursuant to a revocable license granted by the Landlord subject to the terms of this lease or as otherwise agreed to by the parties in writing, except that the Tenant agrees to pay the lesser of (i) the rent for the Leased Premises, or (ii) the appropriate rent for the alternative accommodations. The Tenant agrees to return to the Leased Premises when repairs thereto are completed if requested to do so by the Landlord; and

d.    In the event repairs are not made in accordance with subparagraph 14 (b) hereof or alternative accommodations are not provided in accordance with subparagraph 14 (c) hereof, the rent shall abate during the period exceeding a reasonable time for repairs in which such repairs were not made, in proportion to the seriousness of the damage and loss in value as a dwelling, except that no abatement of rent shall occur if the Tenant rejects the alternative accommodations or if the damage was caused by the Tenant, Tenant's household or guests.

15.    **ADDITIONAL CHARGES**

a.    In the event of damage to the Leased Premises or to fixtures beyond normal wear and tear, or in the event misuse of equipment results in additional maintenance costs, the Tenant shall pay the cost of labor and material for repair and for additional maintenance as set forth in a schedule to be posted by the Landlord pursuant to Paragraph 22 of this Lease. The Tenant shall also pay according to such schedule for damage to the common areas committed by any member of the Tenant's household. In the event that the damage is incapable of appraisal in advance, the Tenant agrees to pay the cost of labor and material actually expended for such repair. The Tenant may also be charged for consumption of excess utilities, consumed in performance of such repairs.

b.    The Tenant shall pay as damages such reasonable charge or fee as is imposed by the Landlord for extra services required by reason of any violation by the Tenant or any member of the Tenant's household of any rule or regulation established by the Landlord for the proper administration of the Development, the protection of the Landlord's property or the safety and convenience of other residents.

c.    In addition to the foregoing charges, the Tenant shall pay (i) such charges as may be hereafter imposed for additional services provided by the Landlord at the Tenant's request, (ii) any installation and/or monthly service charge established by the Landlord in order to grant permission to the Tenant to install or use appliances enumerated in Paragraph 12(m) hereof, which charges may be covered by a separate agreement between the Tenant and the Landlord, (iii) any charge hereafter imposed by the Landlord for the provision of utilities such as gas or electricity, (iv) the

| NYCHA Resident Lease Agreement    NYCHA  040. 507 (1/01) | Page 9 |
|---|---|

cost of replacing equipment lost by the Tenant or damaged beyond ordinary wear and tear, and (v) such charges as may be hereafter imposed by the Landlord regarding dishonored checks.

    d.    Except in the case of a written agreement between the Landlord and Tenant which may otherwise provide, any charge assessed under the foregoing sub-paragraphs shall become due and collectible on the first day of the second month following the month in which said charge is made.  If not paid the special charges set forth above shall be collectible in any court having jurisdiction thereof.

## 16.    INSPECTION

    The Landlord or its representative and the Tenant shall be obligated to inspect the Leased Premises prior to the commencement of occupancy by the Tenant.  The Landlord will furnish the Tenant with a written statement of the condition of the Leased Premises and the equipment provided with the Leased Premises.  The statement shall be signed by the Landlord and the Tenant and a copy of the statement shall be retained by the Landlord in the Tenant folder.  The Landlord shall be further obligated to inspect the Leased Premises at the time the Tenant vacates the same and to furnish the Tenant with a statement of any charges to be made in accordance with this Lease.  The Tenant shall be invited to participate in the latter inspection during working hours of a regular business day unless the Tenant vacates without notice to the Landlord.  In the event that the Tenant shall fail or refuse to sign any written statement provided for herein, the statement signed by the Landlord shall, nevertheless, be filed and shall be deemed to be accurate unless the Tenant files a grievance in accordance with the Grievance Procedures described in Paragraph 20 hereof.

