UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

IVY WILLIAMS,

                 Plaintiff,

      -against-

NYCHA and HUD,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

No. 07 Civ. 7587 (RJS)

---

### DEFENDANT NEW YORK CITY HOUSING AUTHORITY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

---

RICARDO ELIAS MORALES
General Counsel
New York City Housing Authority
Attorney for Defendant NYCHA
250 Broadway, 9th Floor
New York, New York 10007
(212) 776-5033

Date of Service: August 12, 2008

Of Counsel:
Samuel Veytsman
Donna M. Murphy

## TABLE OF CONTENTS

                                                        **Page**

**Table of Authorities**                                                                 ii

**Preliminary Statement**                                                            1

**Statement of Facts**                                                                 3

    A.  NYCHA's Reasonable Accommodation Policies                        3

    B.  Frederick Douglass Houses                                             4

    C.  Plaintiff's Tenancy                                                     5

    D.  Plaintiff's Failure to Submit Annual Income Review Papers or Report     7
        Household Income

    E.  Plaintiff's Failure to Pay Rent Since May 2007                          8

    F.  Plaintiff's Original Complaint                                          9

    G.  The Amended Complaint                                                   10

    H.  Plaintiff's Order to Show Cause                                         13

**Argument**                                                                            14

    Point I:   The Amended Complaint Is Time-Barred at Least in Part.           14

    Point II:  The Amended Complaint Should Be Dismissed for Failure to Comply   15
           with Rule 8 of the Federal Rules of Civil Procedure.

    Point III: The Amended Complaint Fails to State a Claim Upon Which Relief    16
           May Be Granted.

        A.  Applicable Legal Standards.                                        16

        B.  The Amended Complaint Does Not Allege a Plausible Claim of          17
           Disability Discrimination.

        C.  The Amended Complaint Does Not Allege a Plausible Claim of          20
           Harassment Based on Disability.

D.  The Amended Complaint Fails to State a Plausible Claim of Denial       22
        of Reasonable Accommodation.

**Conclusion**                                                                25

## TABLE OF AUTHORITIES

**CASES**                                                                **Page**

Alexander v. Choate, 469 U.S. 287 (1985)                                   22

Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955 (2007)               16

Bentley v. Peace & Quiet Realty 2 LLC, 367 F. Supp. 2d 341 (E.D.N.Y. 2005)  23

Evans v. Port Auth. of New York & New Jersey, 192 F. Supp.2d 247 (S.D.N.Y. 2002)  21

Fleming v. New York University, 865 F.2d 478 (2d Cir. 1989)               14

Flight v. Gloeckler, 68 F.3d 61 (2d Cir. 1995)                            18

Gavish v. Revlon, Inc., 2004 U.S. Dist. LEXIS 19771 (S.D.N.Y. Sept. 30, 2004)  17

Harris v. City of New York, 186 F.3d 243 (2d Cir. 1999)                   14

Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993)                         21

Henrietta D. v. Bloomberg, 331 F.3d 261 (2d Cir. 2003)                    17

M.D. v. Southington Bd. of Educ., 334 F.3d 217 (2d Cir. 2003)             14

LeBlanc-Sternberg v. Fletcher, 67 F.3d 412 (2d Cir. 1995)                 18

Morse v. University of Vermont, 973 F.2d 122, 127 (2d Cir. 1992)          14

Owens v. Shields, 34 Fed. Appx. 33 (2d Cir. 2002)                         15

Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79 (2d Cir. 2004)         18

Reddington v. Staten Island Univ. Hosp., 511 F.3d 126 (2d Cir. 2007)      16

Reg'l Econ. Cmty. Action Program v. City of Middletown, 294 F.3d 35 (2d Cir. 2002)  18

Rodriguez v. City of New York, 197 F.3d 611 (2d Cir. 1999) 17

Salahuddin v. Cuomo, F.2d 40 (2d Cir. 1988) 15

Shabtai v. Levande, 38 Fed. Appx. 684 (2d Cir. 2002) 15

Shapiro v. Cadman Towers, Inc., 51 F.3d 328 (2d Cir. 1995) 23

Smith v. Masterson, 2006 U.S. Dist. LEXIS 70868 (S.D.N.Y. Sept. 29, 2006) 14

Snell v. Suffolk County, 782 F.2d 1094 (2d Cir. 1986) 21

Stewart v. New York City Transit Auth., 2006 U.S. Dist. LEXIS 4279 (S.D.N.Y. Feb. 6, 2006) 14

Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565 (2d Cir. 2003) 23

Weixel v. Bd. of Educ., 287 F.3d 138 (2d Cir. 2002) 17

Wentworth v. Hedson, 493 F. Supp. 2d 559 (E.D.N.Y. 2007) 20

## STATUTES AND RULES

24 C.F.R. § 100.400(c)(2) 20

Americans with Disabilities Act of 1990

  42 U.S.C. § 12131, et seq. 2

  42 U.S.C. § 12131(2) 22

  42 U.S.C. § 12132 17

Anti-Injunction Act, 28 U.S.C. § 2283 13

Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. 21

Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act

  42 U.S.C. § 3601, et seq. 2

  42 U.S.C. § 3604(f)(1) 18

  42 U.S.C. § 3604(f)(3)(B) 22

42 U.S.C. § 3613(a)(1)(A)                                                        15

42 U.S.C. § 3617                                                                 20

Federal Rules of Civil Procedure

    Fed. R. Civ. P. 8                                                          2, 16

    Fed. R. Civ. P. 12(b)                                                        2

N.Y. C.P.L.R. § 214                                                              15

N.Y. Pub. Hous. Law § 401                                                         3

