# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

Nº 07 Civ. 7587 (RJS)

_____

IVY WILLIAMS,

Plaintiff,

VERSUS

NEW YORK CITY HOUSING AUTHORITY and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,

Defendants.

_____

MEMORANDUM AND ORDER
March 26, 2009

_____

RICHARD J. SULLIVAN, District Judge:

*Pro se* Plaintiff Ivy Williams brings this action against Defendants New York City Housing Authority ("NYCHA") and the United States Department of Housing and Urban Development ("HUD"), alleging causes of action under the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 701 *et seq*., the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act (the "FHAA"), 42 U.S.C. § 3601 *et seq*., and Title II of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12131 *et seq*.

Before the Court are Defendants' separate motions to dismiss. HUD moves to dismiss the Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, and both Defendants move to dismiss this action under Rule 12(b)(6) for failure to state a claim. For the reasons set forth below, Defendants' motions are granted.

## I. BACKGROUND

### A. Facts[1]

The Frederick Douglass Houses (the "Frederick Douglass Complex" or "Complex") is a public housing development managed by NYCHA. In May 2003, Plaintiff was living in an apartment on the fifth floor of an apartment building within the Complex. (*See* Am. Compl. at 18.) On May 8, 2003, Plaintiff executed a form directed to the housing manager of the Complex, which indicated that she wished to be transferred to a different unit because she "need[ed] a larger apartment." Plaintiff was subsequently transferred to an apartment on the fourteenth floor of a building at 140 West 104th Street. (*See id.* at 16.)

The apartment to which Plaintiff was transferred is located over one of the garbage facilities at the Complex. (*See id.* at 3.) Plaintiff makes two primary sets of allegations regarding the conditions at the

---

[1]   The following facts are taken from the Amended Complaint and the documents attached thereto. *See Faulkner v. Arista Records LLC*, --- F. Supp. 2d ----, No. 07 Civ. 2318 (DAB), 2009 WL 585879, at *6 (S.D.N.Y. Mar. 5, 2009). Plaintiff's factual allegations are assumed to be true and all reasonable inferences are drawn in her favor. *See Cleveland v. Caplaw Ents.*, 448 F.3d 518, 521 (2d Cir. 2006).

Although the pages of the Amended Complaint are not numbered, the Court cites to the pages of the pleading according to the order in which they were submitted when it was filed. Moreover, the documents referred to herein were included in the approximately thirty pages of unlabeled documents that Plaintiff appended to the Amended Complaint. "For purposes of a motion to dismiss," the Amended Complaint is deemed "to include any written instrument attached to it." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). Because direct citations to these documents are infeasible given the format of the Amended Complaint, the Court refers to them descriptively.

Complex. First, she alleges that the garbage facilities under her building are poorly maintained, which has led to hazardous conditions for all tenants and caused her to suffer injuries. (*Id.* at 2.) Second, Plaintiff alleges that she is disabled and that Defendants have failed to accommodate that disability by maintaining the elevator in her building. (*Id.* at 3.)

With respect to the garbage facilities at the Complex, Plaintiff alleges that they are not properly cleaned and serviced, that they are dangerously close to a children's playground, and that they have been improperly used to dispose of asbestos and other hazardous materials. (*Id.* at 5-6.) Documents submitted by Plaintiff indicate that she complained to NYCHA about maintenance of the garbage facilities at the Complex on November 12, 2003, July 1, 2004, and November 15, 2004.

Plaintiff alleges that these conditions have caused dead rats to accumulate in the vicinity of the playground, and that the residents at the Complex have been exposed to asbestos, lead, toxic contaminants, and other "cancer causing agents." (*Id.* at 5, 13, 28, 29.) Plaintiff further alleges that the smoke and carbon monoxide alarms in the apartment buildings are frequently set off by fumes from the waste, which generates noise and flashing lights that have caused her pain. (*Id.* at 27.)

In addition to the condition of the garbage disposal facilities, Plaintiff also alleges that the elevator in her building "has been under constant service." (*Id.* at 3; *see also id.* at 9.) Plaintiff alleges that this issue has been particularly problematic for her because she is unable to walk without assistance and cannot access her fourteenth-floor apartment by using the stairs. (*Id.* at 18.)