## 17.    RIGHT OF ENTRY

    a.    The Landlord shall, upon reasonable advance notification to the Tenant, be permitted to enter the Leased Premises during reasonable hours for the purpose of performing routine inspection and maintenance, making improvements or repairs, or showing the premises for re-leasing.  A written statement specifying the purpose of the Landlord's entry, delivered to the Leased Premises at least two days before such entry, shall be considered reasonable advance notification.  If the Tenant fails to permit such entry to the Leased Premises after such notice has been given, the Landlord may enter the Leased Premises at any time thereafter without further notification;

    b.    The Landlord may enter the Leased Premises at any time without advance notification when there is a reasonable cause to believe that an emergency exists;

    c.    In the event that the Tenant and all adult members of the household are absent from the Leased Premises at the time of entry as permitted in this Paragraph 17, the Landlord shall leave at the Leased Premises a written statement specifying the date, time and purpose of entry prior to leaving the Leased Premises;

## 18.    NOTICES

    a.    Except as provided in Paragraph 22 hereof or as may be otherwise provided by law or specified in this Lease, any notice to the Tenant required hereunder shall be in writing and delivered to the Tenant or an adult member of the Tenant's household residing in the Leased Premises or sent by prepaid or first class mail properly addressed to the Tenant;

    b.    Notice to the Landlord shall be in writing, delivered to the Management Office or sent by prepaid or first class mail properly addressed to the Management Office.

| NYCHA Resident Lease Agreement     NYCHA 040.507 (1/01) | Page 10 |
|---|---|

19.    **TERMINATION OF LEASE**

a.    The Landlord shall not terminate or refuse to renew this Lease other than for:

(i)    violation of material terms of the Lease, such as failure to make payments due under the Lease or failure to fulfill any of the Tenant's obligations set forth in Paragraph 12 hereof, or

(ii)    violation by any non-exempt member(s) of the Tenant's household of the Community Service Policy, referenced in Paragraph 4 herein, except that such violation will be grounds solely for non-renewal of the Lease at the end of any twelve-month Lease term, or

(iii)    other good cause.

b.    Prior to the commencement of a non-payment proceeding, the Landlord shall give notice in writing to the Tenant requiring, in the alternative, the payment of the rent or surrender of the possession of the Leased Premises, (except that Landlord shall not have waived any right to collect all rent and additional rent due and owing should the lease be terminated and the tenant evicted from the Leased Premises) and advising the Tenant of his/her/their right to request a hearing upon his/her/their compliance with the conditions contained in the Grievance Procedures described in Paragraph 20 hereof.  Such written notice shall be given no less than 14 days prior to commencement of the non-payment proceeding in the manner provided by Paragraph 18 of this Lease.

c.    (i)    The Landlord shall give written notice of termination of the Lease within a reasonable time commensurate with the exigencies of the situation in the case of the creation or maintenance of a threat to the health or safety of other tenants or Landlord's employees or to the property;

(ii)    In all other cases, the Landlord shall give 30 days' prior written notice of termination. The said notice of termination shall state the reason therefor.

20.    **GRIEVANCE PROCEDURES**

All grievances concerning the obligations of the Tenant or the Landlord shall be resolved in accordance with the grievance procedures that are in effect at the time such grievance arises ("Grievance Procedures"), which Grievance Procedures are, or shall be, posted in the Management Office and are incorporated by reference in this Lease.

21.    **MODIFICATION OF LEASE**

Except as otherwise provided herein this Lease may be modified by the Landlord on 30 days' prior written notice and only by a written rider or other amendment to the Lease.

**NYCHA Resident Lease Agreement**     NYCHA 040. 507 (1/01)        **Page 11**

22.    **POSTING OF POLICIES, RULES AND REGULATIONS**

Schedules of special charges for services, repairs and utilities, rules and regulations and all items specifically herein required to be posted shall be publicly posted in a conspicuous manner in the Management Office and shall be furnished to the Tenant on request. Such schedules, rules and regulations may be modified from time to time by the Landlord, provided that the Landlord shall give at least 30 days' prior written notice to the Tenant if the Landlord, in its discretion, determines that the Tenant is affected thereby. Such notice shall set forth the proposed modification and the reason therefore and shall provide the Tenant an opportunity to present written comments which shall be taken into consideration by the Landlord prior to the proposed modification becoming effective. A copy of such notice shall be

a.    delivered directly or mailed to the Tenant; or

b.    posted in at least 3 conspicuous places within the building in which the Leased Premises are located, as well as in a conspicuous place in the Management Office.