Rehabilitation Act of 1973, 29 U.S.C. § 794, et. seq.                          1, 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

IVY WILLIAMS,

                    Plaintiff,

        -against-

NYCHA and HUD,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

No. 07 Civ. 7587 (RJS)

## DEFENDANT NEW YORK CITY HOUSING AUTHORITY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff Ivy Williams ("Plaintiff") is the tenant of record of an apartment located at 140 West 104th Street, Apt. 14A, New York, New York 10025, within Frederick Douglass Houses ("Douglass Houses"), a public housing development managed by Defendant New York City Housing Authority ("NYCHA"). Plaintiff's apartment is retrofitted pursuant to section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq. (the "Rehabilitation Act") to accommodate mobility-impaired individuals and is in an elevator building.

In 2007, NYCHA learned that Plaintiff had failed to report income of $1,100 per month for the period of 2004-2007, thus resulting in Plaintiff underpaying her rent by more than $12,000, not including interest, during that period. Plaintiff has not paid any rent at all since May 7, 2007.

To the extent NYCHA can decipher a claim from the Amended Complaint, Plaintiff appears to be alleging that NYCHA discriminated against her and/or harassed her because of her disability (unspecified), and/or that NYCHA failed to accommodate her disability, in violation of the Rehabilitation Act. This Court has indicated, in its Order dated June 16, 2008, that it may read the

Amended Complaint to imply claims under the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act, 42 U.S.C. § 3601, et seq. ("FHA") and/or Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131, et seq. ("ADA").

In purported support of her claims, Plaintiff presents a litany of allegations, some of which are undecipherable, relating to deficiencies in her building, street noise, poor housing maintenance, incompetent management staff, location of the housing development's trash containers and Plaintiff's local resident association. Most of Plaintiff's allegations do not relate to conditions in Plaintiff's apartment or to conduct directed towards Plaintiff. The only allegation Plaintiff makes regarding her apartment is that there was an unspecified problem with her toilet on June 18, 2004. Plaintiff does not identify any act of alleged discrimination by any individual.

Although the Amended Complaint is replete with scattered references to various ailments, Plaintiff does not state which, if any, of these ailments constitutes the alleged disability she claims to have been discriminated for.

Plaintiff also does not identify the relief she is seeking in the instant action. However, Plaintiff has sought a preliminary injunction directing defendants to "stop harassment," "stop [a] civil court case," and "remove dead rats" from Plaintiff's development. By Order dated June 16, 2008, this Court denied Plaintiff's request for a preliminary injunction.

NYCHA now moves to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 8 and 12(b) on the grounds that: (1) the Amended Complaint is time-barred, at least in part; (2) the Amended Complaint fails to provide a short and plain statement of the claim; and (3) the Amended Complaint fails to state a claim upon which relief may be granted inasmuch as Plaintiff cannot establish a prima facie claim of discrimination, harassment or failure to accommodate her

2

disability under the Rehabilitation Act, the FHA or the ADA.   Plaintiff does not allege that, by reason of her alleged disability, she was denied the opportunity to participate in or benefit from NYCHA's services, programs, or activities, or was in any way discriminated against by NYCHA. Although Plaintiff is the subject of a nonpayment proceeding in the Civil Court of the City of New York, Housing Part ("Housing Court"), she does not deny that she has failed to pay rent for over a year.  Additionally, Plaintiff does not allege that she has been subject to harassment for purposes of the above-stated statutes inasmuch as she does not allege any acts which rise to the requisite level of severity or pervasiveness for such a claim and does not allege that any act was motivated by discriminatory animus.   Finally, Plaintiff does not allege that NYCHA denied her a reasonable accommodation that she requested.

## STATEMENT OF FACTS

**A.      NYCHA's Reasonable Accommodation Policies**

NYCHA is a public authority created pursuant to New York Public Housing Law § 401 to build and operate safe, decent and sanitary public housing for low-income residents of the City of New York. See N.Y. Pub. Hous. § 401.

NYCHA provides reasonable accommodations to meet the needs of public housing residents with disabilities. NYCHA's provision of reasonable accommodations to residents is reflected in part in General Memorandum ("GM") 3584, which references NYCHA's Voluntary Compliance Agreement ("VCA") with HUD and the procedure for processing requests for reasonable accommodations are explained in GM-3584. . See Declaration of Samuel Veytsman ("Veytsman Decl.") ¶ 2, Exh. A.  Pursuant to the VCA, NYCHA has made 9,100 apartments accessible to mobility impaired-individuals and those with other disabilities. Veytsman Decl. ¶ 2, Exh. A at p.1.

3

Among other accommodations, retrofitted apartments are fully accessible to residents with limited mobility, including residents requiring canes and wheelchairs. See Declaration of Michael Wyands ("Wyands Decl.") ¶ 3. There are no restrictions for the location of handicapped accessible apartments in buildings with elevators and such apartments may be on any floor in an elevator building. Id.

All NYCHA public housing tenants must annually submit an "Occupant's Affidavit of Income," which requires tenants to state, inter alia, whether any one in their household has a disability and, if so, whether they would like to request an accommodation for that disability. Wyands Decl. ¶ 4, Exh. A. Additionally, tenants may request a reasonable accommodation from their management office at any time. Veytsman Decl. Exh. A at p. 1.