Plaintiff appended to her Amended Complaint two maintenance requests regarding the elevators, which she submitted to NYCHA on July 31, 2003 and May 13, 2004, respectively. Plaintiff also submitted with her pleading an April 16, 2007 letter that she received from NYCHA, which references an April 6, 2007 call by Plaintiff to New York City's "311" information service regarding the elevators. The letter states that "repairs [to the elevators] were completed the same day [as the call]. All elevators are inspected daily and repairs are completed by the maintenance staff as needed."

Plaintiff further alleges that, since she transferred apartments in May 2003, the living conditions at the Complex have progressively deteriorated, and that Defendants' ongoing failure to address these conditions reflects discriminatory animus. (*Id.* at 2; *see also id.* at 4.) Plaintiff alleges that, as a result of these deteriorating conditions, she has suffered from fatigue, headaches, diarrhea, loss of appetite, nausea, stomach cramps, allergies, asthma, joint pain, leg spasms, seizures, and lupus. (*Id.* at 4, 17-18.)

Medical records submitted by Plaintiff indicate that she has suffered from health problems while living at the Complex. Notes from Dr. Panagiotis Zenetos, which are dated March 15, 2006, state that Plaintiff "was hit [in] the head by a six foot steel door," and diagnose her with "lumbago cervical radiculopathy, vertigo, myofascial pain," and chronic pain syndrome. A March 5, 2007 report from Mount Sinai Hospital states that Plaintiff reported that she suffered from "chest tightness after exposure to garbage."

On January 12, 2007, NYCHA mailed Plaintiff a "Notice" that it was recommending

that her tenancy be terminated, and directing her to appear before a Hearing Officer at NYCHA's Tenant Administrative Hearings Division on March 1, 2007. NYCHA's letter specified that the basis for the recommendation was Plaintiff's failure to provide updated information regarding her personal income, family income, and household size, which is used by NYCHA to determine Plaintiff's eligibility for public housing.

In a March 1, 2007 "Decision & Disposition," NYCHA Hearing Officer Stuart G. Laurence stated that Plaintiff failed to appear at the hearing and found that, "in the absence of any controverting evidence," NYCHA's charges regarding the termination of her tenancy were "sustained."[2]

## B. Procedural History

Plaintiff's Complaint was received by this District's *Pro Se* Office on January 25, 2007. The Complaint named as Defendants NYCHA and HUD and sought unspecified relief. On August 27, 2007, the Honorable Kimba M. Wood, Chief District Judge, noted several deficiencies in Plaintiff's pleading and directed Plaintiff to file an Amended Complaint within 60 days (the "Amendment Order" (Doc. No. 3)). Specifically, Chief Judge Wood directed Plaintiff to: (1) "specify the nature of her disability," (2) "allege how the conditions of her apartment affected her

---

[2] These documents relating to the eviction proceedings against Plaintiff were attached to the Amended Complaint. However, the record is silent as to Plaintiff's current status as a resident of the Frederick Douglass Complex. Documents submitted by Plaintiff in this action in connection with her applications for injunctive relief indicated that these eviction proceedings were ongoing and that Plaintiff had not been evicted from her apartment as of October 1, 2008.

disability," (3) "state how defendants failed to provide her with reasonable accommodation," and (4) "allege all steps she took to give defendants the opportunity to remedy the alleged problems associated with the apartment." (*Id.* at 4.) On October 30, 2007, Plaintiff responded to the Amendment Order by filing the Amended Complaint. (Doc. No. 4.)

This case was reassigned to the undersigned on January 14, 2008. (Doc. No. 5.) On April 17, 2008, Plaintiff sought a preliminary injunction and a temporary restraining order (1) enjoining Defendants from pursuing eviction proceedings against Plaintiff in New York City Housing Court, and (2) requiring Defendants to remove dead rats from the grounds of her apartment building. (*See* Doc. No. 9.) On May 2, 2008 and May 5, 2008, respectively, HUD and NYCHA opposed Plaintiff's application and sought leave to file motions to dismiss the Amended Complaint. On June 16, 2008, Plaintiff's application for injunctive relief was denied, and Defendants' requests to file motions to dismiss were granted. (Doc. No. 11.)

On August 8, 2008, HUD filed its motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 13.) On August 14, 2008, NYCHA filed a separate motion to dismiss relying primarily on Rule 12(b)(6). (Doc. No. 16.) Plaintiff responded in opposition to both motions on September 9, 2008. (Doc. No. 19.)