23.    **AMENDMENTS TO RENT SCHEDULES**

The Landlord may amend the rent/additional rent/charges schedules and the Tenant agrees to pay such sums due in accordance with such amendment, provided that, in effecting such amendment, the Landlord complies with all requirements of law, and further provided that notice thereof is given to the Tenant in the manner set forth in Paragraph 22 hereof.

24.    **COMPLIANCE WITH LANDLORD'S RULES AND REGULATIONS**

The Tenant agrees to comply with all lawful rules and regulations promulgated by the Landlord from time to time, provided notice thereof is given in accordance with the procedure for notice set forth in Paragraph 22 hereof.

25.    ——**CONDITION OF PREMISES UPON VACATING**

The Tenant shall quit and surrender the Leased Premises in good order and repair, reasonable wear and tear excepted, whenever and for whatever reason this Lease is terminated.

26.    **SEVERABILITY**

In the event that any provision of this Lease shall violate any requirement of law, then such provision shall be deemed void, the applicable provision of law shall be deemed substituted, and all other provisions of this Lease shall remain in full force and effect.

27.    **JOINT AND SEVERAL OBLIGATION**

If more than one person joins in the execution of this agreement as Tenant, the covenants and agreements contained herein shall be deemed to be joint and several obligations, as though the applicable words were written in the plural.

28.    **CONTINUING TENANCY OBLIGATIONS**

If this Lease is not the original lease signed by the Tenant and the Landlord, but is subsequent to an existing lease, the existing lease shall be deemed terminated upon the execution of this Lease. However all non-payment or breaches of tenancy obligations arising under the Tenant's former lease shall remain enforceable under this Lease,

**NYCHA Resident Lease Agreement**   NYCHA 040. 507 (1/01)    **Page 12**

without regard to whether the former lease was for the Leased Premises or for a different apartment, either in the Development or any other development of the Landlord. All legal proceedings, including administrative actions, that commenced or could have commenced under the terms of the former lease, may commence or continue under this Lease. Any conditions placed against the tenancy under the former lease (for example, Probation or Permanent Exclusion) shall remain valid and will continue under this Lease. Permanent Exclusion of an individual from a former apartment shall continue as Permanent Exclusion of that individual from the Leased Premises.

29.    **VOID LEASE**

This Lease shall not confer rights of public housing tenancy and shall be void if public housing tenancy rights do not exist or have been terminated.

**In Witness Whereof,** the undersigned have executed this agreement on the    **1ST.**    day of **MAY , 20 03**

_____
Tenant

_____
Tenant

In the Presence of:

New York City Housing Authority

By _____
Manager

# EXHIBIT E

| NYCHA 040.276 (Rev 7/06) & Reverse **TRANSMITTAL TO TERMINATIONS UNIT - TERMINATION OF TENANCY CASE** | NEW YORK CITY HOUSING AUTHORITY<br>Frederick Douglass Houses         ( 212 )  865-7200<br>*Name of Development & Phone No.* | DATE OF SUBMISSION TO TERMINATIONS UNIT<br>09/26/06 |
|---|---|---|

| CURRENT LESSEE(S) NAME & ADDRESS } | LAST NAME/HUSBAND'S FIRST/WIFE'S FIRST<br>Ivy Williams | ADDRESS<br>140 West 104th street<br>New York, NY 10025 | ACCOUNT NO.<br>582/ 013 /14A |
|---|---|---|---|

| TYPE OF CASE *(Non. Des./Breach of Rules/Misrepresentation/etc.)*<br>Breach of Rules and Regulations: Non-Verifiable Income | IS TENANT A NYCHA EMPLOYEE? | ☐ YES   ☑ NO |
|---|---|---|

| TERMINATION INTERVIEWER/DATE | DID NOT APPEAR/DATE   11/29/2005 | FORM 040.187A MAILED/DATE   09/26/06 |
|---|---|---|

## FOR USE BY TERMINATIONS UNIT

DATES                                                           DATES

_____  1. CASE RECEIVED BY TERMINATIONS UNIT          _____  4. ASSIGNED TO STAFF

_____  2. RETURNED TO DEVELOPMENT                       _____  5. TO LEGAL

         [ ] Further Observation                      _____  6. TO LEGAL TO REOPEN-DEFAULT
                                                              *(Updated specification of charges)*
         [ ] Additional Information
                                                     _____  7. ADDITIONAL CHARGES
         [ ] Other

_____  3. To SSD

TERMINATIONS UNIT COMMENTS:

---

MANAGER'S CASE SUMMARY AND RECOMMENDATION *(For examples or instructions, see back of this form)*
FOR CRD CASES LIST WELFARE CHECK DELIVERY DAYS

Despite written notices dated June 6, 2006, June 5, 2006, and June 19, 2006 (attached), this tenant has failed to submit the annual income review papers for the period 1/1/2005, trough 12/31/2005 which were due to be returned by January 15, 2006.