**B.     Frederick Douglass Houses**

Frederick Douglass Houses is a public housing development on the Upper West Side of Manhattan operated by NYCHA. Douglass Houses includes 2,054 apartments housing approximately 4,588 residents. Wyands Decl. ¶ 2. Plaintiff resides on the fourteenth floor of a in a seventeen-story apartment building which contains 136 apartments. Id.

Douglass Houses maintains three exterior trash containers for storing waste and debris until it is picked up by the New York City Department of Sanitation. Id. at ¶ 19. A playground and a parking lot separate Plaintiff's apartment building from the nearest external trash container. Id. at ¶ 20. Although that trash container is multiple building lengths away from Plaintiff's building, it is visible from Plaintiff's fourteenth floor window. Id. That trash container had been moved from its prior location next to a Douglass Houses apartment building so that residents adjacent to that container would not be affected in the event of a fire in the container. Id. This trash container's

4

current location was selected in consultation with the New York City Department of Sanitation and the Douglass Houses Resident Association, with direct input from residents. Id.

Each external trash container at Douglass Houses is surrounded by a steel bar fence, the gate to which is locked every evening. Id. at ¶ 21. If this gate is damaged by vandalism or accident, NCYHA repairs it as quickly as possible. Id.

All external trash containers in Douglass Houses are cleaned and deodorized daily, and more often if needed. Id. at ¶ 22. Douglass Houses staff conduct daily inspections of trash container areas to insure that garbage and bulk debris remains within fenced areas. Id. The New York City Department of Sanitation removes all trash and debris from trash container areas every Tuesday and Friday. Id. at ¶ 19. If a trash container becomes full between those days, NYCHA contacts the Department of Sanitation so that the garbage may be removed as quickly as possible. Id.

The areas around trash containers are treated by an exterminator on a monthly basis. Id. at ¶ 23. Additionally, any rat holes discovered on Douglass Houses grounds are covered immediately. Id.

Despite the fact that Douglass Houses has nearly 4,600 residents and Plaintiff's building contains 136 apartments, Plaintiff is the only resident to complain of the external trash containers' placement or maintenance. Id. at ¶ 24.

All Douglass Houses elevators are inspected daily. Id. at ¶ 25. In the event an elevator requires repair, such repairs are performed immediately, on an emergency basis, and are generally completed within the same day. Id.

**C.    Plaintiff's Tenancy**

Plaintiff has resided in Douglass Houses since Summer of 1995. Wyands Decl. Exh. B.

Plaintiff was originally the tenant of record at 875 Columbus Avenue, Apt. 5I, New York, New York, a part of Douglass Houses, until she requested a transfer to a mobility-accessible apartment to accommodate an alleged disability in 2003.

On her 2002 Occupant's Affidavit of Income, Plaintiff stated that someone in her household has a disability and she requested an accommodation from NYCHA. Wyands Decl. ¶ 6, Exh. A at p.3. Specifically, Plaintiff stated that her mobility is impaired, requiring her to walk with a cane. Id. On April 25, 2003, Plaintiff was selected for an apartment, located at 140 West 104th Street, Apt. 14A, New York, New York 10025, at Douglass Houses, which had been retrofitted pursuant to section 504 of the Rehabilitation Act to accommodate residents with disabilities. Wyands Decl. ¶ 7, Exh. C. On April 29, 2003, Plaintiff viewed and accepted that apartment, which is on the fourteenth floor of an elevator building. Wyands Decl. ¶ 7, Exh. C. Plaintiff entered into a Resident Lease Agreement for that apartment on May 1, 2003. Wyands Decl. Exh. D. That Resident Lease Agreement provided, inter alia, that Plaintiff rent is due and payable on the first day of each month and that Plaintiff must report any changes in her household's income to the management office within 30 days of such changes. Wyands Decl. ¶ 8, Exh. D at ¶¶ 1, 7(d). All public housing tenants are required to accurately and timely report their household income because their rent is calculated based on that income. Wyands Decl. ¶ 4.

Repairs were made to the toilet in Plaintiff's apartment on June 30, 2004. Wyands Decl. ¶ 26, Exh. C. On that date, Plaintiff came into the Douglass Houses management office at approximately 10:00 a.m., demanding that she be provided with a new bathroom for her exclusive private use because plumbers were working on her toilet. Id. As work on Plaintiff's bathroom would be completed by 2:00 p.m., Plaintiff was informed that there were no spare bathrooms for her

6

exclusive use, but that she was welcome to use the bathroom in the management office. Id. In response, Plaintiff screamed threats and obscenities at management personnel. Id.

**D.    Plaintiff's Failure to Submit Annual Income Review Papers or Report Household Income.**

On September 26, 2006, Douglass Houses management submitted a "Transmittal to Terminations Unit - Termination of Tenancy Case," stating that Plaintiff failed to submit annual income review papers for 2005, despite multiple written notices of her delinquency. Wyands Decl. ¶ 9, Exh. E. On January 12, 2007, NYCHA preferred charges against Plaintiff based on this failure to furnish information, and a termination of tenancy hearing on these charges was scheduled. Wyands Decl. ¶ 9, Exh. F.

In or around February 2007, Plaintiff sought to run for office in the Douglass Houses Resident Association. Wyands Decl. ¶ 14. NYCHA is subject to HUD regulations which state, in relevant part, that for a public housing tenant to be eligible "to seek office and serve on the resident council governing board," such tenant must be "in compliance with the lease." 24 CFR § 964.125(c). At the time Plaintiff sought office, NYCHA had served her with charges for failing to furnish information necessary to determine her household income. Wyands Decl. ¶ 9, Exh. F. Because Plaintiff had failed to provide NYCHA with information regarding her household income, Plaintiff was noncompliant with her lease and, therefore, was ineligible to run for Douglass Houses Resident Association office. Wyands Decl. ¶ 14. Plaintiff was informed of her ineligibility on March 2, 2007. See Amended Complaint.