On September 15, 2008, while Defendants' motions were pending, Plaintiff renewed her application for injunctive relief, seeking a preliminary injunction and temporary restraining order enjoining

Defendants from "entering, evaluating, or interfering in plaintiff's affairs, causing any further derivative action or character slander obfuscation by defendants or subsidiary agencies until said decision by the court of federal district is administered." (Doc. No. 21.) The Court denied Plaintiff's second application for injunctive relief on October 7, 2008. (Doc. No. 24.)

## II. DISCUSSION

Construing Plaintiff's allegations liberally, the Court deems the Amended Complaint to contain claims against NYCHA and HUD for failure to accommodate her disability and retaliation under Title II of the ADA, the FHAA, and the Rehabilitation Act. Both Defendants argue that all of the causes of action in the Amended Complaint must be dismissed. First, HUD argues that the Court lacks subject matter jurisdiction because it is entitled to sovereign immunity. Second, NYCHA argues that Plaintiff's claims are partially time barred. Third, both Defendants argue that Plaintiff has failed to state a claim under Rule 12(b)(6). For the reasons set forth below, Defendants' motions are granted.

### A. Sovereign Immunity

HUD first argues that the Court lacks subject matter jurisdiction over Plaintiff's claims due to principles of sovereign immunity. For the reasons that follow, HUD's motion is granted as to Plaintiff's claims under the FHAA and Title II of the ADA, but denied as to Plaintiff's claims under the Rehabilitation Act.

#### 1. Applicable Law

On a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of

showing that subject matter jurisdiction exists over the complaint. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Under the doctrine of sovereign immunity, the United States is completely immune from suit unless it consents to be sued. *Hercules Inc. v. United States*, 516 U.S. 417, 422 (1996); *United States v. Testan*, 424 U.S. 392, 399 (1976). Thus, the government's consent to be sued is a jurisdictional requirement of an action against the United States, its agencies, and federal officers acting in their official capacities. *See United States v. Sherwood*, 312 U.S. 584, 586-87 (1941); *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005).

"A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 197 (1996). "For a suit against the United States or its agencies to survive a motion to dismiss, the plaintiff must identify a specific statute that waives the sovereign immunity of the government for that type of claim." *Spinale v. United States*, No. 03 Civ. 1704 (KMW) (JCF), 2004 WL 50873, at *6 (S.D.N.Y. Jan. 9, 2004).

2. Analysis

The Court lacks subject matter jurisdiction over Plaintiff's claims against HUD under the FHAA and ADA. The FHAA does not provide for a private cause of action against HUD. *See, e.g.*, *Weisberg v. Leon*, No. 96 Civ. 2661 (HB), 1999 WL 1216663, at *2

(S.D.N.Y. Dec. 20, 1999); *Marinoff v. U.S. Dep't of Housing & Urban Dev.*, 892 F. Supp. 493, 496 (S.D.N.Y. 1995); *see also Godwin v. Sec'y of Housing & Urban Dev.*, 356 F.3d 310, 312 (D.C. Cir. 2004). Similarly, agencies of the federal government, such as HUD, may not be sued under Title II of the ADA. *See Cellular Phone Taskforce v. FCC*, 217 F.3d 72 (2d Cir. 2000); *Kee v. Hasty*, No. 01 Civ. 2123 (KMW) (DF), 2004 WL 807071, at *25 n.21 (S.D.N.Y. Apr. 14, 2004). Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's claims against HUD under the FHAA and ADA.

However, construing the claims in the Amended Complaint liberally in light of Plaintiff's *pro se* status, HUD is not entitled to sovereign immunity with respect to Plaintiff's Rehabilitation Act claims. Section 504 of the Rehabilitation Act prohibits discrimination on the basis of a disability "under any program . . . conducted by any Executive agency." 29 U.S.C. § 794(a). The Act provides for the same "remedies . . . set forth in title VI of the Civil Rights Act of 1964 . . . to any person aggrieved by any act or failure to act by any . . . *Federal provider of [Federal] assistance* under [section 504]." *Id.* § 794a(a)(2) (emphasis added).