Recommended Termination.

*(Continue on separate sheet)*

DISTRIBUTION. *ORIGINAL & 1 COPY: ORIGINAL with Tenant Folder to Applications and Tenancy Administration Department - 250 Broadway, 26th Floor*
  • *COPY to Development File*                                                    *Over* ➤

# EXHIBIT F



**NEW YORK CITY HOUSING AUTHORITY**
**LAW DEPARTMENT**
250 BROADWAY . NEW YORK, NY 10007
http:/nyc.gov/nycha

**NEW YORK CITY**
**HOUSING**
**AUTHORITY**

**TINO HERNANDEZ**
CHAIRMAN

**EARL ANDREWS, JR.**
VICE-CHAIRMAN

**MARGARITA LÓPEZ**
MEMBER

**VILMA HUERTAS**
SECRETARY

**DOUGLAS APPLE**
GENERAL MANAGER

Ricardo Elias Morales
General Counsel

**N O T I C E**

448955-NB-2006
IVY WILLIAMS
FREDERICK DOUGLASS HOUSES
140 WEST 104TH STREET, APT. #14A
NEW YORK, NY 10025

   PLEASE TAKE NOTICE, that a recommendation has been made that your tenancy in the
above apartment be terminated because of the following circumstances:

           SEE ATTACHED SPECIFICATION OF CHARGES

   A hearing on these charges will be held before a Hearing Officer designated by the
New York City Housing Authority ("Authority") for that purpose at 250 Broadway, 2nd floor,
**Borough of Manhattan**, New York City, on March 1, 2007 at 10:00 am.

   You are requested to answer these charges, and to signify your intention to appear at
the hearing, by a reply in writing addressed to New York City Housing Authority - Law
Department, 7th Floor, Tenant Administrative Hearings Division, 250 Broadway, New York,
N.Y. 10007, to be mailed not later than **February 22, 2007.**

   **If you have any questions, please call 212-776-5278.**

   At the hearing you may appear in person with such witnesses as you may desire, <u>AND BE
REPRESENTED BY COUNSEL OR OTHER REPRESENTATIVES OF YOUR CHOICE.</u>  If you desire legal
representation and cannot afford a lawyer, it is suggested that you contact one of the
agencies which provide free legal services.  A copy of the procedures covering these
proceedings is enclosed for your information.

   IT IS IMPORTANT THAT YOU REALIZE THAT THIS HEARING WILL BE THE ONLY OPPORTUNITY TO BE
HEARD, THAT THE DETERMINATION BASED THEREON MAY RESULT IN YOUR EVICTION, AND THAT SUCH
DETERMINATION MAY NOT BE CHALLENGED IN THE LANDLORD-TENANT COURT.  ACCORDINGLY, IF YOU
DESIRE TO CONTEST THE ABOVE CHARGES, YOU MAY REPLY TO THIS NOTICE AND APPEAR AT THE
HEARING.  OTHERWISE, YOU WILL BE DEEMED TO HAVE WAIVED YOUR RIGHT TO SUCH HEARING.

**Representative: Teresa Valentin**      NEW YORK CITY HOUSING AUTHORITY

                                          Gloria Finkelman
Dated:January 12, 2007                   By:  Gloria Finkelman
tv                                        Director of Management

---

Telephone (212)776-5000 • Fax (212)776-5270

File No. 448955-NB-2006

IVY WILLIAMS
FREDERICK DOUGLASS HOUSES
140 WEST 104TH STREET, APT. #14A
NEW YORK, NEW YORK 10025

### ATTACHMENT

### SPECIFICATION OF CHARGES

### NON-VERIFIABLE INCOME IN THAT:

1.   You, IVY WILLIAMS, tenant of record, failed, neglected, or
     refused to furnish complete income verification information
     satisfactory to the New York City Housing Authority
     ("Authority").  The Authority has required that you provide the
     Authority with information regarding your income, the income of
     other members of your family, or the identity and number or
     composition of the persons in your household necessary to
     determine the rent, eligibility and the appropriateness of the
     size of your apartment.