In 2007, Douglass Houses management learned, through a report from NYCHA's Office of the Inspector General, that Plaintiff had failed to report her receipt of $1,100 a month in court-

ordered support payments.  Wyands Decl. ¶ 10.  Consequently, this amount was not factored into

Plaintiff's rent calculation, resulting in Plaintiff being charged less rent then she should have been.

Id.  Plaintiff thus underpaid her rent by more than $12,000 over the course of these four years, not

including interest.  Id. at ¶ 11, Exh. G.

Plaintiff met with Douglass Houses management on August 17, 2007 to discuss her failure to

report this income, at which time she became angry and combative and stated that she would never

pay her rent again.  Wyands Decl. ¶ 12, Wyands Decl. Exh. C.  Following the August 17, 2008

meeting with Plaintiff, Douglass Houses management informed NYCHA's Terminations Unit that

Plaintiff failed to accurately report her income for four years and recommended termination of

Plaintiff's tenancy.  Wyands Decl. ¶ 13, Exh. H.  Charges pending against Plaintiff were

subsequently amended to reflect Plaintiff's failure to report this income. Veytsman Decl. ¶ 3, Exh. B.

A termination of tenancy hearing on these charges was held, following several adjournments,

on November 30, 2007.  Veytsman Decl. ¶ 4, Exh. D.  However, that hearing did not proceed

because Plaintiff seemed unable to focus on the proceedings or the questions being posed to her.  Id.

Accordingly, on December 17, 2007, NYCHA's Law Department requested an assessment of

Plaintiff's mental competence pursuant to NYCHA procedures, as reflected in GM-3742, "Mental

Competence Assessment and Guardians Ad Litem."  Veytsman Decl. ¶ 4, Exh. C.  Following an

assessment by NYCHA's Social Services Department, a Guardian Ad Litem ("GAL") was appointed

to represent Plaintiff in her administrative hearing.  Veytsman Decl. ¶ 5.  That hearing has been

repeatedly adjourned at the request of Plaintiff's GAL.  Id.

**E.**     **Plaintiff's Failure to Pay Rent Since May 2007**

Plaintiff has not paid her rent since May 7, 2007.  Wyands Decl. ¶ 14, Exh. I.  As of July 1,

2008, Plaintiff owed NYCHA $2,744.90 in unpaid rent, not including interest or the underpayment of rent resulting from her failure to report the court-ordered support payments as income.  Id.

On February 21, 2008, a NYCHA Housing Assistant served Plaintiff with a Rent Demand for unpaid rent from June 2007 through February 2008.  Wyands Decl. ¶ 16, Exh. C.  Plaintiff refused to discuss the matter with the Housing Assistant.  Id.  Shortly after refusing to speak with the Housing Assistant, Plaintiff called the Douglass Houses management office stating she would sue NYCHA and its employees and would send the police after Douglass Houses management employees.  Id.

On March 24, 2008, NYCHA issued Plaintiff a second Rent Demand, stating that Plaintiff must either pay NYCHA the sum of $1,870.90, representing Plaintiff's unpaid rent for June 2007 though March 2008, or vacate the apartment within three days.  Wyands Decl. ¶ 17, Exh. J.  The rent demand advised Plaintiff that if she did not make the requisite payment or vacate the apartment within the three-day period, summary proceedings would be instituted against her to recover possession of the apartment.  Id.

Plaintiff has neither paid her outstanding rent nor vacated her apartment and, consequently, NYCHA initiated summary proceedings against her in housing court in May 2008.  Wyands Decl. ¶ 18.

**F.    Plaintiff's Original Complaint**

Plaintiff originally submitted a complaint to this Court's Pro Se Office on January 25, 2007. That complaint was dismissed without prejudice by Chief Judge Kimba M. Wood by Order dated August 27, 2007.  Chief Judge Wood stated that Plaintiff "fails to allege sufficient facts to establish a violation of her federal rights" and granted Plaintiff leave to file an amended complaint within sixty days.  Id.  Judge Wood explained, inter alia, that:

9

First, plaintiff must specify the nature of her disability. Second she must allege how the conditions of her apartment affected her disability. Third, she must state how defendants failed to provide with reasonable accommodation. Fourth, she must allege all steps she took to give defendants the opportunity to remedy the alleged problems associated with the apartment.

*** 

If she believes the decisions made concerning her housing were made solely because of her disability, she may raise a Rehabilitation Act claim with specific details demonstration intentional discrimination.

Id. at 4-5.

## G.    The Amended Complaint

The Amended Complaint is comprised of 30 hand-written pages of non-chronological narrative, with no apparent organization and no paragraph numbers. The Amended Complaint appears to repeat the same allegations in no coherent order and much of this document lacks punctuation and syntax, making comprehension of the allegations even more difficult.