"HUD is the federal *funding agency* overseeing the Section 8 housing program." *Bennett v. New York City Housing Auth.*, 248 F. Supp. 2d 166, 168 (E.D.N.Y. 2002) (emphasis added). Specifically, through the Section 8 program, HUD distributes funds to local public housing agencies, such as NYCHA, in order to help low-income families rent apartments. *Id.* (citing 42 U.S.C. § 1437f(o) and 24 C.F.R. § 982.1(a)-(b)); *see also* 42 U.S.C. § 12131(1)(B) (defining "public housing agency"). Plaintiff named HUD as a Defendant in its capacity as a

provider of funding to NYCHA in the Section 8 program. (*See* Am. Compl. at 28.)  The Rehabilitation Act expressly provides for suits based on alleged "violations [of the Rehabilitation Act] committed by *federal funding agencies acting as such* — that is, by 'Federal provider[s].'" *Lane*, 518 U.S. at 191-92 (quoting 29 U.S.C. § 794a(a)(2)) (emphasis added).  This statutory language is sufficient to constitute an "unequivocal[]" waiver  of HUD's sovereign immunity under these circumstances. *Id.* at 192.  Accordingly, HUD is not entitled to sovereign immunity with respect to Plaintiff's claims under the Rehabilitation Act.

### B. Timeliness

NYCHA argues that at least some of Plaintiff's allegations are untimely and cannot form the basis for actionable claims of disability discrimination.  For the reasons set forth below, the Court agrees, and concludes that Plaintiff's claims are partially time barred.

### 1.  Applicable Law

The statute of limitations for private causes of action under the FHAA is two years.  42 U.S.C. § 3613(a)(1)(A).  Claims under section 504 of the Rehabilitation Act and Title II of the ADA are governed by the applicable state statute of limitations for personal injury actions. *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221-22 (2d Cir. 2003) (discussing the Rehabilitation Act); *Gardner v. Wansart*, No. 05 Civ. 3351 (SHS), 2006 WL 2742043, at *3 (S.D.N.Y. Sept. 26, 2006) (discussing Title II of the ADA).  "In New York, personal injury claims must be filed within three years from the time the cause of action accrued." *Curto v.*

*Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004) (citing N.Y. C.P.L.R. 215(5)).

### 2.  Analysis

Allegedly discriminatory acts are "not actionable if time barred, even when they are related to acts allegedly in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Plaintiff is deemed to have commenced this action on January 25, 2007, the day on which her initial Complaint was received in the *Pro Se* Office of this District.   Thus, with respect to Plaintiff's FHAA claims, discrete acts alleged to have occurred prior to January 25, 2005 are no longer actionable.  Similarly, acts alleged to have occurred prior to January 25, 2004 cannot serve as the basis for Plaintiff's claims under the ADA and the Rehabilitation Act. Therefore, to the extent Plaintiff's claims are based on her May 2003 transfer to the fourteenth-floor apartment at the Complex, those claims are time barred because the transfer occurred more than three years before this action was commenced.  Similarly, any claims based on Plaintiff's complaints to NYCHA about the conditions at the Complex on July 31, 2003 and November 12, 2003 are time barred.  Accordingly, NYCHA's motion to partially dismiss Plaintiff's claims as untimely is granted.

### C.  Plaintiff's Remaining Claims

Lastly, NYCHA and HUD move to dismiss Plaintiff's remaining claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons stated below, Defendants' motions are granted.

### 1.  Standard of Review

For a complaint to withstand a motion to dismiss under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).  The Court must accept as true all factual allegations in the Amended Complaint, and draw all reasonable inferences in Plaintiff's favor. *Shah v. Meeker*, 435 F.3d 244, 248 (2d Cir. 2006); *Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir. 1999). Additionally, because "most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements, [courts] must construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than . . . when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections*, 232 F.3d 135, 140 (2d Cir. 2000).

"Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice.  To survive dismissal, the plaintiff must provide the grounds upon which his [or her] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007).    Indeed, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (quoting *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000)).

### 2.  HUD

As stated above, *see supra* Section II.A.2, HUD is entitled to sovereign immunity in connection with Plaintiff's claims under the ADA and FHAA, but is subject to suit under the Rehabilitation Act to the extent it is named as a "federal funding agenc[y] acting as such." *Lane*, 518 U.S. at 193.  However, in the Amendment Order, Chief Judge Wood observed that Plaintiff's original pleading "offer[ed] no allegations against defendant HUD." (Amendment Order at 4.)  Plaintiff has not cured that deficiency in the Amended Complaint.