     Despite written notices from the Authority of the above
     requirement on or about **June 5, 2006, June 6, 2006** and **June 19,
     2006** and an opportunity to submit this information by **May 1,
     2006,** you failed to provide the required information by **May 1,
     2006,** and/or up to the date of these charges.

### BREACH OF RULES AND REGULATIONS IN THAT:

2.   In violation of Rule 7 of your Authority Rules and Regulations,
     you, IVY WILLIAMS, tenant of record, failed, neglected, or
     refused to submit to the Authority, as specified above,
     statements setting forth requisite facts as to your income, the
     income of other members of your family, the identity and number
     or composition of the persons in your household necessary to
     determine the rent, eligibility and the appropriateness of the
     size of your apartment, or any other relevant information.

# EXHIBIT G

IVY WILLIAMS - unreported income
2003- present

<u>2004</u> (income covers 1/1 - 12/31/03)
SSI 6900 + unreported 9020 = 15,920

- 400

15,520 ÷ 40 = 388

- 148 (actual rent
5/1/04 - 4/30/05

240 x 12

= $2,880 missed rent

---

<u>2005</u> (income covers 1/1/04 - 12/31/04)
SSI 7044 + 10,660 unreported = 17,704 - 400 =

17,304 ÷ 40 = 433 (actual rent
- 148 5/1/05 - 4/30/06

285 x 12 =

$3,420 missed rent

---

<u>2006</u> (income covers 1/1 - 12/31/05)
SSI 7500 + 9197 unreported = 16,697 - 400 = 16,297 ÷

40 = 407
base rent
- 148 (5/1/06 - 4/30/07)

= 259 x 12 = $3,108 missed rent

---

<u>2007</u> (income covers 1/1/06 - 12/31/06)
SSI 7512 + 8721 unreported = 16,233 - 400 = 15,833 ÷

40 = 396
base rent
- 148

248 for 5/1-31/07

+ 396 - 171 = <u>225</u> for 6/1-30/07

* 396 - 184 = 212 x 10 = <u>2120</u> for 7/1/07 - 4/30/08

248 + 225 + 2120 = <u>2593</u> missed rent Total for 2007 1/a

---

2,880 + 3420 + 3108 + 2593 = 12,001 total missed rent

+ interest: 12,001 ÷ 48 = 250. x 54,368 = 13,592 - 12,001 = <u>1591</u>
interest

Total retro + interest: 12,001 + 1591 = 13,592 total owed.

+ currently NYI for 2008

INTERVIEW RECORD

PROJ. NO: 582          TENANT NAME: WILLIAMS                    ACCT. NO: 01314A

INTERVIEW DATE:  33008                    PREPARED BY: G. RICHTER

APARTMENT INSPECTION COMPLETED:          ANNUAL REVIEW COMPLETED: 051807

     FOR 2007 A/R, UNREPORTED INCOME FROM J.W. 8721, THUS MISSING
          RENT IS 2593.

SO FAR TENANT IS NVI WITH 2008 A/R.

    THUS, TOTAL UNREPORTED INCOME IS 12,001.  INTEREST IS 1591.

GRAND TOTAL OWED FOR 2004, 2005, 2006 & 2007 A/R PERIODS IS
$13,592.

+

PgUp/PgDn=More Interview Lines

F3 = Save          F4 = Save & Print          HELP = Fields Definition          F12 = Cancel