Furthermore, NYCHA cannot determine the proper page order of the Amended Complaint inasmuch as most pages begin or end mid-sentence and the general lack of organization, punctuation and syntax throughout the document makes it difficult, if not impossible, to determine which phrase segments are intended to go together. Some pages in the Amended Complaint do bear numbers, but most do not. Additionally, to the some extent some pages are numbered, those numbers appear to bear no relation to the text, with page numbers repeating and some pages bearing multiple numbers. Specifically, the seventh and tenth pages in the Amended Complaint are both numbered "2"; the twelfth, fourteenth and nineteenth pages are numbered "3"; the twenty-fourth page is numbered "4"; the twenty-sixth page is numbered "5"; the twenty-eighth page is numbered "4-5"; and the remaining pages are unnumbered.

10

To the extent NYCHA is able to decipher Plaintiff's allegations, Plaintiff appears to allege that NYCHA has discriminated against her based upon her disability in violation of the Rehabilitation Act, and as the Court has construed the Amended Complaint, the FHA and ADA.

Despite Chief Judge Wood's instructions, Plaintiff does not identify her alleged disability. The Amended Complaint is replete with scattered references to various and apparently unrelated ailments, including "skull fracture with seizures," headaches, backaches, muscle spasms, "lower leg spasms," "airway respiratory disease," "sin[us]itis," "eye infections," diarrhea, loss of appetite, nausea, stomach cramps, unspecified allergies, asthma, joint pain, "tiredness," "neck spasms," Lupus and "bacterial infections." Plaintiff does not state which, if any, of these ailments constitute her alleged disability or form the basis for her discrimination claim.

Most of the acts or circumstances Plaintiff appears to allege constitute "discrimination" are general housing conditions. Plaintiff only makes one allegation regarding a condition that purportedly existed within her own apartment: an unspecified problem with Plaintiff's toilet on June 18, 2004. The remaining housing-related allegations involve conditions in Plaintiff's building, housing authority and/or neighborhood in general, but not specifically in Plaintiff's apartment.[1]

---

[1] Plaintiff alleges that: (1) noise from the trash container and the truck which picks up the garbage gives Plaintiff headaches; (2) the elevator in Plaintiff's building has been under "service" (presumably maintenance and/or repair); (3) there are unspecified problems with ventilation in Plaintiff's building; (4) there are unspecified "discriminatory hazardous conditions" around the "garbage dump" (presumably the one or more of Douglass Houses' exterior trash containers), which is "unsanitized" and operated by "non-trained" employees; (4) asbestos was "illegally moved and burned in the container" and there "was lime thrown"; (5) there are rat holes and vermin in unspecified locations; (6) there have been "shot outs" [sic] in a parking lot and an unspecified weapon was found; (7) external trash containers have not been inspected by the fire department; (8) there are defects in Plaintiff's building's outer doors and intercom system; (9) there is lead paint in unspecified locations; (10) $500 was given to the Douglass Houses Resident Association for a Halloween party; (11) NYCHA does not give residents adequate notice when "containers are down";

Plaintiff does not claim that any act NYCHA allegedly performed or any housing condition NYCHA allegedly maintains is motivated by discriminatory animus based on Plaintiff's disability.

While Plaintiff alleges in a conclusory manner that she has been "harassed, threatened by the management and its employees," she does not state how she has been harassed or threatened and does not identify the individual or individuals she alleges to have threatened or harassed her. Nor does Plaintiff claim that any alleged threats or harassment were motivated by Plaintiff's disability. The only explanation Plaintiff provides regarding these allegations is that the housing development's Manager "let [Plaintiff] know she doesn't like [her]."

Several pages in the Amended Complaint bear the heading "Reasonable Accommodation" and Plaintiff states that "reasonable accommodation [sic] do not exist here at Douglas [sic] Houses." However, Plaintiff does not identify a reasonable accommodation she has requested which NCYHA has denied her. Plaintiff states she was not accommodated on June 18, 2004 because there was a problem with her toilet. Plaintiff does not explain how a routine plumbing problem constitutes failure to accommodate her disability and does not allege that NYCHA did not repair her toilet at that time.[2]

---

(12) there has been flooding in the building (although Plaintiff expressly states that flooding has not occurred in her apartment); (13) the water in the building is sometimes shut off, leaves "lead deposit[s]" and "has [an] odor"; (14) NYCHA Housing Assistants are "incompetent" and "consistently unavailable"; (15) Plaintiff's sleep is disturbed by "car alarms, dogs barking, babies crying, etc."; (16) smoke detectors and carbon monoxide detectors in the building cause "ringing in [Plaintiff's] ears" and "aggravate [her] seizures"; (17) Plaintiff was found ineligible to run for Douglass Houses Resident Association office; (18) there are "sink holes" in unspecified locations; and (19) Plaintiff was transferred from a fifth-floor apartment to a fourteenth-floor apartment.

[2] Plaintiff also purports to make several additional claims which do not relate to her tenancy in any way, including complaints regarding the number of female employees on NYCHA's maintenance staff; allegedly unfair Holocaust reparation payments; the way the Section 8 housing assistance program is run; and her granddaughter's (who lives in Virginia) alleged health condition.

12

**H.**    <u>**Plaintiff's Order to Show Cause**</u>

On April 17, 2008 Plaintiff filed a proposed Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order with this Court, seeking to enjoin defendants to "stop harassment," "stop [a] civil court case," and "remove dead rats" from Plaintiff's apartment building. The "court case" Plaintiff sought to enjoin apparently was the housing court summary proceeding NYCHA had brought against Plaintiff and the alleged "harassment" appears to consist of NYCHA serving Plaintiff with papers in connection with those proceedings.