Indeed, the Amended Complaint contains no factual allegations to support an inference that HUD has discriminated against her in any way.  Therefore, with respect to Plaintiff's claims against HUD, the Amended Complaint does not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Accordingly, because Plaintiff "ha[s] not nudged" her claims against HUD "across the line from conceivable to plausible," *id.* at 570, Plaintiff's claims against HUD under the Rehabilitation Act are dismissed.

### 3.  NYCHA

Remaining are Plaintiff's claims against NYCHA under the ADA,[3] the FHAA,[4] and

---

[3]  Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."  42 U.S.C. § 12132. It is undisputed that NYCHA constitutes a "public entity" under the ADA and is therefore subject to suit under Title II. *See id.* § 12131(1)(B).

[4]  The FHAA prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of . . . rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person."  42 U.S.C. § 3604(f)(2)(A).

the Rehabilitation Act.[5]  Under each statute, there are three available theories for demonstrating discrimination on the basis of a disability: disparate impact, disparate treatment, and failure to accommodate. *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003).  The Amended Complaint can only be interpreted to invoke the third method of pleading illegal discrimination.[6]

---

[5]  Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . ."  29 U.S.C. § 794(a).  It is undisputed that NYCHA is subject to suit under section 504 of the Rehabilitation Act because it is a "public housing agency," which receives monetary assistance from HUD to operate and develop low-income housing.  42 U.S.C. § 1437a(b)(6).

[6]  The Amended Complaint contains no allegations of affirmative acts by NYCHA that are alleged to have been discriminatory in nature.  Rather, the Amended Complaint suggests that NYCHA's *failure to act* — *i.e.*, its failure to maintain the garbage facilities and elevators at the Complex — permits an inference of discrimination.  Such conclusory allegations are insufficient to sustain a discriminatory treatment claim. *See Cardew v. New York State Dep't of Corr. Servs.*, No. 01 Civ. 3669 (BSJ), 2004 WL 943575, at *7 (S.D.N.Y. Apr. 3, 2004) (holding that a conclusory allegation regarding discriminatory animus is insufficient to state a claim for disability discrimination); *cf. Desouza v. PWV Acquisitions LLC*, No. 05 Civ. 4565 (RWS), 2005 WL 3159705, at *2 (S.D.N.Y. Nov. 28, 2005) (dismissing Title VII claim where the complaint contained "conclusory allegations of discrimination without specifics").  With respect to disparate impact, Plaintiff has not made allegations regarding a facially neutral policy by NYCHA, and she has not alleged the existence of a "causal connection" between NYCHA's alleged failure to properly maintain the Complex and any allegedly discriminatory effect experienced by "persons of a particular type." *Tsombanidis*, 352 F.3d at 575; *see also id.* at 576 ("Although there may be cases where statistics are not

In the Amendment Order, Chief Judge Wood noted that Plaintiff had failed to state a claim under any of these theories, indicated that a "liberal reading of her complaint suggest[ed] that Plaintiff may be able to state a claim of failure to make a reasonable accommodation," and directed Plaintiff to file an Amended Complaint adding as much specificity as possible to her allegations of discrimination.  (Amendment Order at 3-4.) In response, Plaintiff filed an Amended Complaint alleging that she suffers from a disability relating to her ability to walk, and relying primarily on the theory that NYCHA failed to accommodate that disability.  In addition, the Amended Complaint also alleges that Plaintiff has been retaliated against by NYCHA because of her complaints about the conditions at the Complex.  (*See* Am. Compl. at 12, 15.)

### i.  Failure to Accommodate

Plaintiff alleges that NYCHA's failure to properly maintain the elevators in her building constituted a failure to accommodate her disability.

### a.  Applicable Law

"[T]he standards for discrimination against the disabled are interpreted similarly in the Rehabilitation Act, ADA, and FHAA . . . ." *Blatch ex rel. Clay v. Hernandez*, 360 F. Supp. 2d 595, 630 (S.D.N.Y. 2005).  Each statute requires that governmental entities such as NYCHA provide reasonable accommodations in order to permit disabled

---

necessary, there must be some analytical mechanism to determine disproportionate impact.").  Therefore, the Court addresses Plaintiff's allegations regarding NYCHA's conduct under the "failure to accommodate" theory of disability discrimination.

persons "equal opportunity to use and enjoy a dwelling." *Tsombanidis*, 352 F.3d at 578 (discussing reasonable accommodation claims under the FHAA and ADA) (citing 42 U.S.C. § 12131(2) and 42 U.S.C. § 3604(f)(3)(B)); *Menes v. City Univ. of New York*, 578 F. Supp. 2d 598, 617 (S.D.N.Y. 2008) (discussing reasonable accommodation claims under the Rehabilitation Act and ADA).