# EXHIBIT H

| NYCHA 040.276 (Rev. 7/06) & Reverse **TRANSMITTAL TO TERMINATIONS UNIT - TERMINATION OF TENANCY CASE** | NEW YORK CITY HOUSING AUTHORITY<br>Frederick Douglass Houses          ( 212 ) 865-7200<br>Name of Development & Phone No. | DATE OF SUBMISSION TO TERMINATIONS UNIT<br>8/17/07 |
|---|---|---|

| CURRENT LESSEE(S) NAME & ADDRESS } | LAST NAME/HUSBAND'S FIRST/WIFE'S FIRST<br>Williams, Ivy | ADDRESS<br>140 West 104th Street<br>New York, NY  10025 | ACCOUNT NO.<br>582/ 013  / 14A |
|---|---|---|---|

| TYPE OF CASE *(Non. Des./Breach of Rules/Misrepresentation/etc.)*<br>Breach of Rules and Regulations, Non Desirability | IS TENANT A NYCHA EMPLOYEE?   ☐ YES   ☑ NO |
|---|---|

| TERMINATION INTERVIEWER/DATE | 8/17/07 | DID NOT APPEAR/DATE | | FORM 040.187A MAILED/DATE | 8/17/07 |
|---|---|---|---|---|---|

## FOR USE BY TERMINATIONS UNIT

DATES

_____ 1. CASE RECEIVED BY TERMINATIONS UNIT

_____ 2. RETURNED TO DEVELOPMENT

　　　　　　　☐ Further Observation

　　　　　　　☐ Additional Information

　　　　　　　☐ Other _____

_____ 3. To SSD

DATES

_____ 4. ASSIGNED TO STAFF

_____ 5. TO LEGAL

_____ 6. TO LEGAL TO REOPEN–DEFAULT
　　　　　　　　*(Updated specification of charges)*

_____ 7. ADDITIONAL CHARGES

TERMINATIONS UNIT COMMENTS:

MANAGER'S CASE SUMMARY AND RECOMMENDATION *(For examples or instructions, see back of this form)*
FOR CRD CASES LIST WELFARE CHECK DELIVERY DAYS

Received an Inspector General report stating the Ivy Williams has been receiving $1,100.00 a month as per a court ordered support payment since 2004 and failed to report income to NYCHA

Recommendation:  Termination

*(Continue on separate sheet)*

**DISTRIBUTION**: *ORIGINAL & 1 COPY: ORIGINAL with Tenant Folder to Applications and Tenancy Administration Department - 250 Broadway, 26th Floor*
  ● *COPY to Development File*

*Over* ➡

# EXHIBIT I

```
07-12-00                                                              HESRTBRWCBL
14:24:00                        Rent Collection
                              CURRENT BALANCE                          DOUGLASS04

DOUGLASS II

582 013 14A  WILLIAMS                     , IVY


Monthly Rent          $188.60  Rent Chg Date      7-01-2007
Transaction           CURRENT  Rent Chg Number  5820837607
Amount Being Paid              $.00

                 Amount Due    Payment Amount   Last Payment
Rent             $2,744.90           $.00       05-07-2007
Recur               $69.00           $.00       05-07-2007
Retro              $276.00           $.00       09-09-1999
Legal               $75.00           $.00       06-19-2006
Misc                 $.00            $.00       05-07-2007
Security             $.00            $.00       05-08-2003


TOTALS            $3,164.90          $.00



Enter To Continue F3=Exit
```

**EXHIBIT J**

# NEW YORK CITY HOUSING AUTHORITY

## RENT DEMAND

TO:  IVY WILLIAMS

TENANT OF
PREMISES:  140 WEST 104TH STREET - #14A - NEW YORK, NY 10025

PLEASE TAKE NOTICE that you are hereby required to pay the New York City Housing Authority the sum of $ 1870.90 _____ for rent due for said premises or vacate the premises within three days of the service of this notice upon you.  The breakdown of the rent due and owing is as follows:

| | |
|---|---|
| JUNE 2007 | $175.60 |
| JULY 2007 | $188.60 |
| AUGUST 2007 | $188.60 |
| SEPTEMBER 2007 | $188.60 |
| OCTOBER 2007 | $188.60 |
| NOVEMBER 2007 | $188.60 |
| DECEMBER 2007 | $188.60 |
| JANUARY 2008 | $186.50 |
| FEBRUARY 2008 | $188.60 |
| MARCH 2008 | $188.60 |

In the event of your failure to make the payment aforesaid or to give up the possession of the premises within the time frame indicated above, summary proceedings will be instituted against you to recover possession of the premises.

Dated:  NEW YORK , New York
MARCH 24  20 08

NEW YORK CITY HOUSING AUTHORITY, Landlord

By _____
, Manager,
Houses

NYCHA 040.679 (6/07)