By Order dated June 16, 2008, this Court denied Plaintiff's motion for a temporary restraining order and a preliminary injunction and granted defendants' request for leave to file a motion to dismiss. This Court stated that it is precluded from stopping a state court eviction proceeding under the Anti-Injunction Act, 28 U.S.C. § 2283. This Court further stated that "because the Court does not have the power to enjoin the underlying state housing court proceedings, it clearly follows that the Court does not have the power to enjoin defendants from serving documents in connection with those proceedings." With respect to Plaintiff's allegations regarding rats in the development the Court explained that "significantly, the harm alleged and the relief requested … bear little relation to the statutory violations asserted in the underlying complaint … plaintiff does not allege that the presence of dead rats in her building has been purposely directed at her or is in any way related to plaintiff's claims under the Fair Housing Act, Rehabilitation Act, or Americans with Disabilities Act."

---

Inasmuch as these claims in no way relate to Plaintiff's relationship with NYCHA, NYCHA does not respond to them.

**ARGUMENT**

**POINT I**

**THE AMENDED COMPLAINT IS TIME-BARRED AT LEAST IN PART.**

The Rehabilitation Act does not provide its own statute of limitations and "actions under § 504 of the Rehabilitation Act are governed by the state statute of limitations applicable to personal injury actions." M.D. v. Southington Bd. of Educ., 334 F.3d 217, 224 (2d Cir. 2003) (citations omitted). Rehabilitation Act claims accruing in New York are thus subject to New York's three-year statute of limitations for personal injury cases under CPLR § 214. See, e.g., Harris v. City of New York, 186 F.3d 243, 247-248 (2d Cir. 1999); Fleming v. New York University, 865 F.2d 478, 481 (2d Cir. 1989).

Plaintiff filed her original complaint on January 25, 2007. Accordingly, any Rehabilitation Act claims Plaintiff purports to base on events allegedly occurring prior to January 25, 2004 are time-barred and must be dismissed. Thus, any claim Petitioner purports to base upon her transfer to her current apartment is time-barred because she was selected for that transfer on April 25, 2003 and completed the transfer process within the following two months.

While Petitioner does not cite the FHA or the ADA in her Amended Complaint, any FHA or ADA claims based on the Plaintiff's transfer to her current apartment would also be time-barred. Title II of the ADA, like the Rehabilitation Act, does not provide its own statute of limitations and ADA claims in this jurisdiction are subject to New York's three-year statute of limitations for personal injury claims. See, e.g., Smith v. Masterson, 2006 U.S. Dist. LEXIS 70868 (S.D.N.Y. Sept. 29, 2006); Stewart v. New York City Transit Auth., 2006 U.S. Dist. LEXIS 4279 (S.D.N.Y. Feb. 6, 2006); see also Morse v. Univ. of Vermont, 973 F.2d 122, 127 (2d Cir. 1992).

14

The statute of limitations for suits brought under the FHA is two years. 42 U.S.C. § 3613(a)(1)(A). Thus, in addition to barring FHA claims based on Plaintiff's transfer, the statute of limitations also bars any such claims Plaintiff may purport to base on acts occurring prior to January 25, 2005, including the alleged problem with her toilet on June 18, 2004, the only allegation Plaintiff makes with respect to her apartment, as opposed to her building, housing development or general neighborhood.

## POINT II

### THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH RULE 8 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief" and Federal Rule of Civil Procedure 8(e) requires that the pleading be "simple, concise, and direct." The Second Circuit has held that "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." See Salahuddin v. Cuomo, 861 F.2d 40, 42-43 (2d Cir. 1988) (affirming district court's sua sponte dismissal of pro se litigant's complaint, which "span[ned] 15 single-spaced pages"). While Rule 8 requirements are relaxed with respect to pro se litigants, the Second Circuit has not hesitated to dismiss pro se complaints which were unnecessary prolix and convoluted. See id.; see also, e.g., Owens v. Shields, 34 Fed. Appx. 33 (2d Cir. 2002); Shabtai v. Levande, 38 Fed. Appx. 684 (2d Cir. 2002). This Circuit has also held that dismissal under Rule 8 is warranted in "those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin at 42.

15

Like the complaint in <u>Salahuddin</u>, the Amended Complaint is an unreasonably prolix "mass of verbiage" through which neither NYCHA nor this Court should have to wade, and to which NYCHA should not have to respond.  Additionally, the Amended Complaint is so confused and unintelligible as to "disguise" whatever "true substance" it may have.  Accordingly, the Amended Complaint should be dismissed.

**POINT III**

**THE AMENDED COMPLAINT FAILS TO STATE A
CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

Plaintiff's Amended Complaint should be dismissed for failure to state a claim upon which relief may be granted inasmuch as the Amended Complaint does not make out a plausible claim of discrimination, harassment or denial of reasonable accommodation under the Rehabilitation Act.  To the extent this Court may read the Amended Complaint to suggest claims under the FHA and the ADA, Plaintiff is also unable to establish such claims under either of those statutes.

**A.    Applicable Legal Standards.**

In order for a complaint to withstand a motion to dismiss under Rule 12(b), a plaintiff's "[f]actual allegations  must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corporation v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007).  Under <u>Bell Atlantic</u>, although heightened fact pleading of specifics is not required, the plaintiff must nonetheless allege "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1974 (ruling that, "[b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); <u>Reddington v. Staten Island Univ. Hosp.</u>, 511 F.3d 126, 131 (2d Cir. 2007) ("Although the pleading standard is a liberal one, bald assertions and conclusions of law will

16

not suffice. To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level."); see also Gavish v. Revlon, Inc., 2004 U.S. Dist. LEXIS 19771, at *31 (S.D.N.Y. Sept. 30, 2004) ("bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations and will not defeat a motion to dismiss").