There are four elements to a discrimination claim based on a failure to accommodate theory:

> (1) [the plaintiff] suffers from a handicap [or disability]; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation.

*Freeland v. Sisao LLC*, No. 07 Civ. 3741 (CPS) (SMG), 2008 WL 906746, at *3 (E.D.N.Y. Apr. 1, 2008) (discussing the Rehabilitation Act).

### b.  Analysis

Plaintiff has adequately alleged that her difficulty walking amounts to a "disability" within the meaning of these statutes. *See* 42 U.S.C. § 12102(2); *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002); *Blatch*, 360 F. Supp. 2d at 630.

However, the Amended Complaint does not suggest any basis for inferring that, prior to the commencement of this litigation, NYCHA either "knew or should have known" of Plaintiff's alleged disability. Indeed,

Plaintiff does not allege that she notified NYCHA of any disability that denied her access to her dwelling. "[W]ithout adequate knowledge of her medical condition," NYCHA was "not in a position to even offer, let alone refuse, a reasonable accommodation to plaintiff." *Thompson v. City of New York*, No. 98 Civ. 4725 (GBD), 2002 WL 31760219, at *9 (S.D.N.Y. Dec. 9, 2002).  Put simply, Plaintiff's Amended Complaint fails to allege sufficient facts to support a claim that NYCHA discriminated against her by failing to accommodate her disability. Accordingly, NYCHA's motion to dismiss is granted as to Plaintiff's disability discrimination claims.

### ii.  Retaliation

Plaintiff also alleges that NYCHA retaliated against her for complaining about the conditions at the Frederick Douglass Complex by commencing "civil court" proceedings against her, "harass[ing]" her in connection with those proceedings, and subjecting her to other unspecified "repurcussion[s]." (Am. Compl. at 12, 15.)

### a.  Applicable Law

The FHAA renders it unlawful to "coerce, intimidate, or threaten, or interfere with any person . . . on account of his having exercised or enjoyed . . . any right granted or protected" under the FHAA.  42 U.S.C. § 3617.  "The ADA and Rehabilitation Act include similar prohibitions" against retaliation.  *Reg'l Econ. Cmty. Action Program*, 294 F.3d at 54 (citing 42 U.S.C. § 12203(b) and 29 U.S.C. § 791(g)).

To make out a valid claim of retaliation, Plaintiff must allege that:  (1) she engaged in a protected activity; (2) NYCHA knew of that

activity; (3) NYCHA subsequently subjected her to an adverse action; and (4) there was a causal connection between the alleged adverse action and her protected activity. *Marks v. Bldg. Mgmt. Co.*, No. 99 Civ. 5733 (THK), 2002 WL 764473, at \*9 (S.D.N.Y. Apr. 26, 2002); *see also Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (discussing the elements of an ADA retaliation claim); *Sands v. Runyon*, 28 F.3d 1323, 1331 (2d Cir. 1994) (discussing the elements of a retaliation claim under the Rehabilitation Act).

### b. Analysis

Plaintiff cannot make out a retaliation claim based on her complaints to NYCHA about the condition of the garbage facilities at the Complex or the maintenance of the elevators because these complaints were not "protected activities." Plaintiff's allegations, as well as the April 16, 2007 NYCHA letter to Plaintiff that is attached to her pleading, indicate that her complaints to NYCHA pertained to the *general conditions* at the Complex. Such acts were not "protected activities" for the purpose of establishing a retaliation claim in connection with allegations of disability discrimination. *See* 42 U.S.C. § 12203 (prohibiting retaliation against an individual who has "participated in any manner *in an investigation, proceeding, or hearing*" under the ADA (emphasis added)); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (defining "protected activity" as "action taken to protest or oppose statutorily prohibited discrimination"); *Stable v. Kelly Towers Assocs.*, No. 05 Civ. 3132 (GBD), 2007 WL 80866, at \*2 (S.D.N.Y. Jan. 10, 2007). Therefore, these general complaints cannot serve as the basis for a retaliation claim because they were not

"protected activities" under the statutes at issue.