## B. The Amended Complaint Does Not Allege a Plausible Claim of Disability Discrimination.

Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). A discrimination claim under this statute requires that (1) the plaintiff is a qualified individual with a disability, (2) the defendant is subject to the Rehabilitation Act (i.e. that it receives federal funding), and (3) the plaintiff was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or were otherwise discriminated against by the defendant, by reason of the plaintiff's disabilities. Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003); Weixel v. Bd. of Educ., 287 F.3d 138, 146 n. 6 (2d Cir. 2002); Rodriguez v. City of New York, 197 F.3d 611, 617 (2d Cir. 1999).

Similarly, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A prima facie discrimination claim under the ADA requires the same elements as does a claim under the Rehabilitation Act: (1) that the plaintiff is a qualified individual with a

disability; (2) that the defendant is subject to the ADA; and (3) that the plaintiff was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by defendant, by reason of her disability. Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 85 (2d Cir. 2004) (citations omitted).

The FHA makes it unlawful "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1).

To establish a discrimination claim under either the FHA or the ADA, a "plaintiff must present evidence that 'animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive.'" Reg'l Econ. Cmty. Action Program v. City of Middletown, 294 F.3d 35, 49 (2d Cir. 2002), quoting LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 425 (2d Cir. 1995). The discriminatory animus requirement is even more stringent under the Rehabilitation Act, which requires a plaintiff to show that the defendant denied her benefits "*solely* by reason of" her disability. Flight v. Gloeckler, 68 F.3d 61, 64 (2d Cir. 1995) (emphasis added); see also Reg'l Econ. Cmty. at 49.

Plaintiff does not allege that, by reason of her alleged disability, she was denied the opportunity to participate in or benefit from NYCHA's services, programs, or activities, or was in any way discriminated against by NYCHA. Nor does Plaintiff allege that anything NYCHA did was motivated by discriminatory animus towards her. On the contrary, Plaintiff has been a NYCHA tenant for over 13 years and, when Plaintiff sought an accommodation for an alleged mobility impairment, NYCHA transferred her into a specially modified apartment to accommodate her

alleged need.  Nor does Plaintiff allege that NYCHA made a dwelling unavailable to her because of

her disability.  Because Plaintiff does not allege discriminatory animus or that she was denied any

benefit from NYCHA by reason of her disability, Plaintiff does not state a claim under the

Rehabilitation Act, the ADA or the FHA.

Additionally, with the exception of an alleged problem with Plaintiff's toilet four years ago,

all of Plaintiff's housing-related claims involve allegedly deficient housing and poor maintenance in

Plaintiff's apartment building or housing development, or even with the general neighborhood, but

*not* conditions in Plaintiff's apartment.  Plaintiff does not allege that NYCHA maintains conditions

in Douglass Houses, a 4,588-resident housing development, or in her 17-story, 136-apartment

building, for the purpose of discriminating against her.  Indeed, any such allegation would be

patently implausible.

As this Court stated in its June 16, 2008 Order, building-wide or development-wide problems

such as vermin "bear little relation to the statutory violation asserted" and, while such alleged

problems may "merit ... attention from the New York City Health Department, ... plaintiff does not

allege that [those conditions have] been purposely directed at her or is in any way related to

plaintiff's claims."  Thus, even if conditions at Douglass Houses were less than ideal, as Plaintiff

alleges, this would in no way indicate that NYCHA violated the Rehabilitation Act, the FHA or the

ADA.

Finally, with respect to Plaintiff's allegation that she was found ineligible to run for Douglass

Houses Resident Association office, it should be noted that HUD regulations preclude NYCHA from

allowing tenants who are noncompliant with the lease to run for resident association office.  See 24

CFR § 964.125(c).  Not only does Plaintiff not allege that she was found ineligible because of her

19

disability; she also does not dispute that she was delinquent with her rent at the time of her ineligibility determination, thus rendering her noncompliant with her lease. By reason of this noncompliance, Plaintiff was ineligible to run for Resident Association office as a matter of law.

**C.    The Amended Complaint Does Not Allege a Plausible Claim of Harassment Based on Disability.**

Plaintiff baldly asserts that unidentified NYCHA employees harassed or threatened her. Plaintiff does not allege a single threat or incident of harassment and does not state what acts she claims to constitute the alleged harassment.

Defendants and this Court have concluded the "harassment" Plaintiff's had sought to enjoin via her preliminary injunction request was service of papers in connection with summary proceedings NYCHA has brought against Plaintiff.[3]

Plaintiff fails to state a harassment claim under the Rehabilitation Act, the FHA or the ADA. The FHA makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [inter alia] . . . Section 3604." 42 U.S.C. § 3617. The implementing regulations interpret this section to cover "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling *because of* the race, color, religion, sex, handicap, familial status, or national origin of such persons, or of visitors or associates of such persons." 24 C.F.R. § 100.400(c)(2) (emphasis added); see also, Wentworth v. Hedson, 493 F. Supp. 2d 559, 565 (E.D.N.Y. 2007). Plaintiff does not dispute that NYCHA is required to serve papers on her in

---

[3] This conclusion is based on the fact that Plaintiff repeatedly referred to service of papers as

connection with the housing court proceedings. Nor does Plaintiff dispute that these proceedings are prompted by her failure to pay rent, and not by her disability. In short, Plaintiff does not allege that NYCHA's serving her with papers is in any way motivated by her disability. Indeed, Plaintiff does not allege that NYCHA has taken *any* action against her based on her disability. Accordingly, Plaintiff does not state a harassment claim under the FHA.