Rather, the first instance in which Plaintiff engaged in a "protected activity" was when she commenced this action on January 25, 2007. NYCHA, as a Defendant, received notice of this activity by April 1, 2007, when Plaintiff effected service of the summons and original Complaint (Doc. No. 8). *See Lynn v. Vill. of Pomona*, 373 F. Supp. 2d 418, 432 (S.D.N.Y. 2005); *Marks*, 2002 WL 764473, at \*10. Nevertheless, Plaintiff has not alleged that NYCHA "*subsequently* subjected her to an adverse action . . . ." *Marks*, 2002 WL 764473, at \*9 (emphasis added). In fact, the "civil court" proceedings regarding Plaintiff's eviction were initiated *prior* to the commencement of this action. Specifically, according to a letter from NYCHA to Plaintiff, which is attached to the Amended Complaint, NYCHA initiated the eviction proceedings on January 12, 2007. Plaintiff's initial pleading was delivered to this District's *Pro Se* Office on January 25, 2007. Therefore, because NYCHA began its effort to evict Plaintiff prior to the time at which Plaintiff engaged in "protected activity" relating to her alleged disability by commencing this action, NYCHA's initiation of those housing proceedings cannot serve as the basis for a retaliation claim. Accordingly, NYCHA's motion to dismiss Plaintiff's retaliation claim is granted.

### III. CONCLUSION

Plaintiff's allegations, if true, are serious, and they may support claims under New York State law relating to the habitability of the Frederick Douglass Complex. *See, e.g.*, *Jamaica Recycling Corp. v. City of New York*, 816 N.Y.S.2d 282, 284 (N.Y. Sup. Ct. 2006) ("'It is beyond question that garbage, with its

noxious odors, its decay, and the vermin it attracts, is a deleterious substance which is unhealthy and an *actual or potential nuisance* with obvious hazards.'" (quoting *New York Coalition of Recycling Enters. v City of New York*, 598 N.Y.S.2d 649 (N.Y. Sup. Ct. 1992)) (emphasis added). Moreover, it is plainly in the interest of all the parties to this litigation to work together to improve Plaintiff's living conditions, as well as the general conditions at the Frederick Douglass Complex.[7]

However, "claims arising from deficient housing conditions do not involve a uniquely federal interest since 'the area[] of landlord-tenant law . . . has typically been the province of state courts and legislatures.'" *Rivera v. Phipps Houses Servs., Inc.*, No. 01 Civ. 2324 (HB), 2001 WL 740779, at *3 n.3 (S.D.N.Y. June 29, 2001) (quoting *Conille v. Sec'y of HUD*, 840 F.2d 105 (1st Cir. 1988)). In light of the allegations in the Amended Complaint, if NYCHA and HUD are unable to address Plaintiff's concerns, the proper fora for Plaintiff's legal claims appear to be the New York State courts, including the Housing Part of the New York City Civil Courts. *See, e.g.*, N.Y. Civ. Ct. Act § 110(a) (establishing a New York City Housing Court); N.Y. Real Prop. Law § 235-b (defining the warranty of habitability).

In sum, Plaintiff has failed to state a claim upon which relief may be granted by *this* Court. For the foregoing reasons, Defendants' respective motions to dismiss Plaintiff's claims are granted. The Clerk of

the Court is respectfully directed to terminate the motions docketed as document numbers 13 and 16, and to close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

***

Dated: March 26, 2009
         New York, New York

Plaintiff Ivy Williams is appearing in this matter on a *pro se* basis.

Defendant HUD is represented in this matter by Tomoko Onozawa, Assistant United States Attorney, 86 Chambers Street, 3rd Floor, New York, NY 10007. Defendant NYCHA is represented in this matter by Samuel Veytsman, New York City Housing Authority, 250 Broadway, 9th Floor, New York, New York 10007.

---

[7] Indeed, recent reports suggest that the elevators in the City's public housing developments have caused numerous injuries and a great deal of human suffering, and that the litigation costs to NYCHA associated with these problems are staggering. *See* Manny Fernandez and Ray Rivera, *Records Show a High Cost for Faulty Elevators*, N.Y. Times, Mar. 18, 2009, at A1.