Neither the ADA nor the Rehabilitation Act specifically address harassment claims. NYCHA's research has not disclosed any cases in which courts have recognized a "hostile housing environment" claim under these statutes. Even if this Court were to recognize a novel "hostile housing environment claim," Plaintiff would fail to make out such a claim under the hostile work environment standard utilized in cases under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). In order to assert a hostile work environment claim under Title VII, a plaintiff must establish that the complained of behavior was "sufficiently severe or pervasive to alter the conditions of [her] employment, creating an abusive working environment," and that there exists "a sufficient basis for imputing the conduct that created the hostile environment to [her] employer." Evans v. Port Auth. of New York & New Jersey, 192 F. Supp.2d 247, 279 (S.D.N.Y. 2002). Harassing behavior is "severe or pervasive" where a workplace is permeated with "discriminatory intimidation, ridicule, and insult." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citations omitted). A plaintiff "must prove more than a few isolated incidents of [discriminatory] enmity. Casual comments, or accidental or sporadic conversation" are insufficient. Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir. 1986) (citations omitted).

Plaintiff's allegations do not approach the pleading requirements for a hostile environment

---

"harassment" in complaints she has made to Douglass Houses management.

21

the FHA], a plaintiff must demonstrate that: (1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap "may be necessary" to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation. Bentley v. Peace & Quiet Realty 2 LLC, 367 F. Supp. 2d 341, 345 (E.D.N.Y. 2005). Furthermore, "[t]o prevail on a reasonable accommodation claim [under the FHA or the ADA], plaintiffs must first provide the governmental entity an opportunity to accommodate them through the entity's established procedures … A governmental entity must know what a plaintiff seeks prior to incurring liability for failing to affirmatively grant a reasonable accommodation." Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 579 (2d Cir. 2003). A defendant "engages in impermissible discrimination in violation of the FHA, the ADA, [and] the Rehabilitation Act … when it *refuses* to make changes to "traditional rules or practices if necessary to permit a person with handicaps an equal opportunity to use and enjoy a dwelling." Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 333 (2d Cir. 1995) (citation omitted, emphasis added).

Plaintiff does not allege the disability allegedly requiring accommodation or that she requested a reasonable accommodation for this disability which NYCHA refused. While Plaintiff alleges that she has difficulty climbing stairs, Plaintiff acknowledges that upon her request in 2003, NYCHA transferred her to an apartment specially retrofitted pursuant to Rule 504 of the Rehabilitation Act in a handicapped-accessible building with an elevator to accommodate this mobility impairment.[4]

---

[4] Even if this elevator has been out of service for a few hours due to necessary repair and maintenance, this does not render Plaintiff's apartment inaccessible. Douglass Houses elevators are

claim. No reasonable person would consider being served with legal papers after failing to pay rent to be sufficiently severe or pervasive to alter their housing conditions. Accordingly, any harassment claims are without merit and should be dismissed.

**D.    The Amended Complaint Fails to State a Plausible Claim
of Denial of Reasonable Accommodation.**

To the extent the Amended Complaint may be read to suggest a claim based on failure to provide a reasonable accommodation, such a claim is without merit because NYCHA has provided Complainant with all reasonable accommodations she has requested.

Each of the three statutes referenced above require public housing agencies to provide reasonable accommodations to disabled tenants: the ADA requires covered agencies to make "reasonable modifications" to rules, policies or practices" to allow a disabled individual to receive or participate in their services, programs or activities (42 U.S.C. § 12131(2)) and the FHA's definition of discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling" (42 U.S.C. § 3604(f)(3)(B)). While the Rehabilitation Act contains no statutory provision or regulation regarding reasonable accommodations, the Supreme Court has ruled that eligibility for a federally assisted benefit "cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." Alexander v. Choate, 469 U.S. 287, 301 (1985).

"To make out a claim of discrimination based on failure to reasonably accommodate [under

22

To the extent Plaintiff contends that she should be transferred to a lower floor because of her disability,[5] Plaintiff has never applied for such a transfer, and, therefore, NYCHA has not denied Plaintiff a transfer to a lower floor.  Plaintiff cannot claim that NYCHA denied her a reasonable accommodation when she has not requested that accommodation.

Because Plaintiff does not allege that NYCHA refused her a reasonable accommodation which she had requested, she fails to state a plausible claim for denial of reasonable accommodation under the Rehabilitation Act, the ADA or the FHA.

---

generally repaired the same day.  Plaintiff also does not, and cannot, allege that an elevator guaranteed to never require maintenance or repair is a possibility, much less a reasonable accommodation.

[5] Notably, the contention that Petitioner needs to be on a lower floor would be illogical in light of the fact that such a move would place Plaintiff in closer proximity to any noise and odor form the street, two of the allegedly offensive circumstances Plaintiff now complains of from her fourteenth floor apartment.

## **CONCLUSION**

For the foregoing reasons, Defendant New York City Housing Authority respectfully requests

that this Court grant its motion to dismiss the Amended Complaint and grant such other and further

relief as this Court deems proper.

Dated: New York, New York
        August 12, 2008

RICARDO ELIAS MORALES
General Counsel
New York City Housing Authority
Attorney for Defendant NYCHA
250 Broadway, 9th Floor
New York, New York 10007
(212) 776-5033

By: *Sam Veytsman*

Samuel Veytsman (SV 9511)